# EXHIBIT A



**U.S. Department of Justice**

Antitrust Division

*Chicago Office*

*209 S. LaSalle St., Suite 600*
*Chicago, IL 60604*

May 15, 2023

Jonathan D. King
DLA Piper LLP (US)
444 W. Lake Street
Chicago, IL 60606

Re:   <u>Montage Investments, LLC Non-Prosecution Agreement</u>

Dear Mr. King:

This letter sets forth the terms and conditions of an agreement between the Antitrust Division of the United States Department of Justice ("Antitrust Division") and Montage Investments, LLC and Montage's subsidiaries (companies in which Montage Investments, LLC has a direct or indirect ownership interest of greater than 50% as of the date of this Agreement) (collectively, "the Company" or "Montage") concerning the Antitrust Division's criminal investigation of a market allocation agreement constituting a *per se* unlawful, and thus unreasonable, restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C.§ 1, in the labor market for asset and wealth management industry professionals in the United States.

<u>Terms of Agreement</u>

1.   In return for the full and truthful cooperation of Montage and Montage's related entities, namely the company formerly known as Mariner Holdings, LLC, as well as companies in which Mariner Holdings, LLC has a direct or indirect ownership interest of greater than or equal to 50% ("the Related Entities"), as set forth herein, the Company's acceptance of responsibility outlined in Paragraph 7 below, and the Company's compliance with the other terms and conditions of this Non-Prosecution Agreement ("Agreement"), the Antitrust Division agrees that, except as provided by this Agreement, it will not bring criminal charges against the Company and the Related Entities or any of their current or former officers, directors, managers, or employees, as of the date of this Agreement for any act or offense committed before the date of this Agreement involving the conduct described in Paragraph 7. The Antitrust Division's agreement in this paragraph does not apply to (a) perjury or subornation of perjury (18 U.S.C. §§ 1621-22), obstruction of

justice (18 U.S.C. § 1503 *et seq.*), false statements (18 U.S.C. § 1001), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses; or (b) civil matters of any kind, any civil or criminal violation of the federal tax or securities laws or conspiracy to commit such offenses, or any crimes of violence. This Agreement applies only to Montage, the Related Entities, and their current and former officers, directors, managers, or employees as of the date of this Agreement ("Covered Individuals"), and not to any other entities or individuals. This Agreement also creates contingent rights and obligations for the Covered Individuals, which are limited expressly as described below. Furthermore, this Agreement also creates an obligation of the Related Entities to provide full and truthful cooperation. Failure by Montage, the Related Entities, or any Covered Individual to comply fully with the Cooperation Obligations under Paragraphs 5 and 6, will void the United States' agreement in this Paragraph, and Montage, the Related Entities, and/or any such Covered Individual may be prosecuted criminally for any federal crime of which the United States has knowledge. This Agreement is binding on the Company and the Antitrust Division, but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state or local law enforcement or regulatory agencies, or any other authorities. This Agreement in no way controls what action, if any, other agencies may take. However, the Antitrust Division agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation and remediation of the Company as a matter for that agency to consider before determining what action, if any, to take. By agreeing to provide this information to such agencies, the Antitrust Division is not agreeing to advocate on behalf of the Company, but rather is agreeing to provide facts to be evaluated independently by such agencies.

2.   The Antitrust Division enters into this Agreement based, in part, on the following factors: (a) Montage's admission of the conduct described in Paragraph 7; (b) the absence of previous, similar misconduct by Montage; (c) the cooperation Montage has provided and has agreed to provide to the Antitrust Division; (d) Montage's monetary and non-monetary commitments to the Antitrust Division to resolve liability associated with the conduct; and (e) the remedial efforts already undertaken and to be undertaken by Montage, including Montage's agreement to retain a victim compensation claims administrator as described in Paragraphs 3(b) and 11-19 below.

3.   The Company's and Related Entities' obligations under this Agreement shall continue for three years from the date this Agreement is fully executed (the "Term"), except for the cooperation obligations set forth in Paragraph 5 below. In addition to the cooperation obligations described in Paragraph 5 below, during the Term of the Agreement, the Company shall:

   (a)   Promptly report to the Antitrust Division (i) any evidence or allegations of criminal antitrust violations of United States federal law by the Company, the Related Entities, or any of their current or former employees during their employment at the Company or the Related Entities, and (ii) any administrative or civil action that alleges anticompetitive activity by or against the Company or the Related Entities ((i) and (ii) collectively "Reported Conduct");

2

(b)    Set aside $1,000,000 to be used solely to compensate victims (as defined in Paragraph 12) for their losses caused by the Company's and Relevant Related Entities conduct as set forth in Paragraph 7 and consistent with Montage's obligations as described in Paragraphs 11-19. Montage and the Related Entities also agree not to seek or accept, directly or indirectly, reimbursement or indemnification from any external source with regard to the victim compensation amounts that the Company pays pursuant to this Agreement. Montage and the Related Entities also acknowledge that no tax deduction may or will be sought in connection with the payment of any part of the $1,000,000 set aside for victim compensation; and

(c)    On the date that the Term specified in this Agreement expires, the Company, by its President and Director, Legal and Compliance, will certify, as set forth in Attachment A, to the Antitrust Division that the Company has met the disclosure obligations set forth in Paragraph 3(a) of this Agreement.  Each certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the Northern District of Illinois.

4.    Montage further agrees that in the event the Antitrust Division determines, in its sole discretion, that the Company or the Related Entities violated any provision of this Agreement, an extension or extensions of the Term of the Agreement may be imposed by the Antitrust Division, in its sole discretion, for up to a total additional time period of one year, without prejudice to the Antitrust Division's right to proceed as provided in Paragraphs 21–23 below. Any extension of the Agreement extends all terms of the Agreement for an equivalent period. Conversely, in the event the Antitrust Division determines, in its sole discretion, that all provisions of this Agreement have been satisfied, the Agreement may be terminated prior to the end of the Term.

5.    Until the date upon which all investigations and prosecutions arising out of the conduct described in this Agreement are concluded, whether or not they are concluded within the Term specified in Paragraphs 3 and 4, Montage and the Related Entities shall:

(a)    Cooperate fully and truthfully with the Antitrust Division in any and all matters relating to the investigation and prosecution of federal antitrust and related criminal laws involving the conduct described in Paragraph 7 and any criminal litigation or other criminal proceedings currently pending, arising out of, or resulting from such investigation to which the United States is a party ("Federal Proceeding");

(b)    Assist the Antitrust Division in connection with any Federal Proceeding by providing logistical and technical support for any meeting, interview, grand jury proceeding, or any trial or other court proceeding;

(c)    Use its best efforts to promptly secure the attendance and truthful statements or testimony of the Covered Individuals or any other employee of the Related

Entities at any meeting or interview with the Antitrust Division, its agents or designees, in connection with any Federal Proceeding;

(d)   Promptly produce to the Antitrust Division all documents, information, and other materials, wherever located, not protected under attorney-client privilege or the work-product doctrine that are requested by the Antitrust Division in connection with the Federal Proceeding, as well as providing to the Antitrust Division a log of any documents, information, and other materials that were not provided based on an assertion of law, regulation, privilege, or attorney work product, including an explanation of the basis for withholding the materials, and bearing the burden of establishing the validity of any such assertion; and

(e)   With respect to any information, testimony, documents, records or other tangible evidence provided to the Antitrust Division pursuant to this Agreement, the Company consents to any and all disclosures to other governmental authorities, including federal, state, and local authorities of such materials as the United States in its sole discretion shall deem appropriate.

6.   The full, truthful, and continuing cooperation of Covered Individuals will be subject to the procedures and protections of this Paragraph, and will include, but not be limited to:

(a)   Producing to the Antitrust Division all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine that are requested by the Antitrust Division in connection with the Federal Proceeding, as well as providing to the Antitrust Division a log of any documents, information, and other materials that were not provided based on an assertion of law, regulation, privilege, or attorney work product, including an explanation of the basis for withholding the materials, and bearing the burden of establishing the validity of any such assertion;

(b)   Being available for interviews in the United States and at other mutually agreed-upon locations upon the request of the Antitrust Division in connection with the Federal Proceeding but not at the expense of the Antitrust Division;

(c)   Responding fully and truthfully to all inquiries of the Antitrust Division in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503 et seq.), or conspiracy to commit such offenses;

(d)   When called upon to do so by the Antitrust Division in connection with the Federal Proceeding, participating in affirmative investigative techniques, including but not limited to making telephone calls, recording conversations, and introducing law enforcement officials to other individuals, with all such activity being conducted only at the express direction and under the supervision of attorneys and agents of the United States;

4

(e)   When called upon to do so by the Antitrust Division in connection with the Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making a false statement or declaration in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401–402), and obstruction of justice (18 U.S.C. § 1503 et seq.); and

(f)   Agreeing that, if the agreement not to prosecute any Covered Individual is void, the statute of limitations period for any offense with respect to that Covered Individual will be tolled for the period between the date of signature of this Agreement and six months after the date that the United States gave notice of its intent to void its obligations to that person under this Agreement.

Nothing in this Paragraph creates any obligations by or for any person who is not a Covered Individual.

<u>Admission of Conduct and Acceptance of Responsibility</u>

7.   The Company admits, acknowledges, and accepts responsibility for the conduct, including that of a senior-level executive, as described in Paragraph 7. Additionally, as set forth in Paragraphs 8 and 9 below, the Company and Related Entities agree not to make any public statement contradicting the admissions set forth in this paragraph:

(a)   Beginning no later than March 2014 and continuing until March 2018 (the "Relevant Period"), Montage and its related entities (including the company formerly known as Mariner Holdings, LLC, as well as companies in which Montage or Mariner Holdings, LLC had a direct or indirect ownership interest of greater than or equal to 50% during the Relevant Period) ("the Relevant Related Entities"), through certain of their employees, including a senior-level executive, conspired to suppress and eliminate competition by entering into and managing a bilateral market allocation agreement with another firm with which they compete for asset and wealth management professionals ("Labor Market Competitor") not to solicit, recruit, hire, or otherwise compete for each other's employees, in violation of Title 15 United States Code Section 1. By allocating employees in the labor market between Montage/the Relevant Related Entities and the Labor Market Competitor, this bilateral agreement diminished employee mobility between Montage/the Relevant Related Entities and the Labor Market Competitor, and in that manner, limited the opportunities of employees to negotiate for better compensation, benefits, and other terms of employment through a move to the Labor Market Competitor.

(b)   Montage further admits that the business activities of Montage/the Relevant Related Entities and its co-conspirators in connection with the provision of asset and wealth management services affected by this conspiracy were within the flow of, and substantially affected, interstate trade and commerce, and that this

agreement was not reasonably necessary to any legitimate transaction or collaboration between Montage/the Relevant Related Entities and the Labor Market Competitor.

8.     Montage and the Related Entities expressly agree that they shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for Montage or the Related Entities, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company as set forth in Paragraph 7 above. Any such contradictory statement shall, subject to cure rights Montage described below, constitute a breach of this Agreement and Montage and/or the Related Entities thereafter shall be subject to prosecution as set forth in this Agreement. Any public statement by any such person contradicting Montage's acceptance of responsibility as set forth in paragraph 7 above will be imputed to Montage for the purpose of determining whether the Company has breached this Agreement. If the Antitrust Division determines, in its sole discretion, that a public statement by any such person contradicts in whole or in part any fact(s) set forth in Montage's acceptance of responsibility as set forth in Paragraph 7 above, the Antitrust Division shall so notify Montage, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification. Montage shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in Paragraph 7 provided that such defenses and claims do not contradict, in whole or in part, any fact(s) set forth in Paragraph 7. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of Montage in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

9.     Montage and the Related Entities agree that if they issue a press release or hold any press conference in connection with this Agreement, the Company shall first consult the Antitrust Division to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Antitrust Division and Montage; and (b) whether the Antitrust Division has any objection to the release or press conference. Statements at any press conference concerning this matter shall be consistent with such a press release.  Any objection to a press release or press conference statement by the Antitrust Division will be communicated to Montage within 48 hours of receipt of such press release or statement.

## Compliance Program

10.    Montage represents that during the Relevant Period it had a compliance program related to its core business of providing asset management services, but lacked a comprehensive antitrust compliance program. Montage further represents that its shared human resources services with the Related Entities implemented an antitrust compliance program after the Relevant Period, and Montage will ensure that this compliance program extends to any and all dedicated human resources professionals at the Company and Related Entities that

provide such services by, among other things, implementing formal antitrust educational initiatives and compliance training. Montage acknowledges that implementation of these policies and procedures shall not be construed in any future enforcement proceeding as providing immunity or amnesty for any crimes not disclosed to the Antitrust Division as of the date of this Agreement and for which the Company would otherwise be responsible. Montage and the Related Entities agree that they will continue to further strengthen their internal antitrust compliance and controls, standards, and procedures.

Victim Compensation and Remedial Measures

11.     Montage agrees to pay an amount of $1,000,000 to be used to compensate current and former employees of Montage and the Relevant Related Entities for their losses resulting from the Company's and Relevant Related Entities conduct as described in Paragraph 7 ("Victim Compensation Amount"). The Company shall pay the full Victim Compensation Amount to a Victim Compensation Claims Administrator (the "Administrator") no later than ten (10) business days after the selection of the Administrator consistent with Paragraph 15 below and pursuant to payment instructions provided by the Administrator.  The Company understands that this Agreement is voidable by the Antitrust Division if it fails to pay the Victim Compensation Amount as required by this Agreement.

12.     The parties agree that the appointment of an Administrator is appropriate and necessary to determine the proper administration and disbursement of the $1,000,000 in compensation monies that the Company will pay to individuals who were employed by Montage and/or the Relevant Related Entities during the Relevant Period and who were harmed by the conduct described in Paragraph 7 (hereinafter "Victims").

13.     The Administrator, consistent with a process imposed and required by the Antitrust Division, will make recommendations to the Antitrust Division regarding: (a) the individuals who should receive victim compensation payments; and (b) the compensation amounts that these individuals should receive (based on a formula to be provided by the Antitrust Division).  Only the Antitrust Division shall be empowered to make final decisions regarding: (a) the individuals who should and should not receive the victim compensation payments; and (b) the compensation amounts that these individuals should receive.  Upon the final decision of the Antitrust Division regarding the individuals eligible to receive victim compensation payments and the amount of such payments, the Administrator shall be responsible for the distribution of these funds.

14.     Montage agrees to pay for all costs, fees, and expenses incurred by the Administrator. The Company shall execute an engagement letter with the Administrator that must be approved, in advance of execution, by the Antitrust Division.

15.     Within twenty (20) business days after signing the Agreement, Montage shall submit a written proposal identifying three (3) candidates to serve as the Administrator, setting forth the candidates' qualifications and credentials and a written certification by the candidates that they do not have a relationship to the parties or the case that would

7

require disqualification of a judge under 28 U.S.C. § 455. The Antitrust Division retains the right, in its sole discretion, to choose the Administrator from among the candidates proposed by the Company. Any submission or selection of the Administrator by either Montage or the Antitrust Division shall be made without unlawful discrimination against any person or class of persons. The Antitrust Division and the Company will use their best efforts to complete the selection process within thirty (30) calendar days of the execution of this Agreement.

16. Within ten (10) business days after the selection of the Administrator, Montage will provide the Administrator with the names and most recent contact information in its possession for all individuals employed by Montage and the Relevant Related Entities during the Relevant Period. Within thirty (30) days from receipt of this information, the Administrator will provide the listed individuals with a copy of this Agreement and a cover letter in the form provided in Exhibit 2.

17. Montage and the Related Entities agree they will not employ or be affiliated with the Administrator for a period of not less than two years from the date on which the Administrator's term expires. Nor will the Company or Related Entities discuss with the Administrator the possibility of further employment or affiliation during the Administrator's term. Upon agreement by the parties, this prohibition will not apply to other claims administration responsibilities that the Administrator may undertake in connection with resolutions with foreign or other domestic authorities.

18. The Company and Related Entities agree that they will not use the fact that any Victim seeks or receives any compensation from the Victim Compensation Amount to seek to preclude such Victim from pursuing any other lawful claim that such Victim might have against the Company or Related Entities, and that the $1,000,000 Victim Compensation Amount does not represent a limit or cap on liability in any potential future civil litigation.

19. The parties agree that any portion of the Victim Compensation Amount that remains unclaimed at the end of the Term shall be returned to the Company.

20. To the extent applicable, the Company hereby waives and agrees not to enforce any and all non-compete, non-solicitation, and/or non-interference provisions in any contract or agreement it has with any current or former employee of Montage that in any way restricts a current or former employee's ability to seek or accept other employment. This waiver does not affect the Company's ability to enter into and/or enforce lawful contracts that contain reasonable restrictions and are narrowly tailored to protect any of the Company's legitimate business interests. Furthermore:

    (a) Within thirty (30) days of the execution of this Agreement, the Company and Related Entities shall furnish notice of this Agreement to their current employees, through postings on the Company's and the Related Entities' intranet pages containing the text of Exhibit 1 and a link to this Agreement for no less than six (6) months after the date of the execution of this Agreement;

(b)     Within thirty (30) days of the execution of this Agreement, the Company shall furnish a copy of this agreement to any recruiting agency or provider of temporary employees or contract workers retained by Montage. In addition, Montage and the Related Entities shall update the terms of the Company's and Related Entities' contract(s) with all current or any future recruiting agency or provider of temporary employees or contract workers as follows:

Nothing herein shall preclude the [Agency] from contacting or soliciting for employment at Montage, its related entities, and their subsidiaries any individuals who are employed by another firm that competes with Montage, its related entities, or their subsidiaries in the asset and wealth management services industry.

## Breach of the Agreement

21.     If, during the Term of the Agreement, the Antitrust Division, in its sole discretion, determines the Company or the Related Entities have: (a) committed any felony under United States law subsequent to the Company's signing of this Agreement; (b) failed to fully and promptly comply with any request for cooperation pursuant to Paragraph 5 above; (c) given false, incomplete, or misleading testimony or information at any time; or (d) otherwise fails to completely perform or fulfill any of the Company's or the Related Entities' obligations under this Agreement, regardless of whether the United States becomes aware of such a breach after the Term is complete, the Antitrust Division will notify counsel for the Company in writing, by personal or overnight delivery or facsimile transmission, and may also notify counsel by telephone of its intention to void any of its obligations under this Agreement (except its obligations under this paragraph), and the Company and/or the Related Entities shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Agreement. Any such prosecution relating to the conduct described in Paragraph 7 or relating to conduct known to the Antitrust Division prior to the date of this Agreement that is not time-barred by the applicable statute of limitations on the date of this Agreement may be commenced against the Company and/or the Related Entities, notwithstanding the expiration of the statute of limitations between the date of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company and the Related Entities agree that the statute of limitations with respect to any such prosecution that is not time-barred on the date of this Agreement shall be tolled for the duration of the Term plus one year. In addition, the Company and the Related Entities agree that the statute of limitations as to any felony offense under United States law that occurs during the Term will be tolled from the date upon which the offense occurs until the earlier of (a) the date upon which the Antitrust Division is made aware of the violation or (b) the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

22.     In the event that the Antitrust Division determines that Montage or the Related Entities have breached this Agreement, the Antitrust Division agrees to provide Montage with

written notice of such breach prior to instituting any prosecution resulting from such breach. Montage shall, within thirty (30) days of receipt of such notice, have the opportunity to respond to the Antitrust Division, in writing, to explain the nature and circumstances of such breach as well as the actions Montage and/or the Related Entities have taken to address and remediate the situation, which explanation the Antitrust Division shall consider in determining whether to institute a prosecution.

23.     In the event that the Antitrust Division determines, in its sole discretion, that Montage or the Related Entities have breached this Agreement: (a) all statements made by or on behalf of Montage or the Related Entities to the Antitrust Division, including Paragraph 7 hereto, and any testimony given by Montage or the Related Entities before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the United States against Montage and/or the Related Entities; and (b) the Company and/or the Related Entities shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, or any other federal rule that such statements or any leads therefrom are inadmissible or should be suppressed in that action.

Notice

24.     Notwithstanding the provisions of Paragraph 9 of this Agreement, the Company, the Related Entities, and the Antitrust Division may otherwise disclose this Agreement to the public.

Complete Agreement

25.     The Agreement, including the attached certificates and Exhibits 1 and 2, sets forth all the terms of the agreement between the Company, the Related Entities, and the Antitrust Division. With respect to this matter, from the execution of this Agreement forward, this Agreement supersedes all prior, if any, understandings, promises, and/or conditions between the Antitrust Division and Montage. No additional promises, agreements, or conditions have been entered into other than those set forth in this Agreement and none will be entered into unless in writing and signed by all parties. No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the Antitrust Division, the attorney(s) for the Company, and a duly authorized representative of the Company.

26.     The Company expressly understands and agrees that the protections provided to it under this Agreement shall not apply to any acquirer or successor entities unless and until such acquirer or successor formally adopts and executes this Agreement.

27.     An electronic signature shall be deemed an original signature for the purpose of executing this Agreement. Multiple signature pages are authorized for the purpose of executing this Agreement.

Sincerely,

By: _____                Date: 5/15/2023
        Kristina Srica, Assistant Chief
        Matthew Gold, Trial Attorney
        Chicago Office
        U.S. Department of Justice
        Antitrust Division


AGREED AND CONSENTED TO:

By: _____                Date: 5/15/2023
        Bethanie Schmelig
        Director, Legal and Compliance
        Montage Investments, LLC

      _____                Date: 5/15/2023
        Jonathan D. King
        DLA Piper LLP
        Counsel for Montage Investments, LLC,
        its subsidiaries, and its related entities

## COMPANY DIRECTOR'S CERTIFICATE

I have read the Non-Prosecution Agreement ("Agreement") and carefully reviewed every part of it with outside counsel for Montage Investments, LLC ("Company").

I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I carefully reviewed its terms and consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, and of the consequences of entering into this Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter.

I certify that I am the Director, Legal and Compliance for Montage Investments, LLC and that I am duly authorized by the Company, through its Manager, Martin C. Bicknell, to execute this Agreement on behalf of the Company.

Date: _5/15/2023_        Montage Investments, LLC

By:      ┌─DocuSigned by:
         *Bethanie Schmelig*
         └─F754EF7D0F984E7...
         Bethanie Schmelig
         Director, Legal and Compliance

## CERTIFICATE OF RESOLUTION OF THE MANAGER

WHEREAS, Montage Investments, LLC (the "Company") has been engaged in discussions with the United States Department of Justice, Antitrust Division ("Antitrust Division") regarding issues arising in relation to the conduct described in Paragraph 7 of the Non-Prosecution Agreement with the Antitrust Division dated May 15, 2023 ("Agreement"); and

WHEREAS, in order to resolve such discussions, it is proposed that the Company enter into the Agreement; and

WHEREAS, the Company's Manager, Martin C. Bicknell, together with outside counsel for the Company, are/have advised the Company of its rights, possible defenses, and the consequences of entering into such Agreement with the Antitrust Division;

Therefore, the Manager has RESOLVED that:

1.      The Company (a) admits, acknowledges, and accepts responsibility for the conduct, including that of a senior-level executive, as described in Paragraph 7 of the Agreement; (b) enters into the Agreement with the Antitrust Division; and (c) agrees to pay an amount of $1,000,000 to be used to compensate current and former employees of the Company and its relevant related entities as defined in Paragraph 7 of the Agreement for their losses resulting from the conduct described in Paragraph 7 of the Agreement;

2.      The Company (and its Related Entities as defined in the Agreement and set forth in Attachment B to the Agreement) accepts and will comply with all of the terms and conditions contained in the Agreement and its attachments;

3.      The Manager of the Company, Martin C. Bicknell, has authorized, empowered, and directed, Bethanie Schmelig, the Company's Director, Legal and Compliance, to execute the Agreement on behalf of the Company;

4.      The Manager of the Company, Martin C. Bicknell, is hereby authorized, empowered, and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms or provisions of any agreement or other documents as may be necessary or appropriate, to carry out and effectuate the purpose and intent of the foregoing resolutions; and

13

5.     All of the actions of the Manager of Company, Martin C. Bicknell, which actions would have been authorized by the foregoing resolutions except that any such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of the Company.

Date: 5/15/2023          By:

Martin C. Bicknell
President and Manager
Montage Investments, LLC

## CERTIFICATE OF COUNSEL

I am counsel for Montage Investments, LLC, its subsidiaries, and its related entities (as defined in the Non-Prosecution Agreement ("Agreement")) (the "Company") in the matter covered by the Agreement. In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with corporate representatives for Montage Investments, LLC, including the above-referenced representatives. Based on our review of the foregoing materials and discussions, I am of the opinion that the above-referenced representatives of the Company are duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company. Further, I have carefully reviewed the terms of this Agreement with Bethanie Schmelig, Director, Legal and Compliance of Montage Investments, LLC. I have fully advised them of the rights of the Company, of possible defenses, and of the consequences of entering into this Agreement. To my knowledge, the decision to enter into this Agreement by Montage Investments, LLC is an informed and voluntary one.

Date: _5/15/23_        By: _____

                                      Jonathan D. King
                                      DLA Piper LLP
                                      Counsel for Montage Investments, LLC, its
                                        subsidiaries, and its related entities

## COMPANY OFFICER'S CERTIFICATE FOR MARINER WEALTH ADVISORS, LLC (FORMERLY MARINER HOLDINGS, LLC)

I have read the Non-Prosecution Agreement ("Agreement") and carefully reviewed every part of it with outside counsel for the Mariner Wealth Advisors, LLC, the company formerly known as Mariner Holdings, LLC as defined in this Agreement ("Mariner").

I understand the terms of this Agreement and voluntarily agree, on behalf of Mariner, to each of its terms applicable to Mariner. I understand that, pursuant to Paragraphs 21-23, in the event that Mariner breaches any of its obligations under the Agreement, the remedies described in Paragraphs 21-23 may result.

Before signing this Agreement, I carefully reviewed its terms and consulted outside counsel for Mariner. Counsel fully advised me of the rights of Mariner, of possible defenses, and of the consequences of entering into this Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of Mariner, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter.

I certify that I am the General Counsel and Chief Compliance Officer for Mariner Wealth Advisors, LLC (formerly Mariner Holdings, LLC) and that I am duly authorized to execute this Agreement on behalf of Mariner.

Date: 5/15/2023

Mariner Wealth Advisors, LLC

By: _Anne Dorian_

Anne Dorian
General Counsel and Chief Compliance Officer

16

## CERTIFICATE OF COUNSEL

I am counsel for Mariner Wealth Advisors, LLC, the company formerly known as Mariner Holdings, LLC (as defined in the Non-Prosecution Agreement ("Agreement")) ("Mariner") in the matter covered by the Agreement. In connection with such representation, I have examined relevant Mariner documents and have discussed the terms of this Agreement with corporate representatives for Mariner, including the above-referenced representative. Based on our review of the foregoing materials and discussions, I am of the opinion that the above-referenced representative of Mariner is duly authorized to enter into this Agreement on behalf of Mariner and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of Mariner and is a valid and binding obligation of Mariner as set forth in the Agreement and the Company's Officer Certificate for Mariner. Further, I have carefully reviewed the terms of this Agreement with the General Counsel and Chief Compliance Officer, Anne Dorian of Mariner Wealth Advisors, LLC. I have fully advised them of the rights of Mariner, of possible defenses, and of the consequences of entering into this Agreement. To my knowledge, the decision to enter into this Agreement by Mariner is an informed and voluntary one.

Date: 5/15/23

By: _____

Jonathan D. King
DLA Piper LLP
Counsel for Mariner Wealth Advisors, LLC

## RESOLUTION OF THE BOARD OF MANAGERS AND
## A SUPERMAJORITY IN INTEREST OF
## MWA HOLDCO, LLC

The undersigned, being the Board of Managers and certain Members comprising a Supermajority in Interest of **MWA HOLDCO, LLC**, a Delaware limited liability company ("MWA Holdco"), hereby adopt the following resolutions on behalf of MWA Holdco. The undersigned are the only individuals with the power to vote on each of the matters contained in this resolution, and no other person has any voting power with respect to any such matter.

WHEREAS, Montage Investments, LLC ("Montage") is affiliated with MWA Holdco through common ownership of 1248 Holdings, LLC;

WHEREAS, Montage and Mariner Wealth Advisors, LLC ("Mariner") have been engaged in discussions with the United States Department of Justice, Antitrust Division ("Antitrust Division") regarding issues arising in relation to the conduct described in Paragraph 7 of the Non-Prosecution Agreement with the Antitrust Division dated May 15, 2023 (the "Agreement");

WHEREAS, certain provisions of the Agreement are applicable to Mariner, which is wholly owned by MWA Holdco through MWA Midco, LLC;

WHEREAS, the undersigned individuals were provided the opportunity to review the terms of the Agreement and consult with counsel regarding the terms therein;

WHEREAS, Section 6.4 of the First Amended & Restated Limited Liability Company Agreement of MWA Holdco effective as of July 31, 2021, as amended (the "LLC Agreement") requires prior approval of the Board and a Supermajority in Interest in certain instances, including "Institution or settlement of any lawsuit or litigation that relates to (i) fraud, (ii) material regulatory violations or (iii) criminal conduct.";

WHEREAS, in order to resolve Montage's and Mariner's discussions with the Antitrust Division, it is proposed that Montage enter into the Agreement; and

WHEREAS, the $1,000,000 victim compensation fund set forth within the Agreement shall be paid by Montage and/or 1248 Holdings, LLC (the "Associated Costs").

NOW, THEREFORE, BE IT:

RESOLVED, that the Board of Managers and a Supermajority in Interest hereby approves of Mariner agreeing to the provisions of the Agreement applicable to Mariner, provided that, for clarity, such approval does not include payment by Mariner or any of its subsidiaries of any Associated Costs; and

FURTHER RESOLVED, that, any officer of MWA Holdco is hereby authorized to execute any such documents, instruments, certificates or instructions as may be necessary in order to carry into effect the purposes and intent of the foregoing resolutions or the agreements contemplated

therein or thereby. Any such action taken by MWA Holdco prior to the date hereof with respect to the foregoing resolutions or transactions hereby are, in all respects ratified, confirmed and approved.

DATED effective as of the 15th day of May , 2023.

MWA HOLDCO, LLC

By: _____
Name:  Martin C. Bicknell
Title:  CEO

**THE BOARD OF MANAGERS:**

By: _____
Name:  Martin C. Bicknell

By: _____
Name:  Cheryl Bicknell

By: _____
Name:  Gary P. Henson

By: _____
Name:  Jonathan Sokoloff

By: _____
Name:  Jonathan Seiffer

**SUPERMAJORITY IN INTEREST:**

1248 Holdings, LLC

By: _____
Name:  Martin C. Bicknell
Title:  Manager

GEI VIII MW Aggregator LLC
By: Peridot Coinvest Manager LLC, its manager
By: Leonard Green & Partners, L.P., its manager
By: LGP Management, Inc., its general partner

By: _____
Name:  Jonathan Seiffer
Title: Senior Vice President

MWA HOLDCO, LLC

By: _____
Name:  Martin C. Bicknell
Title:  CEO

**THE BOARD OF MANAGERS:**

By: _____
Name:  Martin C. Bicknell

By: _____
Name:  Cheryl Bicknell

By: _____
Name:  Gary P. Henson

By: _____
Name:  Jonathan Sokoloff

By: _____
Name:  Jonathan Seiffer

**SUPERMAJORITY IN INTEREST:**

1248 Holdings, LLC

By: _____
Name:  Martin C. Bicknell
Title:  Manager

GEI VIII MW Aggregator LLC
By: Peridot Coinvest Manager LLC, its manager
By: Leonard Green & Partners, L.P., its manager
By: LGP Management, Inc., its general partner

By: _____
Name:  Jonathan Seiffer
Title: Senior Vice President

**Attachment A**

To:    United States Department of Justice
       Antitrust Division
       Attention:  Kalina Tulley, Chief, Chicago Office

Re:    Non-Prosecution Agreement Disclosure Certification

The undersigned certify, pursuant to Paragraph 3(c) of the Non-Prosecution Agreement by and between the United States Department of Justice, Antitrust Division ("Antitrust Division") and Montage Investments, LLC and Montage's subsidiaries (companies in which Montage Investments, LLC has a direct or indirect ownership interest of greater than 50% as of the date of the Non-Prosecution Agreement) (the "Company") dated May 15, 2023 ("Agreement"), that the undersigned are aware of the Company's disclosure obligations under Paragraph 3(a) of the Agreement and that the Company has disclosed to the United States any and all evidence or allegations of conduct required pursuant to Paragraph 3(a) of the Agreement ("Disclosable Information").  This obligation to disclose information extends to any and all Disclosable Information that has been identified through the Company's compliance program, whistleblower channel, internal audit reports, due diligence procedures, investigation process, or other Company sources and processes.  The undersigned further acknowledge and agree that the reporting requirement contained in Paragraph 3(a) and the representations contained in this certification constitute a significant and important component of the Agreement and the Antitrust Division's determination whether the Company has satisfied its obligations under the Agreement.

The undersigned hereby certify respectively that he is the President and Manager of the Company and that she is Director Legal and Compliance of the Company and that each has been duly authorized by the Company to sign this Certification on behalf of the Company.

This Certification shall constitute a material statement and representation by the undersigned and by, on behalf of, and for the benefit of, the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and such material statement and representation shall be deemed to have been made in the Northern District of Illinois.

This Certification shall also constitute a record, document, or tangible object in connection with a matter within the jurisdiction of a department and agency of the United States for purposes of 18 U.S.C. § 1519, and such record, document, or tangible object shall be deemed to have been made in the Northern District of Illinois.

By:   _____          Date:  _____
      Martin Bicknell
      President and Manager, Montage Investments, LLC

By:   _____          Date:  _____
      Bethanie Schmelig
      Director, Legal and Compliance, Montage Investments, LLC

## EXHIBIT 1

Dear Colleague:

Please take notice that Montage Investments, LLC ("Montage" or the "Company") has entered into a Non-Prosecution Agreement ("NPA") with the United States Department of Justice, Antitrust Division ("Antitrust Division"). In the NPA, the Company admitted that beginning no later than March 2014 and continuing until March 2018, Montage and Montage's related entities, including the company formerly known as Mariner Holdings, LLC, as well as companies in which Mariner Holdings, LLC had a direct or indirect ownership interest of greater than or equal to 50% between March 2014 and March 2018 ("the Relevant Related Entities"), through certain of its employees, including a senior-level executive, entered into and managed a bilateral agreement with another firm in the asset and wealth management services industry ("Labor Market Competitor") not to solicit, hire, or otherwise compete for each other's employees ("Agreement") in violation of Title 15, United States Code, Section 1. The Agreement diminished employee mobility between Montage / the Relevant Related Entities and the Labor Market Competitor, and in that manner, limited the opportunities of employees to negotiate for better compensation, benefits, and other terms of employment through a move to the Labor Market Competitor.

As part of Montage's NPA with the Antitrust Division, Montage has agreed to create a fund for current and/or former employees of Montage and the Relevant Related Entities to be compensated for any losses caused by the Company's and the Relevant Related Entities' conduct described in Paragraph 7 of the NPA. Administration and disbursement of these funds will be performed by a claims administrator ("Administrator") subject to the final approval of the Antitrust Division. Any questions regarding compensation pursuant to the terms of the NPA should be addressed directly to the Administrator who may be contacted as follows:

[Insert Administrator's contact information]

In addition, Montage has agreed to waive and not enforce any and all non-compete, non-solicitation, and/or non-interference provisions in any contract or agreement with any current or former employee of Montage that in any way restricts a current or former employee's ability to seek or accept other employment. This waiver does not affect the Company's ability to enter into and enforce lawful contracts that contain reasonable restrictions and are narrowly tailored to protect any of the Company's legitimate business interests.

## **EXHIBIT 2**

[Letterhead]

[Name of Administrator]

    Re:    <u>Montage Investments, LLC Non-Prosecution Agreement and Obligation to Pay Compensation</u>

Dear [XX]:

    I am providing you this notice because the records of Montage Investments, LLC ("Montage" or the "Company") and/or of those of Montage's related entities, including the company formerly known as Mariner Holdings, LLC, as well as companies in which Mariner Holdings, LLC had a direct or indirect ownership interest of greater than or equal to 50% between March 2014 and March 2018 ("the Relevant Related Entities"), indicate that you were an employee of one of these companies at some point during the period from March 2014 through March 2018 ("Relevant Period"). Recently, Montage entered into a Non-Prosecution Agreement ("NPA") with the Antitrust Division of the United States Department of Justice ("Antirust Division") as a result of the Antitrust Division's investigation into certain conduct by Montage and the Relevant Related Entities that constituted a criminal violation of Title 15, Untied States Code, Section 1.

    In its NPA, the Company admitted that beginning no later than March 2014 and continuing until March 2018, Montage and the Relevant Related Entities, through certain of their employees, including a senior level executive, conspired to suppress and eliminate competition by entering into and managing a bilateral market allocation agreement with another firm in the asset and wealth management services industry ("Labor Market Competitor") not to solicit, hire, or otherwise compete for each other's employees in violation of Title 15, United States Code, Section 1 ("Agreement"). This Agreement diminished employee mobility between Montage / the Relevant Related Entities and the Labor Market Competitor, and in that manner, limited the opportunities of employees to negotiate for better compensation, benefits, and other terms of employment through a move to the Labor Market Competitor.

    Among other things, the NPA imposes an obligation on the Company to compensate any individual who was employed by Montage and/or the Relevant Related Entities at any time during the Relevant Period and who was harmed by the Agreement. To fulfill its obligations, Montage has agreed to set aside an amount of $1,000,000 to compensate the victims of the Agreement and has hired me and my firm to administer and disburse these payments to eligible individuals subject to the final approval of the Antitrust Division. If you are interested in receiving compensation from these funds, please execute the attached form and return within thirty (30) days to the me at the following address:

    [Form to be drafted]

A copy of the NPA is attached. Please read it carefully and familiarize yourself with its terms. The NPA, rather than the above description, is controlling. If you have any questions about the agreement or whether you are eligible to receive victim compensation, please contact me as soon as possible.

Sincerely,

[Administrator]