# EXHIBIT B



**U.S. Department of Justice**

Antitrust Division

*Chicago Office*

*209 S. LaSalle St., Suite 600*
*Chicago, IL 60604*

March 5, 2021

Patrick Bannigan
Executive Vice President & Chief Financial Officer
American Century Companies, Inc.
PO Box 419200
Kansas City, MO 64141-6200

Re:    American Century Companies, Inc. Non-Prosecution Agreement

Dear Mr. Bannigan:

This letter sets forth the terms and conditions of an agreement between the Antitrust Division of the United States Department of Justice ("Antitrust Division") and American Century Companies, Inc. and its subsidiaries (companies in which American Century Companies has a direct or indirect ownership interest of greater than 50% as of the date of signature of this Agreement) (collectively, "the Company" or "ACI") concerning the Antitrust Division's criminal investigation of a market allocation agreement constituting a *per se* unlawful, and thus unreasonable, restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, in the labor market for asset and wealth management industry professionals in the United States (the "Agreement").

Terms of Agreement

1.    In return for the full and truthful cooperation of ACI as set forth herein, the Company's acceptance of responsibility outlined in Paragraph 7 below, and the Company's compliance with the other terms and conditions of this Agreement, the Antitrust Division agrees that, except as provided by this Agreement, it will not bring criminal charges against the Company or any of its current or former employees as of the date of this Agreement for any act or offense committed before the date of this Agreement involving the conduct described in Paragraph 7 below. The Antitrust Division's agreement in this paragraph does not apply to (a) perjury or subornation of perjury (18 U.S.C. §§ 1621-22), obstruction of justice (18 U.S.C. § 1503 *et seq.*), false statements (18 U.S.C. § 1001), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses; or (b) civil matters of any kind, any civil or criminal violation of the federal tax or securities laws or conspiracy to commit such offenses, or any crimes of violence. This Agreement applies only to ACI and its current and former employees as of the date of this Agreement

("Covered Individuals"), and not to any other entities or individuals. This Agreement also creates contingent rights and obligations for the Covered Individuals, which are limited expressly as described below. Failure by ACI or any Covered Individual to comply fully with the Cooperation Obligations under Paragraphs 5 and 6 will void the United States' agreement in this Paragraph, and ACI or any such Covered Individual may be prosecuted criminally for any federal crime of which the United States has knowledge. This Agreement is binding on the Company and the Antitrust Division, but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state or local law enforcement or regulatory agencies, or any other authorities. This Agreement in no way controls what action, if any, other agencies may take. However, the Antitrust Division agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation and remediation of the Company as a matter for that agency to consider before determining what action, if any, to take. By agreeing to provide this information to such agencies, the Antitrust Division is not agreeing to advocate on behalf of the Company, but rather is agreeing to provide facts to be evaluated independently by such agencies.

2.      The Antitrust Division enters into this Agreement based, in part, on the following factors: (a) ACI's admission of the conduct described in Paragraph 7; (b) ACI's status as the first entity to voluntarily self-report conduct not previously known to the Antitrust Division; (c) the Antitrust Division's determination that ACI failed to terminate its involvement in the conduct described in Paragraph 7 promptly and effectively upon discovery; (d) the absence of previous, similar misconduct by ACI; (e) the cooperation ACI has provided and has agreed to provide to the Antitrust Division; (f) ACI's monetary and non-monetary commitments to the Antitrust Division to resolve liability associated with the conduct; and (g) the remedial efforts already undertaken and to be undertaken by ACI, including ACI's agreement to retain an independent compliance monitor as described in Attachment A and Paragraphs 10 – 11 below and the Company's agreement to retain a victim compensation claims administrator as described in Paragraphs 3(b) and 12-20 below.

3.      The Company's obligations under this Agreement shall continue for three years from the date this Agreement is fully executed (the "Term"), except for the cooperation obligations set forth in Paragraph 5 below. In addition to the cooperation obligations described in Paragraph 5 below, during the Term of the Agreement, the Company shall:

(a)      Promptly report to the Antitrust Division (i) any evidence or allegations of criminal antitrust violations of United States federal law by the Company or any of its current or former employees during their employment at the Company, and (ii) any administrative or civil action that alleges anticompetitive activity by or against the Company ((i) and (ii) collectively "Reported Conduct");

(b)      Set aside $1,500,000 to be used solely to compensate victims (as defined in Paragraph 13) for their losses caused by the Company's conduct as set forth in Paragraph 7 and consistent with ACI's obligations as described in Paragraphs 12-

20. ACI acknowledges and agrees that the $1,500,000 set aside does not represent a limit or cap on liability in any potential future civil litigation. ACI also agrees not to seek or accept, directly or indirectly, reimbursement or indemnification from any external source with regard to the victim compensation amounts that the Company pays pursuant to this Agreement. ACI also acknowledges that no tax deduction may or will be sought in connection with the payment of any part of the $1,500,000 set aside for victim compensation; and

(c)     On the date that the Term specified in this Agreement expires, as set forth in Attachment B, the Company, by its [President/Chief Executive Officer] and [General Counsel/Chief Legal Officer], will certify to the Antitrust Division that the Company has met the disclosure obligations set forth in Paragraph 3(a) of this Agreement.  Each certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the Northern District of Illinois.

4.     ACI further agrees that in the event the Antitrust Division determines, in its sole discretion, that the Company violated any provision of this Agreement, an extension or extensions of the Term of the Agreement may be imposed by the Antitrust Division, in its sole discretion, for up to a total additional time period of one year, without prejudice to the Antitrust Division's right to proceed as provided in Paragraphs 22–24 below. Any extension of the Agreement extends all terms of the Agreement, including the terms of the monitorship described in Attachment A, for an equivalent period. Conversely, in the event the Antitrust Division determines, in its sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the monitorship described in Attachment A, and that the other provisions of this Agreement have been satisfied, the Agreement may be terminated prior to the end of the Term.

5.     Until the date upon which all investigations and prosecutions arising out of the conduct described in this Agreement are concluded, whether or not they are concluded within the Term specified in Paragraphs 3 and 4, ACI shall:

(a)     Cooperate fully and truthfully with the Antitrust Division in any and all matters relating to the investigation and prosecution of federal antitrust and related criminal laws involving the conduct described in Paragraph 7 and any criminal litigation or other criminal proceedings currently pending, arising out of, or resulting from such investigation to which the United States is a party ("Federal Proceeding");

(b)     Assist the Antitrust Division in connection with any Federal Proceeding by providing logistical and technical support for any meeting, interview, grand jury proceeding, or any trial or other court proceeding;

(c)     Use its best efforts to promptly secure the attendance and truthful statements or testimony of the Covered Individuals at any meeting or interview with the

Antitrust Division, its agents or designees, in connection with any Federal Proceeding;

(d)    Promptly producing to the Antitrust Division all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine that are requested by the Antitrust Division in connection with the Federal Proceeding, as well as providing to the Antitrust Division a log of any documents, information, and other materials that were not provided based on an assertion of law, regulation, privilege, or attorney work product, including an explanation of the basis for withholding the materials, and bearing the burden of establishing the validity of any such an assertion; and

(e)    With respect to any information, testimony, documents, records or other tangible evidence provided to the Antitrust Division pursuant to this Agreement, the Company consents to any and all disclosures to other governmental authorities, including federal, state, and local authorities of such materials as the United States in its sole discretion shall deem appropriate.

6.    The full, truthful, and continuing cooperation of Covered Individuals will be subject to the procedures and protections of this Paragraph, and will include, but not be limited to:

(a)    Producing to the Antitrust Division all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine that are requested by the Antitrust Division in connection with the Federal Proceeding, as well as providing to the Antitrust Division a log of any documents, information, and other materials that were not provided based on an assertion of law, regulation, privilege, or attorney work product, including an explanation of the basis for withholding the materials, and bearing the burden of establishing the validity of any such an assertion;

(b)    Being available for interviews in the United States and at other mutually agreed-upon locations upon the request of the Antitrust Division in connection with the Federal Proceeding but not at the expense of the Antitrust Division;

(c)    Responding fully and truthfully to all inquiries of the Antitrust Division in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503 et seq.), or conspiracy to commit such offenses;

(d)    When called upon to do so by the Antitrust Division in connection with the Federal Proceeding, participating in affirmative investigative techniques, including but not limited to making telephone calls, recording conversations, and introducing law enforcement officials to other individuals, with all such activity being conducted only at the express direction and under the supervision of attorneys and agents of the United States;

(e)     When called upon to do so by the Antitrust Division in connection with the Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making a false statement or declaration in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401–402), and obstruction of justice (18 U.S.C. § 1503 et seq.); and

(f)     Agreeing that, if the agreement not to prosecute him or her pursuant to this Agreement is void, the statute of limitations period for any offense will be tolled for the period between the date of signature of this Agreement and six months after the date that the United States gave notice of its intent to void its obligations to that person under this Agreement.

Nothing in this Paragraph creates any obligations by or for any person who is not a Covered Individual.

<u>Admission of Conduct and Acceptance of Responsibility</u>

7.     The Company admits, acknowledges, and accepts responsibility for the conduct of certain of its employees, including that of a senior-level executive as described in Paragraph 7, and, as set forth in Paragraphs 8 and 9 below, agrees not to make any public statement contradicting the admissions set forth in this paragraph:

(a)     Beginning no later than March 2014 and continuing until at least March 2018 (the "Relevant Period"), ACI, through certain of its employees, including a senior-level executive, conspired to suppress and eliminate competition by entering into and managing a bilateral market allocation agreement with another firm with which it competes for asset and wealth management professionals ("Labor Market Competitor") not to solicit, recruit, hire, or otherwise compete for each other's employees in the United States in violation of Title 15 United States Code Section 1.  The agreement between ACI and the Labor Market Competitor diminished employee mobility and limited the ability of employees to negotiate for better compensation, benefits, and other terms of employment; and

(b)     ACI further admits the business activities of ACI and its co-conspirators in connection with the provision of asset and wealth management services affected by this conspiracy were within the flow of, and substantially affected, interstate trade and commerce, and that this agreement was not reasonably necessary to any legitimate transaction or collaboration it may have had with the Labor Market Competitor during the Relevant Period.

8.     ACI expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for ACI, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company as set forth in Paragraph 7 above. Any such contradictory statement

shall, subject to cure rights of ACI described below, constitute a breach of this Agreement and ACI thereafter shall be subject to prosecution as set forth in this Agreement. Any public statement by any such person contradicting ACI's acceptance of responsibility as set forth in paragraphs 7 above will be imputed to ACI for the purpose of determining whether the Company has breached this Agreement. If the Antitrust Division determines, in its sole discretion, that a public statement by any such person contradicts in whole or in part any fact(s) set forth in ACI's acceptance of responsibility as set forth in Paragraph 7 above, the Antitrust Division shall so notify ACI, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification. ACI shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in Paragraph 7 provided that such defenses and claims do not contradict, in whole or in part, any fact(s) set forth in Paragraph 7. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of ACI in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

9.    ACI agrees that if it issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult the Antitrust Division to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Antitrust Division and ACI; and (b) whether the Antitrust Division has any objection to the release or press conference. Statements at any press conference concerning this matter shall be consistent with such a press release.  Any objection to a press release or press conference statement by the Antitrust Division will be communicated to ACI within 48 hours of receipt of such press release or statement.

<u>Compliance Program and Independent Compliance Monitor</u>

10.   ACI represents that during the Relevant Period it had a comprehensive antitrust compliance program related to its core business of providing asset and wealth management advisory services, but that its antitrust compliance program did not extend to the Company's recruitment and hiring practices. ACI further represents that it has extended its antitrust compliance program to the Company's human resources department by, among other things, implementing formal antitrust educational initiatives and compliance training for its human resources personnel, new hires, and recruiters. ACI acknowledges that implementation of these policies and procedures shall not be construed in any future enforcement proceeding as providing immunity or amnesty for any crimes not disclosed to the Antitrust Division as of the date of this Agreement and for which the Company would otherwise be responsible. ACI further agrees that the Company will further strengthen its internal antitrust compliance and controls, standards, and procedures, as recommended by the independent compliance monitor ("Monitor").

11.    The Monitor's duties and authority, and the obligations of ACI with respect to the Monitor and the Antitrust Division, are set forth in Attachment A, which is herein incorporated by reference into this Agreement.

<u>Victim Compensation and Remedial Measures</u>

12.    ACI agrees to pay an amount of $1,500,000 to be used to compensate current and former ACI employees for any losses resulting from the Company's conduct as described in Paragraph 7 ("Victim Compensation Amount"). The Company shall pay the full Victim Compensation Amount to a Victim Compensation Claims Administrator (the "Administrator") no later than ten (10) business days after the selection of the Administrator consistent with Paragraph 16 below and pursuant to payment instructions provided by the Administrator.

13.    The parties agree that the appointment of an Administrator is appropriate and necessary to determine the proper administration and disbursement of the $1,500,000 in compensation monies that the Company will pay to individuals who were employed by ACI during the Relevant Period and harmed by the conduct described in Paragraph 7 (hereinafter "Victims").

14.    The Administrator, consistent with a process imposed and required by the Antitrust Division, will make recommendations to the Antitrust Division regarding:  (a) the individuals who should receive victim compensation payments; and (b) the compensation amounts that these individuals should receive (based on a formula to be provided by the Antitrust Division).  Only the Antitrust Division shall be empowered to make final decisions regarding:  (a) the individuals who should receive the victim compensation payments; and (b) the compensation amounts that these individuals should receive.  Upon the final decision of the Antitrust Division regarding the individuals eligible to receive victim compensation payments and the amount of such payments, the Administrator shall be responsible for distribution of these funds.

15.    ACI agrees to pay for all costs, fees, and expenses incurred by the Administrator.  The Company shall execute an engagement letter with the Administrator that must be approved, in advance of execution, by the Antitrust Division.

16.    Within twenty (20) business days after signing the Agreement, ACI shall submit a written proposal identifying three (3) candidates to serve as the Administrator, setting forth the candidates' qualifications and credentials and a written certification by the candidates that they do not have a relationship to the parties or the case that would require disqualification of a judge under 28 U.S.C. § 455.  The Antitrust Division retains the right, in its sole discretion, to choose the Administrator from among the candidates proposed by the Company.  Any submission or selection of the Administrator by either ACI or the Antitrust Division shall be made without unlawful discrimination against any person or class of persons.  The Antitrust Division and the Company will use their best efforts to complete the selection process within thirty (30) calendar days of the execution of this Agreement.

17. Within ten (10) business days after the selection of the Administrator, ACI will provide the Administrator with the names and most recent contact information in its possession for all individuals employed by ACI during the Relevant Period. Within thirty (30) days from receipt of this information, the Administrator will provide the listed individuals with a copy of this Agreement and a cover letter in the form provided in Exhibit 2.

18. ACI agrees that it will not employ or be affiliated with the Administrator for a period of not less than two years from the date on which the Administrator's term expires. Nor will the Company discuss with the Administrator the possibility of further employment or affiliation during the Administrator's term. Upon agreement by the parties, this prohibition will not apply to other claims administration responsibilities that the Administrator may undertake in connection with resolutions with foreign or other domestic authorities.

19. The Company agrees that it will not use the fact that any victim seeks or receives any compensation from the Victim Compensation Amount to seek to preclude such victim from pursuing any other lawful claim that such victim might have against the Company.

20. The parties agree that any portion of the Victim Compensation Amount that remains unclaimed at the end of the Term shall be returned to the Company.

21. The Company hereby waives and agrees not to enforce any and all non-compete, non-solicitation, and/or non-interference provisions in any contract or agreement with any current or former employee of ACI that in any way restricts a current or former employee's ability to seek or accept other employment. This waiver does not affect ACI's ability to enter into lawful contracts with its employees that contain standard, reasonable, and customary terms within the financial industry. Furthermore:

    (a) Within thirty (30) days of the execution of this Agreement, the Company shall furnish notice of this Agreement to its current employees through an email to all current employees containing the text of Exhibit 1 and a copy of this Agreement. ACI shall also furnish notice of this Agreement through a posting on the Company's intranet containing the text of Exhibit 1 and a link to this Agreement for no less than six (6) months after the date of the execution of this Agreement;

    (b) Within thirty (30) days of the execution of this Agreement, the Company shall furnish a copy of this agreement to any recruiting agency or provider of temporary employees or contract workers retained by ACI. In addition, ACI shall update the terms of the Company's contract(s) with all current or any future recruiting agency or provider of temporary employees or contract workers as follows:

Nothing herein shall preclude the [Agency] from contacting or soliciting for employment at ACI any individuals who are employed by another firm that competes with ACI in the asset and wealth management services industry.

<u>Breach of the Agreement</u>

22.    If, during the Term of the Agreement, the Antitrust Division, in its sole discretion, determines the Company has: (a) committed any felony under United States law subsequent to the Company's signing of this Agreement; (b) failed to fully and promptly comply with any request for cooperation pursuant to Paragraph 5above; (c) given false, incomplete, or misleading testimony or information at any time or otherwise fails to completely perform or fulfill any of the Company's obligations under this Agreement regardless of whether the United States becomes aware of such a breach after the Term is complete, the Antitrust Division will notify counsel for the Company in writing, by personal or overnight delivery or facsimile transmission, and may also notify counsel by telephone of its intention to void any of its obligations under this Agreement (except its obligations under this paragraph), and the Company shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Agreement. Any such prosecution relating to the conduct described in Paragraph 7 or relating to conduct known to the Antitrust Division prior to the date of this Agreement that is not time-barred by the applicable statute of limitations on the date of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations between the date of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of this Agreement shall be tolled for the duration of the Term plus one year. In addition, the Company agrees that the statute of limitations as to any violation of federal law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of (a) the date upon which the Antitrust Division is made aware of the violation or (b) the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

23.    In the event that the Antitrust Division determines that ACI has breached this Agreement, the Antitrust Division agrees to provide ACI with written notice of such breach prior to instituting any prosecution resulting from such breach. ACI shall, within thirty (30) days of receipt of such notice, have the opportunity to respond to the Antitrust Division, in writing, to explain the nature and circumstances of such breach as well as the actions ACI has taken to address and remediate the situation, which explanation the Antitrust Division shall consider in determining whether to institute a prosecution.

24.    In the event that the Antitrust Division determines, in its sole discretion, that ACI has breached this Agreement: (a) all statements made by or on behalf of ACI to the Antitrust Division, including Paragraph 7 hereto, and any testimony given by ACI before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to

this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the United States against ACI; and (b) the Company shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, or any other federal rule that such statements or any leads therefrom are inadmissible or should be suppressed in that action.

Notice

25.    Notwithstanding the provisions of Paragraph 9 of this Agreement, the Company and the Antitrust Division may otherwise disclose this Agreement to the public.

Complete Agreement

26.    The Agreement, including Attachments A and B and Exhibits 1 and 2, sets forth all the terms of the agreement between the Company and the Antitrust Division. With respect to this matter, from the execution of this Agreement forward, this Agreement supersedes all prior, if any, understandings, promises, and/or conditions between the Antitrust Division and ACI. No additional promises, agreements, or conditions have been entered into other than those set forth in this Agreement and none will be entered into unless in writing and signed by all parties. No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the Antitrust Division, the attorney(s) for the Company, and a duly authorized representative of the Company.

27.    The Company expressly understands and agrees that the protections provided to it under this Agreement shall not apply to any acquirer or successor entities unless and until such acquirer or successor formally adopts and executes this Agreement.

28.    A facsimile signature shall be deemed an original signature for the purpose of executing this Agreement. Multiple signature pages are authorized for the purpose of executing this Agreement.

Sincerely,

By: _____    Date: _____

Eric L. Schleef
Trial Attorney
U.S. Department of Justice
Antitrust Division

AGREED AND CONSENTED TO:

By:   _Patrick Bannigan_
      Patrick Bannigan (Mar 5, 2021 08:52 CST)                    Date:   March 5, 2021

      Patrick Bannigan
      Executive Vice President & Chief Financial Officer
      American Century Companies, Inc.


      John Schmidtlein (Mar 5, 2021 11:28 EST)                    Date:   March 5, 2021

      John E. Schmidtlein
      Williams & Connolly LLP
      Counsel for American Century Companies, Inc.

11

## <u>COMPANY OFFICER'S CERTIFICATE</u>

I have read the Non-Prosecution Agreement ("Agreement") and carefully reviewed every part of it with outside counsel for American Century Companies, Inc. (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the Executive Vice President and Chief Financial Officer for the Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

Date: March 5, 2021          American Century Companies, Inc.

By:  *Patrick Bannigan*
     Patrick Bannigan (Mar 5, 2021 08:52 CST)
     _____
     Patrick Bannigan
     Executive Vice President & Chief Financial Officer

<u>**CERTIFICATE OF COUNSEL**</u>

     I am counsel for American Century Companies, Inc. (the "Company") in the matter covered by the Non-Prosecution Agreement ("Agreement").  In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company Board of Directors.  Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company.  Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the Executive Vice President and Chief Financial Officer of the Company.  I have fully advised them of the rights of the Company, of possible defenses, and of the consequences of entering into this Agreement.  To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: March 5, 2021    By:    John Schmidtlein (Mar 5, 2021 11:28 EST)

                        John E. Schmidtlein
                        Williams & Connolly LLP
                        Counsel for American Century Companies, Inc.

## <u>CERTIFICATE OF CORPORATE BOARD RESOLUTIONS</u>

WHEREAS, American Century Companies, Inc. (the "Company") has been engaged in discussions with the United States Department of Justice, Antitrust Division ("Antitrust Division") regarding issues arising in relation to the conduct described in Paragraph 7 of Non-Prosecution Agreement with the Antitrust Division dated, March 5, 2021 ("Agreement"); and

WHEREAS, in order to resolve such discussions, it is proposed that the Company enter into the Agreement; and

WHEREAS, the Company's Chairman of the Board of Directors, Richard Brown, together with outside counsel for the Company, have advised the Board of Directors of the Company of its rights, possible defenses, and the consequences of entering into such Agreement with the Antitrust Division;

Therefore, the Board of Directors has RESOLVED that:

1.      The Company (a) admits, acknowledges, and accepts responsibility for the conduct of certain of its employees, including that of a senior-level executive, as described in Paragraph 7 of the Agreement; (b) enters into the Agreement with the Antitrust Division; and (c) agrees to pay an amount of $1,500,000 to be used to compensate current and former ACI employees for any losses resulting from the Company's conduct as described in Paragraph 7 of the Agreement;

2.      The Company accepts and will comply with all of the terms and conditions contained in the Agreement and its attachments;

3.      The Executive Vice President and Chief Financial Officer of the Company, Patrick Bannigan, is hereby authorized, empowered, and directed, on behalf of the Company, to execute the Agreement substantially in such form as reviewed by this Board of Directors at this meeting with such changes as the Chairman of the Board of Directors of the Company, Richard Brown, may approve;

4.      The Chairman of the Board of Directors of the Company, Richard Brown, is hereby authorized, empowered, and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms or provisions of any agreement or other documents as may be necessary or appropriate, to carry out and effectuate the purpose and intent of the foregoing resolutions; and

5.      All of the actions of the Chairman of the Board of Directors of the Company, Richard Brown, and the members of the Special Committee of the Board of Directors, which actions would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of the Company.

Date: March 5, 2021            By:    _____
                                      Otis Cowan
                                      Vice President, Associate General Counsel and
                                      Corporate Secretary
                                      American Century Companies, Inc.

## **Attachment A**

The United States and American Century Companies and its subsidiaries (companies in which American Century Companies has a direct or indirect ownership interest of greater than 50% as of the date of signature of this Agreement) (collectively, "the Company" or "ACI") agree and recommend that, as a condition of ACI's cooperation and its Non-Prosecution Agreement ("NPA" or the "Agreement"), the Company shall retain an independent compliance monitor ("Monitor"), at the Company's expense, to fully implement and maintain an effective antitrust compliance program. The United States and ACI further agree and recommend that the conditions for the monitorship shall include:

### Term of Monitorship and Selection of Monitor

1.   The Company will retain the Monitor for a period of three (3) years subject to extension or termination consistent with Paragraph 4 of the NPA.

2.   No later than thirty (30) calendar days after the execution of the NPA, and after consultation with the Antitrust Division, ACI will propose to the Antitrust Division a pool of three (3) qualified candidates to serve as the Monitor. The Monitor candidates will have, at a minimum, the following qualifications:

  (a)   An active license and authorization to practice as an attorney under the law of a State, a territory of the United States, or the District of Columbia;
  (b)   Demonstrated expertise with respect to United States criminal antitrust laws and regulations;
  (c)   Demonstrated expertise with respect to corporate compliance and ethics programs, including experience counseling on antitrust compliance issues;
  (d)   Experience designing and/or reviewing corporate compliance policies, procedures, and internal controls;
  (e)   The ability to access and deploy resources as necessary to discharge the Monitor's duties as described in the Agreement; and
  (f)   Sufficient independence from ACI to ensure effective and impartial performance of the Monitor's duties as described in the Agreement.

The Antitrust Division retains the right to require that the Company nominate additional candidates if the Antitrust Division, in its sole discretion, determines that any of the candidates are not, in fact, qualified to serve as the Monitor, or that it is not satisfied with the candidates proposed. In addition, the Antitrust Division retains the right, in its sole discretion, to choose the Monitor from among the candidates proposed by ACI, although the Company may express its preference(s) among the candidates.

In the event the Antitrust Division rejects all proposed Monitors, ACI shall propose an additional three candidates within thirty (30) calendar days after receiving notice of the rejection. This process shall continue until a Monitor acceptable to both parties is chosen. The Antitrust Division and ACI will use their best efforts to complete the selection process within sixty (60) calendar days of the execution of this Agreement. If, during the

term of the monitorship, the Monitor resigns or becomes unable to fulfill his or her obligations as set out herein, or if the Antitrust Division, in its sole discretion, determines that the Monitor cannot fulfill such obligations to the satisfaction of the Antitrust Division, ACI shall within thirty (30) calendar days recommend a pool of three qualified Monitor candidates from which the Antitrust Division will choose a replacement.

3.    At the time ACI recommends Monitor candidates, ACI shall provide the Antitrust Division with: (a) a written certification that the Company will not employ or be affiliated with the Monitor candidate for a period of not less than one year after the termination of the monitorship nor otherwise discuss with the Monitor candidate the possibility of future employment or affiliation during the Monitor candidate's potential term and (b) a written certification by each of the Monitor candidates that he/she is not an employee or agent of the Company, and holds no interest in the Company, its subsidiaries, or any of its attorneys, offices, directors, employees, or agents.  The Company shall install the Monitor within thirty (30) calendar days of the selection of the Monitor.

Monitor's Mandate

4.    The Monitor's primary responsibility is to assess, oversee, and monitor ACI's compliance with their obligations under the Agreement, so as to specifically address and reduce the risk of any recurrence of misconduct related to competition at the Company (hereinafter the Monitor's "Mandate"). In doing so, the Monitor will review and monitor the effectiveness of ACI's compliance controls and business ethics as they pertain to the antitrust laws, and make such recommendations as the Monitor believes are necessary to comply with the Agreement. During the term of the monitorship, the Monitor will review and provide recommendations for improving ACI's compliance and ethics programs, as well as ACI's implementation and enforcement of its compliance and ethics programs for the purpose of preventing future criminal and ethical violations related to the conduct giving rise to this Agreement. In doing so, the Monitor shall:

(a)    Within sixty (60) days of selection and consistent with Paragraph 21(b) of the NPA, provide a copy of the NPA and a cover letter in the form provided by Exhibit 1 to all individuals employed by ACI at any point during the period from March 2014 through March 2018 but who are no longer employed by the Company;

(b)    Review and monitor ACI's compliance with the Agreement;

(c)    Review, evaluate, and monitor ACI's antitrust compliance policies and procedures to ensure they are generally effective in preventing and detecting collusive, and manipulative conduct (collectively "Misconduct") by any ACI director, officer, employee, or agent;

(d)    Review, evaluate, and monitor ACI's antitrust compliance programs, structure, composition, and resources, including but not limited to, antitrust compliance personnel compensation, antitrust compliance personnel training, and antitrust compliance recruitment programs to ensure the antitrust compliance functions

17

have the appropriate authority, structure, and resources to be generally effective in preventing and detecting any Misconduct by any ACI director, officer, employee, or agent;

(e)    Review, evaluate, and monitor ACI's antitrust compliance policies, procedures, and practices, including but not limited to any employee recruitment, training, compensation, and evaluation processes, to determine if they are generally effective to prevent and detect any Misconduct by any ACI director, officer, employee, or agent; and

(f)    Review, assess, and monitor the Board of Directors' and senior management's commitment to, and effective implementation of, ACI's antitrust compliance program.

5.    This Agreement must be construed broadly and any ambiguity or uncertainty regarding the Monitor's authority and duties must be resolved in favor of the Antitrust Division.

<u>ACI's Obligations</u>

6.    ACI shall cooperate fully with the Monitor, and the Monitor shall have the authority to take such reasonable steps as, in his or her view, may be necessary to be fully informed about ACI's processes, procedures, oversight, and internal controls related to the Monitor's Mandate in accordance with the principles set forth herein and applicable law. To that end, ACI shall provide the Monitor with access to all information, documents, records, facilities, and employees as reasonably requested by the Monitor and that fall within the scope of the Mandate under this Agreement. The Company will also use its best efforts to provide the Monitor with access to ACI's former employees and third-party vendors, agents, and consultants.

7.    Any disclosure by ACI to the Monitor concerning any evidence or allegations concerning anticompetitive or collusive related to antitrust laws shall not relieve the Company of any otherwise applicable obligation to truthfully disclose such matters to the Antitrust Division pursuant to the Agreement.

8.    Neither the Company nor anyone acting on its behalf shall take any action to retaliate against the Monitor for any recommendations, reports, or disclosures the Monitor makes during the course of the Monitorship.

9.    If, during the Term of the Monitorship, the Company undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Company's consolidated operations, or to the operations of any subsidiaries or affiliates involved in the conduct described in the Statement of Facts, the Company shall provide notice to the Monitor at least thirty (30) days prior to undertaking any such transaction. The Company shall also provide the Monitor with a written compliance integration plan outlining the manner in which the Company's compliance program will be carried on or changed post-transaction. The written compliance integration plan shall include details on how the Company's existing compliance program and the Monitorship may be impacted by the transaction.

## Withholding Access

10.    No attorney-client relationship shall be formed between ACI and the Monitor. In the event that ACI seeks to withhold from the Monitor access to information, documents, records, facilities, or current or former employees of ACI that may be subject to a claim of attorney-client privilege or the attorney work-product doctrine, or where the Company reasonably believes production would otherwise be inconsistent with applicable law, ACI shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor. If the matter cannot be resolved, at the request of the Monitor, ACI shall promptly provide written notice to the Monitor and the Antitrust Division that shall include a general description of the nature of the information, documents, records, facilities or current or former employees that are being withheld, as well as the legal basis for withholding access. The Antitrust Division may then consider whether to make a further request for access to such information, documents, records, facilities, or employees.

## Monitor's Coordination with ACI and Review Methodology

11.    In carrying out the Mandate, and to the extent appropriate under the circumstances, the Monitor should coordinate with ACI personnel, including in-house counsel, compliance personnel, and internal auditors. The Monitor may rely on the product of ACI's processes as well as the Company's internal resources (e.g., legal, compliance, and internal audit), which can assist the Monitor in carrying out the Mandate through increased efficiency and ACI-specific expertise, provided that the Monitor has confidence in the quality of those resources.

12.    The Monitor's reviews should use a risk-based approach, and the Monitor is thus not expected to conduct a comprehensive review of all business lines, all business activities, or all markets. In carrying out the Mandate, the Monitor should consider, for instance, risks presented by ACI's: (a) organizational structure; (b) training programs or lack thereof; (c) compensation structure; (d) internal auditing processes; (e) internal investigation procedures; and (f) reporting mechanisms.

13.    In undertaking the reviews necessary to carry out the Mandate, the Monitor shall formulate conclusions based upon, among other things: (a) inspection of relevant documents, including ACI's current policies and procedures; (b) on-site observation of selected systems and procedures; (c) meetings with, and interviews of, relevant current and, where appropriate, former directors, officers, employees, agents, and other persons at mutually convenient times and places; and (d) analyses, studies, and testing of ACI's compliance program.

## Monitor's Written Work Plans

14.    To carry out the Mandate, the Monitor shall conduct an initial review of ACI's compliance and business ethics programs and prepare an initial report. The initial report

shall be followed by at least two follow-up reviews and reports as described in Paragraphs 18-21 below. With respect to the initial report, after consultation with ACI and the Antitrust Division, the Monitor shall prepare the first written work plan within thirty (30) calendar days of being retained, and ACI and the Antitrust Division shall provide comments within thirty (30) calendar days after receipt of the written work plan. With respect to each follow-up report, after consultation with ACI and the Antitrust Division, the Monitor shall prepare a written work plan at least thirty (30) calendar days prior to commencing a review, and ACI and the Antitrust Division shall provide comments within twenty (20) calendar days after receipt of the written work plan. Any disputes between ACI and the Monitor with respect to any written work plan shall be decided by the Antitrust Division in its sole discretion.

15.     All written work plans shall identify with reasonable specificity the activities the Monitor plans to undertake in execution of the Mandate, including a written request for documents. The Monitor's work plan for the initial review shall include such steps as are reasonably necessary to conduct an effective initial review in accordance with the Mandate, including by developing an understanding, to the extent the Monitor deems appropriate, of the facts and circumstances surrounding any violations that may have occurred before the date of the Agreement. In developing such an understanding, the Monitor is to rely, to the extent possible, on available information and documents provided by ACI. It is not intended that the Monitor will conduct his or her own inquiry into the historical events that gave rise to the Agreement.

<u>Initial Review</u>

16.     The initial review shall commence no later than one hundred twenty (120) calendar days from the date of the engagement of the Monitor (unless otherwise agreed by ACI, the Monitor, and the Antitrust Division). The Monitor shall issue a written report within one hundred twenty (120) calendar days of commencing the initial review, setting forth the Monitor's assessment and, if necessary, making recommendations reasonably designed to improve the effectiveness of ACI's program for ensuring the Misconduct is not committed by any ACI director, officer, employee, or agent. The Monitor should consult with ACI concerning his or her findings and recommendations on an ongoing basis and should consider the Company's comments and input to the extent the Monitor deems appropriate. The Monitor may also choose to share a draft of his or her reports with ACI prior to finalizing them. The Monitor's reports need not recite or describe comprehensively ACI's history or compliance policies, procedures and practices, but rather may focus on those areas with respect to which the Monitor wishes to make recommendations, if any, for improvement or which the Monitor otherwise concludes merit particular attention. The Monitor shall provide the report to the Board of Directors of ACI and contemporaneously transmit copies to the Chief of the Chicago Office, Antitrust Division, U.S. Department of Justice, at 209 S. LaSalle St., Suite 600, Chicago, IL 60604. After consultation with ACI, the Monitor may extend the time period for issuance of the initial report for a brief period of time with prior written approval of the Antitrust Division.

17.    Within one hundred and twenty (120) calendar days after receiving the Monitor's initial report, ACI shall adopt and implement all recommendations in the report, unless, within sixty (60) calendar days of receiving the report, ACI notifies the Monitor and the Antitrust Division, in writing, of any recommendations that the Company considers unduly burdensome, inconsistent with applicable law or regulation, impractical, excessively expensive, or otherwise inadvisable. With respect to any such recommendation, ACI need not adopt that recommendation within the one hundred and twenty (120) days of receiving the report but shall propose in writing to the Monitor and the Antitrust Division an alternative policy, procedure or system designed to achieve the same objective or purpose. As to any recommendation on which ACI and the Monitor do not agree, such parties shall attempt in good faith to reach an agreement within forty-five (45) calendar days after the Company serves the written notice.

18.    In the event ACI and the Monitor are unable to agree on an acceptable alternative proposal, ACI shall promptly consult with the Antitrust Division. The Antitrust Division may consider the Monitor's recommendation and ACI's reasons for not adopting the recommendation in determining whether the Company has fully complied with its obligations under the Agreement. Pending such determination, ACI shall not be required to implement any contested recommendation(s). With respect to any recommendation that the Monitor determines cannot reasonably be implemented within one hundred and twenty (120) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Antitrust Division.

<u>Follow-Up Reviews</u>

19.    A follow-up review shall commence no later than one hundred-twenty (120) calendar days after the issuance of the initial report (unless otherwise agreed by ACI, the Monitor and the Antitrust Division). The Monitor shall issue a written follow-up report within ninety (90) calendar days of commencing the follow-up review, setting forth the Monitor's assessment and, if necessary, making recommendations in the same fashion as set forth in Paragraph 14 with respect to the initial review. After consultation with ACI, the Monitor may extend the time period for issuance of the follow-up report for a brief period of time with prior written approval of the Antitrust Division.

20.    Within ninety (90) calendar days after receiving the Monitor's follow-up report, ACI shall adopt and implement all recommendations in the report, unless, within thirty (30) calendar days after receiving the report, ACI notifies the Monitor and the Antitrust Division in writing concerning any recommendations that the Company considers unduly burdensome, inconsistent with applicable law or regulation, impractical, excessively expensive, or otherwise inadvisable. With respect to any such recommendation, ACI need not adopt that recommendation within the ninety (90) calendar days of receiving the report but shall propose in writing to the Monitor and the Antitrust Division an alternative policy, procedure, or system designed to achieve the same objective or purpose. As to any recommendation on which ACI and the Monitor do not agree, such parties shall attempt in good faith to reach an agreement within thirty (30) calendar days after ACI serves the written notice.

21.    In the event ACI and the Monitor are unable to agree on an acceptable alternative proposal, ACI shall promptly consult with the Department. The Department may consider the Monitor's recommendation and ACI's reasons for not adopting the recommendation in determining whether the Company has fully complied with its obligations under the Agreement. Pending such determination, ACI shall not be required to implement any contested recommendation(s). With respect to any recommendation that the Monitor determines cannot reasonably be implemented within ninety (90) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Department.

22.    The Monitor shall undertake a second follow-up review pursuant to the same procedures described in Paragraphs 18-19 above. Following the second follow-up review, the Monitor shall certify whether ACI's compliance program, including its policies and procedures, is reasonably designed and implemented to prevent and detect violations of antitrust laws. The final follow-up review and report shall be completed and delivered to the Antitrust Division no later than thirty (30) days before the end of the term of the monitorship.

Monitor's Discovery of Potential or Actual Misconduct

23.    Except as set forth below in subparagraphs (a), (b) and (c), should the Monitor discover during the course of his or her engagement that: any criminal antitrust violation may have been contemplated, attempted, and/or authorized by any entity or person within the Company or any entity or person working, directly or indirectly, for or on behalf of the Company (collectively, "Potential Misconduct"), the Monitor shall immediately report the Potential Misconduct to the Company's General Counsel/Chief Legal Officer, Chief Compliance Officer, and/or Audit Committee for further action, unless the Potential Misconduct was already so disclosed. The Monitor also may report Potential Misconduct to the Antitrust Division at any time, and shall report Potential Misconduct to the Antitrust Division when requested by the Antitrust Division.

    (a)    In some instances, the Monitor may immediately report Potential Misconduct directly to the Antitrust Division. The presence of any of the following factors militates in favor of reporting Potential Misconduct directly to the Antitrust Division, namely, where the Potential Misconduct: (1) poses a risk to public health or safety or the environment; (2) poses a risk to a specific government procurement, grant, or program; (3) involves senior management of the Company; (4) involves obstruction of justice; or (5) otherwise poses a substantial risk of harm.

    (b)    If the Monitor believes that any Potential Misconduct actually occurred ("Actual Misconduct"), the Monitor shall immediately report the Actual Misconduct to the Antitrust Division, and the Monitor shall consult with the Antitrust Division to determine whether disclosure of the Actual Misconduct to the General

22

Counsel/Chief Legal Officer, Chief Compliance Officer, and/or the Audit
Committee of the Company is appropriate under the circumstances.

(c)     The Monitor's reports shall address the appropriateness of the Company's
response to disclosed Potential Misconduct or Actual Misconduct, whether
previously disclosed to the Antitrust Division or not. Further, if the Company, or
any attorney, officer, director, employee, or agent of the Company withholds
information necessary for the performance of the Monitor's responsibilities and
the Monitor believes that such withholding is without just cause, the Monitor shall
also immediately disclose that fact to the Antitrust Division and address the
Company's failure to disclose the necessary information in the Monitor's reports.

<u>Meetings During Pendency of Monitorship</u>

24.     The Monitor shall meet with the Antitrust Division within thirty (30) calendar days after
providing each report to the Antitrust Division to discuss the report, to be followed by a
meeting between the Antitrust Division, the Monitor, and ACI.

25.     At least annually, and more frequently if appropriate, representatives from ACI and the
Antitrust Division will meet together to discuss the monitorship and any suggestions,
comments, or improvements ACI may wish to discuss with or propose to the Antitrust
Division, including with respect to the scope or costs of the monitorship.

<u>Contemplated Confidentiality of Monitor's Reports</u>

26.     The reports described herein may include proprietary, financial, confidential, and
competitive business information, and public disclosure of the reports could discourage
cooperation, or impede pending or potential government investigations and thus
undermine the objectives of the monitorship. For these reasons, among others, the reports
and the contents thereof are intended to remain and shall remain non-public, except as
otherwise agreed to by the parties in writing, or except to the extent that the Antitrust
Division determines in its sole discretion that disclosure would be in furtherance of the
Antitrust Division's discharge of its duties and responsibilities or is otherwise required by
law.

**Attachment B**

To:    United States Department of Justice
       Antitrust Division
       Attention:  Kalina Tulley, Chief, Chicago Office

Re:    Non-Prosecution Agreement Disclosure Certification

The undersigned certify, pursuant to Paragraph 3(c) of the Non-Prosecution Agreement by and between the United States Department of Justice, Antitrust Division ("Antitrust Division") and  American Century Companies, Inc. ("Company") dated [DATE] ("Agreement"), that the undersigned are aware of the Company's disclosure obligations under Paragraph 3(a) of the Agreement and that the Company has disclosed to the United States any and all evidence or allegations of conduct required pursuant to Paragraph 3(a) of the Agreement ("Disclosable Information").  This obligation to disclose information extends to any and all Disclosable Information that has been identified through the Company's compliance program, whistleblower channel, internal audit reports, due diligence procedures, investigation process, or other Company sources and processes.  The undersigned further acknowledge and agree that the reporting requirement contained in Paragraph 3(a) and the representations contained in this certification constitute a significant and important component of the Agreement and the Antitrust Division's determination whether the Company has satisfied its obligations under the Agreement.

The undersigned hereby certify respectively that [he/she] is the Chief Executive Officer of the Company and that [he/she] is the Chief Legal Officer of the Company and that each has been duly authorized by the Company to sign this Certification on behalf of the Company.

This Certification shall constitute a material statement and representation by the undersigned and by, on behalf of, and for the benefit of, the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and such material statement and representation shall be deemed to have been made in the Northern District of Illinois.  This Certification shall also constitute a record, document, or tangible object in connection with a matter within the jurisdiction of a department and agency of the United States for purposes of 18 U.S.C. § 1519, and such record, document, or tangible object shall be deemed to have been made in the Northern District of Illinois.

By:    _____        Date:  _____
       [NAME]
       Chief Executive Officer
       American Century Companies, Inc.


By:    _____        Date:  _____
       [NAME]
       Chief Legal Officer
       American Century Companies, Inc.

## EXHIBIT 1

Please take notice that American Century Companies, Inc. ("ACI" or the "Company") has entered into a Non-Prosecution Agreement ("NPA") with the United States Department of Justice, Antitrust Division ("Antitrust Division") in which the Company admitted that beginning no later than March 2014 and continuing until at least March 2018, ACI, through certain of its employees, including a senior-level executive, entered into and managed a bilateral agreement with another firm in the asset and wealth management services industry not to solicit, hire, or otherwise compete for each other's employees ("Agreement") in violation of Title 15 United States Code Section 1. The Agreement diminished employee mobility and limited the ability of employees to negotiate for better compensation, benefits, and other terms of employment.

In addition to withdrawing from the Agreement, as part of the Company's NPA with the Antitrust Division, ACI has agreed to waive and not enforce any and all non-compete, non-solicitation, and/or non-interference provisions in any contract or agreement with any current or former employee of ACI that in any way restricts a current or former employee's ability to seek or accept other employment.  This waiver does not affect ACI's ability to enter into lawful contracts with its employees that contain standard, reasonable, and customary terms within the financial industry.

In addition, ACI has agreed to pay an amount of $1,500,000 to be used solely to compensate current and former ACI employees for any losses resulting from the Company's conduct described in Paragraph 7 of the NPA. Administration and disbursement of these funds will be performed by a victim compensation claims administrator ("Administrator") subject to the final approval of the Antitrust Division.  Any questions regarding compensation pursuant to the terms of the NPA should be addressed directly to the Administrator who may be contacted as follows:

[Insert Administrator's contact information]

A copy of ACI's NPA with the United States Department of Justice, Antitrust Division is attached.

## EXHIBIT 2

[Letterhead]

[Name of Administrator]

      Re:    American Century Companies, Inc. Non-Prosecution Agreement and Obligation to Pay Compensation

Dear [XX]:

      I am providing you this notice because the records of American Century Companies, Inc. ("ACI" or the "Company") indicate that you were an ACI employee at some point during the period from March 2014 through March 2018 ("Relevant Period") but are no longer employed by the company. Recently, ACI entered into a Non-Prosecution Agreement ("NPA") with the Antitrust Division of the United States Department of Justice ("Antirust Division") as a result of the Antitrust Division's investigation into certain conduct by ACI that constituted a criminal violation of Title 15, United States Code, Section 1.

      In its NPA, the Company admitted that beginning no later than March 2014 and continuing until at least March 2018, ACI, through certain of its employees, including a senior level executive, conspired to suppress and eliminate competition by entering into and managing a bilateral market allocation agreement with another firm in the asset and wealth management services industry not to solicit, hire, or otherwise compete for each other's employees in violation of Title 15, United States Code, Section 1 ("Agreement"). This Agreement diminished employee mobility and limited the ability of employees to negotiate for better compensation, benefits, and other terms of employment.

      Among other things, ACI's NPA imposes an obligation on ACI to compensate any individual who was employed by ACI at any time during the Relevant Period and who was harmed by the Agreement. To fulfill its obligations, ACI has agreed to set aside an amount of $1.5 million to compensate the victims of the Agreement and ACI has hired me and my firm to administer and disburse these payments to eligible individuals subject to the final approval of the Antitrust Division.  If you are interested in receiving compensation from these funds, please execute the attached form and return within thirty (30) days to the me at the following address:

      [Form to be drafted]

       A copy of the NPA is attached. Please read it carefully and familiarize yourself with its terms. The NPA, rather than the above description, is controlling. If you have any questions about the agreement or whether you are eligible to receive victim compensation, please contact me as soon as possible.

                    Sincerely,

                    [Administrator]