## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY

| | |
|---|---|
| JAKOB TOBLER and MICHELLE MCNITT, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>1248 HOLDINGS, LLC f/k/a BICKNELL FAMILY HOLDING COMPANY; MARINER WEALTH ADVISORS, LLC f/k/a MARINER HOLDINGS, LLC; MONTAGE INVESTMENTS, LLC; MARINER, LLC f/k/a MARINER WEALTH ADVISORS, LLC; MARINER CAPITAL ADVISORS, LLC; TORTOISE CAPITAL ADVISORS, LLC; TORTOISEECOFIN INVESTMENTS, LLC; AMERICAN CENTURY COMPANIES, INC.; AMERICAN CENTURY SERVICES, LLC; AMERICAN CENTURY INVESTMENT MANAGEMENT, INC.; and DOES 1-10,<br><br>    Defendants. | CASE NO.: 2:24-cv-02068 |

## MEMORANDUM IN SUPPORT OF 1248 HOLDINGS, LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

Defendant 1248 Holdings, LLC ("1248 Holdings") submits this memorandum in support of its Rule 12(b)(6) motion to dismiss all counts in the First Amended Class Action Complaint ("Amended Complaint") brought against it (ECF 50).

### Overview

The Amended Complaint abandons the allegation from the original complaint that 1248 Holdings made any admissions in the non-prosecution agreement ("NPA"). It attempts to plug that hole by alleging facts about 1248 Holdings' corporate affiliation with other defendants that

did make such admissions.  Apart from that, the Amended Complaint lobs conclusory allegations of wrongdoing against an undifferentiated group of 20 defendants.  The Amended Complaint thus fails to plead any claim against 1248 Holdings for three reasons:

> ➢ **Alleging parent-company status is not enough.**  The U.S. and Kansas Supreme Courts have held that a parent corporation is not liable for the acts of its subsidiaries.  A plaintiff must instead allege facts showing either (i) the parent is independently liable or (ii) that a court may pierce the corporate veil (alter ego).  The Amended Complaint does not even try to allege either.

> ➢ **Alleging facts about typical parent-subsidiary relationships is not enough.**  The Amended Complaint alleges that 1248 Holdings and another defendant share a corporate representative and common interests.  But parents and subsidiaries often have common officers and common interests.  Alleging such facts—which merely reflect typical and perfectly legal characteristics of parents and subsidiaries—does not plausibly plead a claim against the parent.  Of course it does not.  If it did, every parent corporation could be dragged into litigation involving its subsidiaries by including facts that amount to nothing more than parent-company status.

> ➢ **Allegations against an undifferentiated group of "Defendants" is not enough.** The Amended Complaint is filled with conclusory allegations against undifferentiated groups of what it defines as "Defendants" (20 different defendants, including 10 unnamed Doe defendants) and "Mariner" (7 different defendants).  Such group-pleading does not relieve the plaintiffs of pleading facts against 1248 Holdings specifically.

No cause of action has been properly pleaded against 1248 Holdings, and all counts against it should be dismissed.

**<u>Allegations</u>**

The Amended Complaint alleges the defendants "conspired to refrain from competition when it came to hiring and recruiting each other's employees." (¶ 3.)[1]  It includes 10 named defendants and 10 more unnamed "Doe" defendants. (¶ 1.)  The Amended Complaint collectively defines those 20 defendants as "Defendants." (*Id.*)  It goes on to make more than 70 undifferentiated allegations against those "Defendants." (*See, e.g.*, ¶¶ 2, 3, 5, 6, 8, 9, 18, 19, 20, 21, 22, 23, 24, 28, 29, 43, 49, 55, 56, 57, 58, 59, 61, 62, 63, 64, 65, 66, 73, 74, 75, 80, 82, 84, 85, 87, 88, 89, 90, 92, 93, 94, 96, 97, 98, 99, 101, 106, 109, 113, 114, 115, 117, 119, 120, 121, 126, 127, 128, 129, 130, 131, 136, 137, 138, 142, 143, 144, 147, 150, 151.)  The Amended Complaint likewise collectively defines seven defendants—including 1248 Holdings—as "Mariner." (¶ 1.)  It then makes more than 30 allegations against "Mariner" generally. (*See, e.g.*, ¶¶ 4, 5, 9, 18, 19, 21, 31, 32, 33, 34, 35, 36, 46, 61, 81, 84, 95, 96, 98, 105, 112, 113, 118, 124, 125, 128, 134, 135, 142, 148, 149, 150.)

The Amended Complaint brings five counts against each defendant, including 1248 Holdings.  The counts are two federal antitrust Section 1 Sherman Act counts (Counts I and II), a Kansas state-law antitrust count under the Kansas Restraint of Trade Act (Count III), a tortious interference with business expectancy count (Count IV), and an unjust enrichment count (Count V).

The Amended Complaint relies on the NPA to plead its claims rather than allege facts but, to be clear, it expressly abandons any allegation that 1248 Holdings made any admissions in that NPA.  It instead alleges that "1248 Holdings was not part of Mariner Subsidiaries' agreement with DOJ[.]" (¶ 67.)

---

[1] All paragraph citations are to the amended complaint (ECF 50) and all emphasis is added.

The Amended Complaint does not allege any actionable facts about 1248 Holdings specifically. This is a case about an alleged no-poach agreement as to employees. But it does not allege that 1248 Holdings specifically even had any employees, let alone that any potential class member was employed by or applied to 1248 Holdings. It instead incorporates documents showing that 1248 Holdings is a mere holding company. (¶ 30 n.6.)[2] Nor does the Amended Complaint allege that 1248 Holdings agreed to the alleged no-poach conspiracy. It instead makes speculative and conclusory allegations that "1248 Holdings *likely* participated in the Mariner-American Century no poach agreement[.]" (¶ 67; *see also* ¶¶ 30, 71.)

Rather than allege facts of any wrongdoing by 1248 Holdings, the Amended Complaint alleges facts typical of any parent and subsidiary. It alleges:

- A 1248 Holdings manager and indirect beneficial owner (Mr. Bicknell) is also the President and CEO of another defendant, Mariner Wealth Advisors LLC. (¶¶ 30-31, 67, 68, 69.)

- Revenues from the "Mariner Subsidiaries 'ultimately flow to the Firm's parent company, Mariner or to Mariner's parent company,'" 1248 Holdings. (¶ 67.)

- Mr. Bicknell "can indirectly control 1248 Holdings" through various means. (¶ 69.)

- Mr. Bicknell has the legal capacity to "unilaterally make decisions and enter into agreements on behalf of 1248 Holdings." (¶ 70; *see also* ¶ 71.)

- "On information and belief, the no-poach agreement benefitted 1248 Holdings[.]" (¶ 71.)

At bottom, the Amended Complaint alleges the mere possibility (not plausibility) that 1248 Holdings engaged in the conspiracy because it shared a common corporate representative with another defendant and supposedly benefitted from the alleged conspiracy (on information and belief). That falls far short of pleading any claim against 1248 Holdings.

---

[2] This Court may consider documents on which the complaint relies on a Rule 12(b)(6) motion. *E.W. v. Health Net Life Ins.*, 86 F.4th 1265, 1292 n.6 (10th Cir. 2023).

**Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts to state a plausible claim. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). "Conclusory allegations without supporting factual averments are insufficient[.]" *Cory v. Allstate*, 583 F.3d 1240, 1244 (10th Cir. 2009); *accord Moffet v. Halliburton*, 291 F.3d 1227, 1232 (10th Cir. 2002). Allegations "must rise above mere suspicions, implausibly sweeping conclusions, and speculation." *Unicredit Bank v. RKC Fin.*, 2014 WL 2916749, at *15 (D. Kan. June 26, 2014). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Kansas Penn Gaming v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**Argument**

The Amended Complaint fails to plead facts to plausibly support any claim against 1248 Holdings. Its allegations against 1248 Holdings fall into three categories (all legally deficient). It concedes that 1248 Holdings is not covered by the NPA that forms the basis of the claims for relief but, instead, merely a parent of another defendant who is covered by the NPA. It alleges facts about 1248 Holdings that are typical of the relationship between any parent and subsidiary that suggest nothing other than that innocent corporate affiliation. And it lobs conclusory group-allegations against undifferentiated "Defendants." For the reasons detailed below, nothing in the Amended Complaint is sufficient to plead any claim against 1248 Holdings.

I.        **Parent-Company Status Is Not Enough to State a Claim.**

The plaintiffs cannot shoehorn 1248 Holdings into this case through its status as a parent company.  "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (cleaned up); *accord Freeman v. Raytheon*, 2023 WL 3086032, at *5 (D. Colo. Mar. 24, 2023); *Iola State Bank v. Biggs*, 233 Kan. 450, 456–57 (1983).  "An antitrust complaint that fails to connect each or any individual entity to the overarching conspiracy, or, alternatively, satisfies the requirements for imputing another affiliated entity's liability cannot ordinarily survive a motion to dismiss." *In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 388–89 (S.D.N.Y. 2019).  To "state a claim against parent corporations, [a plaintiff] must allege facts establishing the corporate parent corporations' direct and independent participation in the alleged conspiracy." *In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 906–07 (N.D. Ohio 2010); *accord Precision Assocs. v. Panalpina World Transp.*, 2011 WL 7053807, at *16 (E.D.N.Y. Jan. 4, 2011), *R&R adopted*, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012).  A plaintiff therefore does not plausibly plead a claim against a parent company merely by alleging parent-status alone.

A complaint must instead plead facts showing that a parent is independently liable. "[A]bsent fraud or other invidious and vitiating circumstances, the fact that one corporation owns nearly all stock of another corporation does not" make a parent corporation liable.  *ColtTech v. JLL*, 538 F. Supp. 2d 1355, 1358 (D. Kan. 2008).  It is blackletter law that "parent corporations are not liable for the wrongs of their subsidiaries unless they cause the wrongful conduct (and so are directly liable) or the conditions of investors' liability ('piercing the corporate veil') have been satisfied." *Bright v. Hill's Pet Nutrition*, 510 F.3d 766, 771 (7th Cir. 2007).  A complaint must

therefore allege either (i) facts of actionable conduct by the parent or (ii) facts that the parent is a successor-in-interest or alter ego of another defendant against which claims have been properly pleaded.  Here, the Amended Complaint pleads neither.

The Amended Complaint does not plead any facts of actionable conduct by 1248 Holdings. It includes no factual "allegations that any Parent Company [here, 1248 Holdings] did anything actionable in the alleged antitrust conspiracy." *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 418-19 (S.D.N.Y. 2011) (dismissing parent companies from Section 1 case).  "Whether the … subsidiaries did anything actionable is not relevant with respect to the liabilities of [a parent company like 1248 Holdings] absent a basis to pierce the corporate veil, and none is alleged." *Id.* Nor is there "any allegation that [1248 Holdings] directed the subsidiaries to engage in an antitrust conspiracy." *Id.*

The Amended Complaint likewise does not include even conclusory allegations that 1248 Holdings is a successor-in-interest or alter ego.  Parent companies are routinely dismissed from Section 1 (and other) cases when the parent is "not alleged to be … a successor in interest" or alter ego because "a parent corporation is not liable for the acts of its subsidiaries." *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1070-71 (N.D. Cal. 2015) (dismissing parent company from Section 1 case); *accord Fund Liquidation Holdings v. UBS*, 2021 WL 4482826, at *10 (S.D.N.Y. Sept. 30, 2021).

Alter ego has two requirements.  First, a plaintiff must plead facts showing "such domination of finances, policy, and practices that the controlled corporation has no separate mind, will, or existence of its own and is but a business conduit for its principal." *Doughty v. CSX Transp.*, 258 Kan. 493, 497 (1995).  That first requirement is evaluated in light of ten factors. *Somrak v. Kroger*, 2019 WL 1877390, at *2 (D. Kan. Apr. 26, 2019) (listing the factors), *aff'd*,

802 F. App'x 415 (10th Cir. 2020). Second, a plaintiff must plead facts showing that "allowing the legal fiction of a separate corporate structure would result in injustice toward the plaintiff." *Doughty*, 258 Kan. at 500.

The Amended Complaint meets neither alter ego requirement. The phrase "alter ego" (or its equivalent) are nowhere mentioned in the Amended Complaint. It does not attempt to plead the vast majority of the ten alter ego factors under Kansas law. On top of that, it alleges "no facts from which to plausibly infer that [1248 Holdings and any other defendant] did not respect their separate corporate identities." *Unicredit*, 2014 WL 2916749, at *18. "Even if [the Amended Complaint] had established a lack of corporate separateness, [the plaintiffs] have not established a fraud or injustice would result if the Court failed to pierce the corporate veil." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 2009 WL 455658, at *25 (D. Nev. Feb. 23, 2009).

As a result, every count fails. The principle that a parent is not liable for its subsidiary's actions applies to every count. *See, e.g.*, *Bestfoods*, 524 U.S. at 61 (non-liability of parent for subsidiary's action is a "deeply engrained" and "general principle"); *Mandelbaum v. Fiserv*, 787 F. Supp. 2d 1226, 1234-36 (D. Colo. 2011) (dismissing all counts against parent company defendant, including unjust enrichment); *Warren Env't v. Source One Env't*, 2020 WL 1974256, at *7 n.8 (D. Mass. Apr. 24, 2020) (same, including tortious interference). As for the antitrust counts at the core of the Amended Complaint, "[a]ntitrust law doesn't recognize guilt by mere association, imputing corporate liability to any affiliate company unlucky enough to be a bystander to its sister company's alleged misdeeds." *Brown v. JBS USA Food*, 2023 WL 6292717, at *10 (D. Colo. Sept. 27, 2023) (quoting *SD3 v. Black & Decker*, 801 F.3d 412, 423 (4th Cir. 2015)); *accord Mitchael v. Intracorp*, 179 F.3d 847, 857 (10th Cir. 1999). The Amended Complaint has therefore failed to plead any count against 1248 Holdings based on its parent-company status.

**II.    The Allegations of Facts Typical to Any Parent-Subsidiary Relationship Fail.**

A complaint must plead sufficient factual allegations to state a claim. *Khalik*, 671 F.3d at 1190 (citing *Twombly*, 550 U.S. at 570). If no such facts are alleged, a complaint must be dismissed. The Amended Complaint here improperly attempts to drag 1248 Holdings into this case only because it is a parent-level holding company. It is therefore no surprise that the Amended Complaint fails to plead any facts against 1248 Holdings, let alone facts that plausibly suggest it participated in the conduct covered by the NPA. The Amended Complaint expressly abandons any attempt to rely on the admissions in the NPA. It concedes that "1248 Holdings was not part of Mariner Subsidiaries' agreement with DOJ[.]" (¶ 67.) It instead pleads facts typical of parent-subsidiary relationships.

The law requires more. Section I above sets out the blackletter law that alleging mere parent-company status is not enough. A corollary to that rule is that alleging facts that are typical to such corporate affiliations is not enough either. Facts that merely "amount to nothing more than conduct 'typical of any parent and subsidiary'" are deficient. *In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 906–07 (N.D. Ohio 2010) (quoting *In re Pennsylvania Title Ins. Antitrust Litigation*, 648 F.Supp.2d 663, 689 (E.D. Penn. 2009)). Such allegations "are equally consistent with legal conduct as with illegal conduct" and "are insufficient to state a viable § 1 claim against" a parent. *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 376–77 (M.D. Pa. 2008).

The Amended Complaint fails to allege anything more and so fails under the law. Every allegation against 1248 Holdings merely describes facts typical of parent-subsidiary relationships:

➢    The Amended Complaint alleges that 1248 Holdings has a common corporate representative with another defendant. But alleging that two distinct entities have common officers

or management is not enough. "A claim for a § 1 violation cannot merely rest upon allegations" that "corporate entities…have common management." *In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 752 (E.D. Pa. 2011). "There is nothing inherently illegal or actionable for separately incorporated [entities] to share…a president, common leadership, or staff." *Id.* "Nor does the fact that a parent and a subsidiary have common officers and directors necessarily indicate an agency relationship." *Black v. JP Morgan Chase*, 2011 WL 4102802, at *31 (W.D. Pa. Aug. 10, 2011), *R&R adopted*, 2011 WL 4089379 (W.D. Pa. Sept. 14, 2011); *accord Ct. Appointed Receiver of Lancer Offshore v. Citco*, 2008 WL 926512, at *5 (S.D. Fla. Mar. 31, 2008). "Thus, to the extent [the plaintiffs] rely on an agency theory to assert claims against Parent Corporations," those "allegations of agency are [nothing] more than bare legal conclusions[.]" *In re California Title Ins. Antitrust Litig.*, 2009 WL 1458025, at *8 (N.D. Cal. May 21, 2009).

➢   The Amended Complaint makes conclusory and speculative allegations that "Mr. Bicknell ***likely*** acted in his capacity as President and CEO of the Mariner Subsidiaries and elected Manager and indirect owner of 1248 Holdings" when "orchestrating the no-poach agreement." (¶ 71.) That is deficient for three reasons. First, it is a legal conclusion (not an allegation of fact that this Court must take as true). Second, an allegation that something is "likely" is not a well-pleaded allegation of fact. Allegations "that certain events were 'likely' are not sufficient." *Thompson v. Kernan*, 2013 U.S. Dist. LEXIS 71975, at *6 (E.D. Cal. May 21, 2013). "An allegation merely that something 'possibly' happened does not qualify as a well-pleaded factual allegation whose veracity the court should assume." *Lynch v. City of N.Y.*, 952 F.3d 67, 78 (2d Cir. 2020) (cleaned up). Third, even if it were a proper allegation, the Amended Complaint does "not set forth facts to support the allegation that [Mr. Bicknell] was acting in his capacity as an agent for [1248

Holdings] rather than [another defendant] at the time he engaged in the complained of conduct." *Caldwell-Baker v. S. Illinois Railcar*, 225 F. Supp. 2d 1243, 1261 (D. Kan. 2002).

&#10147;   The Amended Complaint makes conclusory and speculative allegations "on information and belief" that the no-poach agreement benefited 1248 Holdings.  (¶ 71.)  "A conclusory allegation made upon information and belief, is insufficient to make a claim plausible under *Twombly* and *Iqbal*."  *In re Lee*, 2019 WL 5849059, at *2 (Bankr. D. Kan. Nov. 7, 2019). In any event, allegations about a "common motive" to conspire "fail to move the needle."  *Mexican Gov't Bonds*, 412 F. Supp. 3d at 391.  Even allegations "that the parent corporations participated in the antitrust conspiracy by giving their assent and approval to the subsidiary's conduct, and through their ownership and control of their subsidiary, amount to nothing more than conduct typical of any parent and subsidiary[.]"  *Black*, 2011 WL 4102802, at *31.

The Amended Complaint fails to plead actionable facts against 1248.  Its resort to pleading run-of-the-mill facts about many typical parent-subsidy relationships falls short.[3]

## III.   Conclusory Allegations against Twenty "Defendants" are Plainly Deficient.

The Amended Complaint's general allegations against what it defines as "Defendants" (20 different defendants) and "Mariner" (7 different defendants) do not save any of the counts against 1248 Holdings.   Allegations against multiple undifferentiated "Defendants" generally are deficient.  *Burnett v. Mortg. Elec. Registration*, 706 F.3d 1231, 1240 (10th Cir. 2013).  A complaint therefore cannot survive a motion to dismiss when it fails to "make any specific allegations against [a parent company]" and instead "refer[s] generally to all defendants" while "lodg[ing] general

---

[3] The complaint also alleges the irrelevant fact that 1248 Holdings is "identified as an entity that may pay the Fund under the NPA."  (¶ 30.)  That is legally irrelevant.  Such payments are in no way an admission of anything, nor do they plausibly plead facts establishing any element of any claim.

allegations against such defendants." *Mandelbaum*, 787 F. Supp. 2d at 1234 (dismissing all counts against parent company, including unjust enrichment); *accord Fund Liquidation Holdings*, 2021 WL 4482826, at *10 (similar for Section 1 conspiracy count). That is especially true when, as here, a complaint makes "broad allegations against a large" group of defendants (including anonymous "Doe" defendants). *Burnett*, 706 F.3d at 1240.

The Amended Complaint rests on unspecified allegations against large groups of undifferentiated defendants. It "has not alleged that [1248 Holdings] 'acted' in any way, whether pursuant to a conspiracy or not." *Invamed v. Barr Labs.*, 22 F. Supp. 2d 210, 221 (S.D.N.Y. 1998). The Amended Complaint thus "fails to support the existence of a conspiracy as it presents no facts that might establish participation by [1248 Holdings] in the alleged conspiracy, save including [it] within the term 'defendants.'" *Id.* (dismissing parent companies from antitrust case). The Amended Complaint's general, conclusory allegations against large undifferentiated groups of "Defendants" do not plead any cause of action against 1248 Holdings.

## Conclusion

The Amended Complaint fails as a matter of law on all counts as to 1248 Holdings and the Amended Complaint against 1248 Holdings should thus be dismissed.

Dated: August 8, 2024                    Respectfully submitted,

By: */s/ Daniel Blegen*
Daniel Blegen  KS # 19092
Emily N. Reed,  D.Kan. #79020
SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
(816) 474-8100
(816) 474-3216 (facsimile)
dblegen@spencerfane.com
ereed@spencerfane.com

Jonathan D. King (*pro hac pending*)
John J. Hamill (*pro hac vice*)
Michael S. Pullos (*pro hac vice*)
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
(312) 368-3423
(312) 251-5728 (facsimile)
jonathan.king@us.dlapiper.com
john.hamill@us.dlapiper.com
michael.pullos@us.dlapiper.com

*Attorneys for 1248 Holdings, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

      The undersigned attorney, on oath, certifies that on August 8, 2024 he served the foregoing *Memorandum in Support of 1248 Holdings, LLC's Motion to Dismiss First Amended Class Action Complaint* via the ECF system to all parties that have consented to same in accordance with applicable Federal Rules of Civil Procedure and Local Rules of the U.S. District Court for the District of Kansas.

                                        */s/ Daniel Blegen*