# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JAKOB TOBLER and MICHELLE MCNITT, individually, and on behalf of all others similarly situated,

*Plaintiffs,*

v.

Case No. 24-2068-EFM-GEB

1248 HOLDINGS, LLC, et al.,

*Defendants.*

## MEMORANDUM AND ORDER

Before the Court is Defendant 1248 Holdings, LLC's Motion to Dismiss First Amended Class Action Complaint (Doc. 59). Plaintiffs Jakob Tobler and Michelle McNitt are two asset and wealth management professionals who bring this putative class action against several named and unnamed Defendants. Defendants are asset and wealth management companies. Plaintiffs allege that Defendants conspired to engage in an illegal "no poach" agreement in which they agreed not to compete for or hire each others' employees, specifically asset and wealth management professionals. 1248 is one of the named Defendants that seeks dismissal of the claims against it, asserting that Plaintiffs have failed to state a claim upon which relief may be granted. For the reasons stated herein, the Court denies 1248's motion.

## I.       Factual and Procedural Background[1]

The named Defendants are asset and wealth management companies that can be divided into three groups. The first, collectively referred to as "Mariner Subsidiaries," consists of Mariner

---

[1] The facts are taken from Plaintiffs' Complaint and are accepted as true for the purposes of this Order.

Wealth Advisors, LLC; Mariner, LLC; Montage Investments, LLC; Mariner Capital Advisors, LLC; Tortoise Capital Advisors, LLC; and Tortoise Ecofin Parent Holdco, LLC.[2] The second group, collectively referred to as "Mariner," consists of Mariner Subsidiaries and 1248 Holdings, LLC. The third group, collectively referred to as "American Century," consists of American Century Investment Management, Inc.; American Century Companies, Inc.; and American Century Services, LLC. There are ten unnamed Defendants that Plaintiffs hope to identify during discovery. American Century and Mariner are major players and competitors within the asset and wealth management industry. Throughout the Complaint, Plaintiffs refer to Defendants using the collective identities described above and together as "Defendants."

1248 is the parent company of Mariner Wealth Advisors, LLC. Mariner Wealth Advisors, LLC owns and controls the other companies within Mariner Subsidiaries. Mr. Martin C. Bicknell owns more than 50% of 1248's shares and serves as its Manager. He also serves as the President and CEO of Mariner Wealth Advisors, LLC.

In November 2008, a high-performing senior employee at American Century took a more favorable position with a Mariner subsidiary and recruited several other American Century employees to come with him. After losing this talent, Mr. Johnathan Thomas, President and CEO of American Century, contacted Mr. Bicknell to discuss the situation. Shortly thereafter, Mr. Bicknell, acting on behalf of Mariner Subsidiaries, and Mr. Thomas, acting on behalf of American Century, entered into a secret agreement not to hire or compete for each others' employees. This agreement reduced competition for asset and wealth management professionals, which had the

---

[2] Tortoise operated under the Mariner umbrella until January 2018, when it was purchased by Lovell Minnick Partners.

effect of suppressing wages, salaries, and other benefits that may have been otherwise available in a competitive market.

Sometime before May 15, 2023, the Department of Justice ("DOJ") investigated and found evidence of this conspiracy between Mariner Subsidiaries and American Century. Mariner Subsidiaries entered into a non-prosecution agreement with the DOJ, in which it admitted that it had engaged in this illegal agreement. American Century did the same.

On February 23, 2024, Plaintiffs filed this suit. On July 18, 2024, Plaintiffs filed their First Amended Complaint bringing five counts against Defendants: two claims under Section 1 of the Sherman Act,[3] one antitrust claim under Kansas law, one tortious interference with business expectancy claim, and a claim for unjust enrichment. Plaintiffs bring all claims on behalf of themselves and all persons employed by Defendants as asset and wealth management professionals from November 2008 until the present.

On August 8, 2024, 1248 filed the present motion seeking to dismiss the claims against it for failure to state a claim upon which relief may be granted. Plaintiffs filed a timely a response, and 1248 filed a timely reply. The matter is fully briefed and ripe for the Court's ruling.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[4] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[5] A claim is facially plausible if the plaintiff pleads facts

---

[3] 15 U.S.C. § 1.

[4] Fed. R. Civ. P. 12(b)(6).

[5] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[6] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[7] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[8] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[9] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[10]

### III.  Analysis

At the outset, the Court notes that 1248's motion to dismiss does not challenge the sufficiency of the facts alleged in support of the elements of Plaintiffs' five claims. Instead, 1248 challenges the sufficiency of the facts implicating 1248 in the conspiracy between Mariner Subsidiaries and American Century. 1248 challenges this link in three ways. First, 1248 asserts that Plaintiffs cannot rely on 1248's parent relationship to Mariner Subsidiaries to show its involvement in the conspiracy. Second, to the extent Plaintiffs seek to show 1248's direct involvement in the conspiracy, 1248 argues that the specific facts alleged demonstrate nothing more than a typical parent-subsidiary relationship. Finally, 1248 argues that Plaintiffs cannot rely

---

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[8] *Iqbal*, 556 U.S. at 678–79.

[9] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[10] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

upon general allegations made against "Mariner" or "Defendants" that are inclusive of, but not specific to, 1248.

1248 asserts that liability cannot be established upon the parent-subsidiary relationship between itself and its Mariner Subsidiaries. It is well established that a parent company is not automatically liable for its subsidiary's misconduct.[11] Although a parent company may be protected from derivative liability for a subsidiary's involvement in a conspiracy, no such protection exists when the parent is directly involved in the conspiracy.[12] When "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management and the parent is directly a participant in the wrong complained of . . . the parent is directly liable for its own actions."[13]

Here, Plaintiffs assert that when Mr. Bicknell entered into the conspiracy not to compete for American Century's employees on behalf of Mariner Subsidiaries, he also entered into the agreement on behalf of 1248. Thus, Plaintiffs do not proceed under a theory of derivative liability based upon 1248's status as a parent company, but rather Plaintiffs allege that, through the actions of its Manager, Mr. Bicknell, 1248 was "directly a participant in the wrong complained of."[14]

1248 asserts that the specific facts Plaintiffs rely upon to establish 1248's direct involvement in the conspiracy are typical of any parent-subsidiary relationship, and so they are insufficient to state a claim. Plaintiffs link 1248 to the conspiracy through Mr. Bicknell's role as the President and CEO of Mariner Wealth Advisors and the Manager and indirect owner of 1248.

---

[11] *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).

[12] *Id.* at 64.

[13] *Id.* at 64–65 (further citations and quotations omitted).

[14] *Id.* at 64.

Plaintiffs allege that it was in these roles that Mr. Bicknell engaged in the conspiracy with American Century.

Defendants correctly state that "[a] claim for a § 1 violation cannot merely rest upon allegations" that "corporate entities . . . have common management."[15] And it is a "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership."[16] But when the facts "suggest that the entities are under common ownership or control such that a single decision-making source exercises definitive control over each of them" that may be enough to state a claim.[17]

Here, the primary actor alleged to have orchestrated the conspiracy on Mariner Subsidiaries' behalf—Mr. Bicknell—helms both the parent and subsidiary. Plaintiffs allege that Mr. Bicknell entered into the agreement with American Century on behalf of Mariner Subsidiaries and with the capacity to act as 1248's agent. As alleged, Mr. Bicknell is the single decision maker for both Mariner Subsidiaries and 1248. These facts lead to the reasonable inference that Mr. Bicknell entered into the agreement on behalf of both. The nature of the conspiracy buttresses this inference: it would seem odd for Mr. Bicknell to agree not to hire or compete for American Century's asset and wealth management professionals on behalf of Mariner Subsidiaries but retain the ability to compete and hire those same employees on behalf of 1248. Thus, the Court finds that Plaintiffs have alleged facts sufficient to draw an inference that 1248 plausibly participated in the conspiracy.

---

[15] *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 752 (E.D. Pa. 2011).

[16] *Bestfoods*, 524 U.S. at 69 (further citations and quotations omitted).

[17] *See In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 749.

Finally, 1248 argues that Plaintiffs' general allegations against "Defendants" and "Mariner"—groups that Plaintiffs allege include 1248—are not sufficient to demonstrate that 1248 is particularly liable. By way of example, 1248 points out that Plaintiffs have not specifically alleged that 1248 had employees that might be affected by the conspiracy. The Complaint identifies that all Defendants "entered into an illegal agreement not to compete against each other when it came to recruiting, hiring, and compensating Asset and Wealth Management Professionals."

Group pleadings will not survive a motion to dismiss when a court "cannot tell *which* defendant is alleged to have done what, nor . . . tell *what* the misconduct was."[18] "Determining whether [Plaintiffs] state[] a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[19] The context of this claim informs the Court's findings here. Most motions to dismiss in antitrust litigation focus on a plaintiff's failure to establish the existence of a conspiracy.[20] Indeed, the existence of an agreement is the heart of a Sherman Act § 1 claim.[21] Here, however, Plaintiffs have presented evidence showing that Mariner Subsidiaries and American Century admitted to engaging in a conspiracy through their respective non-prosecution agreements with the DOJ. Thus, in the present context, the Court finds the more salient question to be whether Plaintiffs have sufficiently tied 1248 to the

---

[18] *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1240 (10th Cir. 2013).

[19] *Iqbal*, 556 U.S. at 679.

[20] *See, e.g.*, *Twombly*, 550 U.S. at 569 (affirming the district court's assessment that antitrust conspiracy was not suggested by the facts."); *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1189–90 (10th Cir. 2019) (affirming the district court's determination that plaintiffs failed to establish facts demonstrating the existence of a conspiracy); *In re EpiPen Mktg., Sales, Pracs., & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1301 (D. Kan. 2018) (extensively analyzing whether plaintiffs sufficiently demonstrated the existence of a conspiracy).

[21] *Twombly*, 550 U.S. at 556 ("[W]e hold that stating [a § 1] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.").

conspiracy. And as discussed above, the Court has found that Plaintiffs have set forth sufficient facts from which the inference can be drawn that 1248 was a direct participant in this conspiracy.

Most of Plaintiffs' allegations against 1248 pled by way of the group designations "Defendants" or "Mariner" describe the nature and effects of the conspiracy. Because the existence of the conspiracy appears to be established, the Court finds it appropriate for Plaintiffs to describe the nature and effects of the conspiracy by referencing the Defendants through designated groups. Plaintiffs have done that here. Accordingly, the Court is satisfied that the Complaint sufficiently describes "*which* defendant is alleged to have done what" and "*what* the misconduct was."[22] 1248 has been identified, through its Manager Mr. Bicknell, as engaging in concretely defined misconduct—that is, entering into an agreement not to hire or compete for asset and wealth management professionals employed by a competitor. Accordingly, the Complaint sufficiently puts 1248 on notice that Plaintiffs allege that 1248 engaged in the conspiracy to refrain from competing for or hiring the other Defendants' employees.

**IT IS THEREFORE ORDERED** that 1248 Holdings, LLC's Motion to Dismiss (Doc. 59) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 14th day of January, 2025.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[22] *Burnett*, 706 F.3d at 1240.