## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS
### AT KANSAS CITY

| | |
|---|---|
| JAKOB TOBLER and MICHELLE MCNITT, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>1248 HOLDINGS, LLC f/k/a BICKNELL FAMILY HOLDING COMPANY; MARINER WEALTH ADVISORS, LLC f/k/a MARINER HOLDINGS, LLC; MONTAGE INVESTMENTS, LLC; MARINER, LLC f/k/a MARINER WEALTH ADVISORS, LLC; MARINER CAPITAL ADVISORS, LLC; TORTOISE CAPITAL ADVISORS, LLC; TORTOISEECOFIN PARENT HOLDCO LLC; AMERICAN CENTURY COMPANIES, INC.; AMERICAN CENTURY SERVICES, LLC; AMERICAN CENTURY INVESTMENT MANAGEMENT, INC.; and DOES 1-10,<br><br>      Defendants. | Case No. 2:24-CV-02068-EFM-GEB |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS AND FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................i

TABLE OF AUTHORITIES .......................................................................................................iii

INTRODUCTION ........................................................................................................................ 1

I.    BACKGROUND.................................................................................................................. 3

    A.    Summary of the Litigation ....................................................................................... 3

        1. The Claims and History of Litigation ................................................................ 3

        2. Settlement Negotiations...................................................................................... 6

    B.    Summary of the Settlement....................................................................................... 6

        1. The Settlement Class .......................................................................................... 6

        2. Benefits of the Settlement.................................................................................. 7

        3. Notice and Settlement Administration ............................................................... 8

    C.    Service Awards and Attorneys' Fees, Costs, and Expenses ..................................... 10

    D.    Release of Claims .................................................................................................... 10

II.   THE SETTLEMENT CLASS IS LIKELY TO BE CERTIFIED FOR SETTLEMENT PURPOSES ONLY .......................................................................................................... 11

    A.    Joinder of all Settlement Class Members is Impracticable ..................................... 12

    B.    The Key Issues of Law and Fact are Common to all Settlement Class Members ......................... 12

    C.    The Claims of the Class Representatives are Typical............................................... 13

    D.    Plaintiffs will Fairly and Adequately Protect the Interests of the Settlement Class ..................... 14

    E.    Common Questions Predominate over Individual Questions .......................................... 15

    F.    A Class Action is Superior to Other Methods.......................................................... 16

    G.    Ascertainability........................................................................................................ 17

III.  THE SETTLEMENT IS WITHIN THE RANGE OF FAIR, REASONABLE AND ADEQUATE AND SHOULD BE PRELIMINARY APPROVED ...................................... 18

    A.    The Settlement was Reached as a Result of Arm's Length Negotiations through Judge Layn Phillips and his Team ................................................................... 19

B.  The Settlement is Favorable Considering the Costs, Risks, and Delay of Trial and Appeal ...................................................................................................................... 21

C.  The Method for Distributing Relief Supports Preliminary Approval ............................ 25

D.  The Terms of the Proposed Attorneys' Fee Award Support Preliminary Approval. ................................................................................................................................. 25

E.  Class Members are Treated Equitably ....................................................................... 26

F.  The Settlement is Fair and Reasonable ...................................................................... 26

IV. THE PROPOSED NOTICE PROGRAM TO THE SETTLEMENT CLASS IS APPROPRIATE ................................................................................................................ 27

A.  The Court Should Preliminary Approve the Proposed Notice of Settlement ................ 27

B.  Appointment of Simpluris to Serve as the Settlement Administrator is Proper ........... 28

C.  Appointment of Huntington Bank as Escrow Agent is Proper .................................... 29

D.  Proposed Schedule of Settlement Events ................................................................... 29

CONCLUSION .................................................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Aldrich v. McCulloch Properties, Inc.*,
   627 F.2d 1036 (10th Cir. 1980) ........................................................................ 22

*Am. Sales Co. LLC v. Pfizer*,
   2017 WL 3669604 (E.D. Va. July 28, 2017) ...................................................... 12

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................... 15, 16

*Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*,
   568 U.S. 455 (2013) .......................................................................................... 15

*Anderson v. Coca-Cola-Bottlers' Ass'n*,
   2023 WL 3159471 (D. Kan. Apr. 28, 2023) ...................................................... 19

*Binotti v. Duke Univ.*,
   No. 1:20-CV-470, 2021 WL 5363299 (M.D.N.C. Aug. 30, 2021) ..................... 11

*Black v. Occidental Petroleum Corp.*,
   69 F.4th 1161 (10th Cir. 2023) ......................................................................... 13

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ............................................................................................ 18

*CGC Holding Co. v. Broad & Cassel*,
   773 F.3d 1076 (10th Cir. 2014) ........................................................................ 16

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
   2020 WL 3288059 (D. Kan. June 18, 2020) ................................................ 19, 26

*Coe v. Cross-Lines Ret. Ctr., Inc.*,
   No. 22-2047-EFM, 2023 WL 3664921 (D. Kan. May 24, 2023) ....................... 12

*DG ex rel. Stricklin v. Devaughn*,
   594 F.3d 1188 (10th Cir. 2010) .................................................................... 13, 14

*Fuentes v. Jiffy Lube Int'l, Inc.*,
   No. 2:18-CV-5174, 2024 WL 2723840 (E.D. Pa. May 28, 2024)................... 11, 16

*Grant v. Capital Mgmt. Servs., L.P.*,
   No. 10-CV-WQH BGS, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014)................... 23

*Hapka v. CareCentrix, Inc.*,
   2018 WL 1871449 (D. Kan. Feb. 15, 2018) ...................................................... 26

iii

*Hunter v. Booz Allen Hamilton Inc.*,
    No. 2:19-CV-00411, 2023 WL 3204684 (S.D. Ohio May 2, 2023) ...................................... 11

*IBEW Local 697 Pension Fund v. International Game Tech., Inc.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) ............................................. 20

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................ 22

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................... 20

*In re Broiler Chicken Grower Antitrust Litig. (No. II)*, No.,
    620MD02977RJSCMR, 2024 WL 2117359 (E.D. Okla. May 8, 2024) ........................ 14, 15

*In re Crocs Inc. Sec. Litig.*,
    306 F.R.D. 672 (D. Colo. 2014) .............................................................. 20

*In re Currency Conversion Fee Antitrust Litig.*,
    264 F.R.D. 100 (S.D.N.Y. 2010) ............................................................. 17

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust*
    *Litig.*,
    2020 WL 1180550 (D. Kan. Mar. 10, 2020) ............................................ 13, 14, 17

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
    No. 17-MD-2785-DDC-TJJ, 2021 WL 2585065 (D. Kan. June 23, 2021) ....................... 21

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust*
    *Litig. ("EpiPen")*,
    No. 17-md-2785, 2021 WL 5369798 (D. Kan. Nov. 17, 2021)............................... 21

*In re K-Dur Antitrust Litig.*,
    686 F.3d 197 (3d Cir. 2012)................................................................... 14

*In re Molycorp., Inc. Sec. Litig.*,
    2017 WL 4333997 (D. Colo. Feb. 15, 2017) ............................................... 20

*In re Motor Fuel Temperature Sales Practices Litig.*,
    258 F.R.D. 671 (D. Kan. 2009)........................................................ 11, 12, 18

*In re Motor Fuel Temperature Sales Practices Litig.*,
    292 F.R.D. 652 (D. Kan. 2013)............................................................... 14

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) .............................................................. 15

*In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, No.,
    MC 18-798, 2020 WL 13852931 (W.D. Pa. Aug. 26, 2020)................................................ 11

*In re Syngenta AG MIR 162 Corn. Litig.*, No.,
    14-md-2591, 2018 WL 1726345 (D. Kan. Apr. 10, 2018) ..................................................... 21

*In re Syngenta AG MIR 162 Corn Litig.*,
    No. 14-md-2591, 2016 WL 5371856 (D. Kan. Sept. 26, 2016) ............................................ 17

*In re Urethane Antitrust Litig.*,
    913 F. Supp. 2d 1145 (D. Kan. 2012)..................................................................................... 22

*KPH Healthcare Servs., Inc. v. Mylan N.V.*,
    No. 20-2065-DDC-TJJ, 2022 WL 3153687 (D. Kan. Aug. 8, 2022) .................................... 21

*Marcus v. Kansas Dep't of Revenue*,
    209 F. Supp. 2d 1179 (D. Kan. 2002) .............................................................................. 19, 26

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) .................................................................................................. 17

*O'Dowd v. Anthem, Inc.*,
    2019 WL 4279123 (D. Colo. Sept. 9, 2019)........................................................................... 26

*Ogden v. Figgins*,
    315 F.R.D. 670 (D. Kan. 2016)................................................................................................ 12

*Phillips Co. v. Shutts*,
    472 U.S. 797 (1985)................................................................................................................. 17

*Robinson v. Jackson Hewitt, Inc.*,
    No. CV 19-9066 (MEF)(JRA), 2024 WL 3102249 (D.N.J. June 24, 2024)......................... 11

*Seaman v. Duke Univ.*,
    No. 1:15-CV-462, 2019 WL 13193731 (M.D.N.C. Sept. 24, 2019) ...................................... 11

*Sears v. Atchison Topeka & Santa Fe Ry. Co.*,
    749 F.2d 1451 (10th Cir. 1984) .............................................................................................. 18

*Trevizo v. Adams*,
    455 F.3d 1155 (10th Cir. 2006) .............................................................................................. 12

*Voulgaris v. Array Biopharma Inc.*,
    2021 WL 6331178 (D. Colo. Dec. 3, 2021)............................................................................ 20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................................................. 12

**Statutes**

15 U.S.C. § 1 .................................................................................................................. 13

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................... 25, 27, 28

Fed. R. Civ. P. 23(e)(1)(B)(ii) ........................................................................................ 11

Federal Rule of Civil Procedure 23(e)(1)(B) .......................................................... 3, 27

Rule 23 .................................................................................................................... 3, 11

Rule 23(a)(1) .................................................................................................................. 11

Rule 23(a)(2) .................................................................................................................. 12

Rule 23(a)(3) .................................................................................................................. 13

Rule 23(a)(4) .................................................................................................................. 14

Rule 23(a), Rule 23(b)(3) ............................................................................................. 11

Rule 23(b)(3) ...................................................................................................... 15, 16, 17, 27

Rule 23(c)(3) .................................................................................................................. 27

Rule 23(e) ................................................................................................................. 3, 18

Rule 23(e)(2) .......................................................................................................... 18, 19

Rule 23(e)(2)(C)(iii) ..................................................................................................... 25

Rule 23(h) ...................................................................................................................... 25

## INTRODUCTION

Plaintiffs Jakob Tobler and Michelle McNitt ("Plaintiffs") brought this antitrust action against Defendants 1248 Holdings, LLC f/k/a Bicknell Family Holding Company; Mariner Wealth Advisors, LLC f/k/a Mariner Holdings, LLC; Montage Investments, LLC and its related entities (including the company formerly known as Mariner Holdings, LLC, as well as companies in which Montage Investments, LLC or Mariner Holdings, LLC had a direct or indirect ownership interest of greater than or equal to 50%); Mariner, LLC f/k/a Mariner Wealth Advisors, LLC; Mariner Capital Advisors, LLC ("1248-Mariner Defendants" or "Mariner"); Tortoise Capital Advisors, LLC; Tortoiseecofin Parent Holdco LLC ("Tortoise Defendants" or "Tortoise"); American Century Companies, Inc.; American Century Services, LLC; American Century Investment Management, Inc. ("American Century Defendants" or "ACI") (collectively, "Defendants") for allegedly conspiring to suppress and eliminate competition in the labor market by agreeing not to solicit, recruit, or hire each other's employees. Plaintiffs assert claims on behalf of themselves and on behalf of a nationwide class.

After nearly one-and-a-half years of hard-fought litigation and months of arm's length settlement negotiations through the Honorable Layn R. Phillips (Ret.) and his team of professional neutrals, Plaintiffs and the Settling Defendants[1] (the "Parties") have agreed to a settlement (the "Settlement"). The Parties have executed a binding Settlement Agreement ("Agreement"), under which Settling Defendants will pay $25,500,000 into a non-reversionary Settlement Fund that will be used to provide payments to members of the Settlement Class in amounts representing a material portion of the alleged underpayment they each suffered. This Settlement was reached by

---

[1] The "Settling Defendants" include several entities affiliated with the Defendants who were named in Plaintiffs' Amended Complaint and are signatories to the Settlement Agreement.

counsel experienced in employment and antitrust class actions who understand the risks of proceeding through class certification, trial, and appeal.

As explained more fully below, the Agreement provides a favorable result for the Settlement Class. The proposed Settlement Class includes approximately 5,000 former and current employees of Settling Defendants and is defined as:

> All individuals employed by (1) 1248 Holdings, LLC, Mariner Wealth Advisors, LLC (f/k/a Mariner Holdings, LLC), Montage Investments, LLC and its related entities (including the company formerly known as Mariner Holdings, LLC, as well as companies in which Montage Investments, LLC or Mariner Holdings, LLC had a direct or indirect ownership interest of greater than or equal to 50%), Mariner, LLC, and Mariner Capital Advisors, LLC; (2) Tortoise Capital Advisors, L.L.C.; TortoiseEcofin Parent Holdco LLC; Ecofin Advisors, LLC, Tortoise Credit Strategies, LLC, Tortoise Investments Partners, LLC, Tortoise Index Solutions, LLC; TortoiseEcofin Investments Partners, LLC; Tortoise Securities, LLC, TI Services, LLC, Tortoise Parent Holdco, LLC, and Tortoise Investments, LLC, and/or (3) American Century Companies, Inc.; American Century Services, LLC; and American Century Investment Management, Inc., at any time from January 1, 2012 to December 31, 2020.[2]

*See* Settlement Agreement dated July 28, 2025 submitted with Plaintiffs' Motion as Exhibit 1.[3] Given the size of the Settlement Class, the nature of Plaintiffs' claims, potential recoverable damages, Defendants' potential defenses, and the risks and time required to prosecute this Action to conclusion, Class Counsel believes that the Settlement Fund—representing a gross per capita

---

[2] Excluded from the Settlement Class are the members of the Settling Defendants' Boards of Directors and C-suite level employees, as well as employees of Settling Defendants who resided outside of the United States for the entire Settlement Class time period.

[3] In support of their motion, Plaintiffs also submit the Declaration of George A. Hanson on behalf of Proposed Class Counsel ("Hanson Decl.") as Exhibit 2 to Plaintiffs' Motion; the Declaration of Rowdy B. Meeks on behalf of Proposed Class Counsel ("Meeks Decl.") as Exhibit 3 to Plaintiffs' Motion; and the Declaration of Anne-Marie Marra ("Simpluris Decl.") as Exhibit 4 to Plaintiffs' Motion.

amount of about $5,100—is a good outcome and in the best interests of the Settlement Class as well as within the range of possible outcomes warranting preliminary approval.[4]

Pursuant to Federal Rule of Civil Procedure 23(e)(1)(B), the first step in effectuating the terms of the Settlement is to issue Notice to the Settlement Class. Under Rule 23(e), directing notice to a settlement class is justified where the Court concludes it will likely be able to (1) approve the settlement as fair, reasonable, and adequate, and (2) certify the settlement class for purposes of judgment on the settlement. Notice to the Settlement Class should issue here because the terms of the Agreement are a fair, reasonable, and adequate settlement of the claims asserted in this litigation, and the proposed Settlement Class satisfies the requirements of Rule 23. The Agreement easily meets these requirements.

## I.    BACKGROUND

### A.    SUMMARY OF THE LITIGATION

#### 1.    The Claims and History of Litigation

Defendants are key players in the asset and wealth management industry. Plaintiffs allege that the Mariner Defendants have about $65.9 billion in assets under management with more than 1,500 employees across 34 states. Similarly, Plaintiffs allege the American Century Defendants—named one of the top 10 Best Fund Families—has about $230 billion in assets under management with over 1,400 employees across nine global offices. And Plaintiffs allege, while smaller, the Tortoise Defendants remain a leading asset management firm with about $9 billion in assets under management and nearly 200 employees. ECF No. 50 ¶¶ 46-48. In a competitive market, Plaintiffs

---

[4] Although the gross per capita amount is a useful reference point, Proposed Class Counsel have fashioned an allocation plan to distribute the Settlement Fund to the Settlement Class pro rata that considers multiple factors, including duration of employment with any Settling Defendant, compensation while employed at any Settling Defendant, and whether employment occurred during the Admitted Liability Period as explained below in Section I.A.1.

allege that Defendants hire from and compete for the same pool of workers in the asset and wealth management industry ("Asset and Wealth Management Professionals"). *Id.* at ¶ 49.

However, Plaintiffs allege that this competition was stifled. Through non-prosecution agreements with the Department of Justice, Montage and its related entities (including the company formerly known as Mariner Holdings, LLC, as well as companies in which Montage Investments, LLC or Mariner Holdings, LLC had a direct or indirect ownership interest of greater than or equal to 50%) and ACI admitted that, beginning no later than March 2014 and continuing until March 2018 ("the Admitted Liability Period"), they conspired to suppress and eliminate competition by entering into and managing a bilateral market allocation agreement not to solicit, recruit, hire, or otherwise compete for each other's employees, in violation of Section 1 of the Sherman Act ("No Poach Agreement"). ECF No. 50-1, 50-2.[5] They also admitted that their No Poach Agreement diminished employee mobility between Mariner and American Century Defendants, and in that manner, limited the opportunities of employees to negotiate for better compensation, benefits, and other terms of employment. *Id.* Based on these admissions and on Proposed Class Counsel's independent pre-suit investigation, Plaintiffs allege that Defendants' No Poach Agreement was more expansive in its duration and scope than the conduct described in the non-prosecution agreements and violated federal and state antitrust laws as well as state common law. ECF No. 50. Plaintiffs further alleged that because of Defendants' misconduct, Plaintiffs' and the Class Members' compensation was artificially deflated and lower than what their wages should have been in a competitive marketplace.

---

[5] Mariner owned the majority interest in Tortoise from 2010 until 2018 after Lovell Minnick Partners acquired Mariner's majority interest. Thus, Tortoise was part of Mariner during the admitted liability period.

While most Defendants answered the initial complaint, Defendant 1248 Holdings, LLC ("1248") moved to dismiss on June 27, 2024. ECF No. 37, 40-42, 46. In response, Plaintiffs filed their First Amended Complaint ("FAC") on July 18, 2024. ECF No. 50. Again, most Defendants answered the FAC, while Defendant 1248 moved to dismiss on August 8, 2024. ECF No. 55, 57-60. The Court denied Defendant 1248's dismissal motion on January 14, 2025, and Defendant 1248 answered the FAC on February 3, 2025.

Over the past several months, the Parties actively engaged in expansive discovery and resolved any disputes arising therefrom, including compromising in good faith on certain issues and seeking the Court's guidance when necessary on other issues. Hanson Decl., ¶ 5. On October 2, 2024, Plaintiffs served their First Set of Requests for Production of Documents on Defendants. ECF No. 79; Hanson Decl., ¶ 5. Defendants timely served written responses to these discovery requests; however, the timing for production of documents triggered a discovery conference with the Court. ECF No. 86-87, 89-90; Hanson Decl., ¶ 5. The Parties prepared position statements for the December 18, 2024 Discovery Conference and attended the hearing with Magistrate Judge Birzer, which resulted in a modified scheduling order and deadlines for discovery. ECF No. 90; Hanson Decl., ¶ 5. Likewise, on November 19, 2024, Defendants served their first set of discovery on Plaintiffs, to which Plaintiffs timely responded. ECF No. 82-83; Hanson Decl., ¶ 5.

A few months later, the Parties again reached impasse on a discovery dispute, which required the Court's attention. Hanson Decl., ¶ 6. On April 2, 2025, the Parties submitted their respective position statements to the Court on a limited number of issues and participated in the April 17, 2025 Discovery Conference before Magistrate Judge Birzer. ECF No. 116; Hanson Decl., ¶ 6. As a result, the Court granted in part Plaintiffs' Oral Motion to Compel and the Joint Oral Motion to Amend the Scheduling Order. ECF No. 117-119; Hanson Decl., ¶ 6. The Parties

completed all document production for class certification by June 13, 2025, and were in the process of scheduling depositions in connection with class certification before agreeing to the Settlement. Hanson Decl., ¶ 6.

The Parties engaged in extensive discovery efforts prior to reaching the proposed Settlement. Hanson Decl., ¶ 7. Defendants produced nearly 45,000 documents and voluminous ESI over the course of discovery, and Plaintiffs produced close to 200 documents in response to Defendants' requests. *Id.* Proposed Class Counsel dedicated significant time and resources to reviewing and analyzing the voluminous materials produced by Defendants, which informed their evaluation of the strengths and weaknesses of the Action and helped inform the Parties' settlement discussions. *Id.* This thorough discovery process ensured that Proposed Class Counsel had a well-developed understanding of the factual record. *Id.*

### 2.    Settlement Negotiations

From the outset of this Action, the Parties have engaged in meaningful dialogue exploring resolution of the case. To this end, the Parties participated in a full-day mediation session on February 18, 2025, with the assistance of the Honorable Layn R. Phillips and his team of professional neutrals. Hanson Decl. ¶ 11. Although no resolution was reached at that time, the Parties continued to engage in productive discussions with Judge Phillips and his team over the span of several months while simultaneously litigating the Action. *Id.* These continued discussions culminated in the Settlement. *Id.*

### B.    SUMMARY OF THE SETTLEMENT

### 1.    The Settlement Class

The Settlement Class is defined in the Settlement as follows:

All individuals employed by (1) 1248 Holdings, LLC, Mariner Wealth Advisors, LLC (f/k/a Mariner Holdings, LLC), Montage Investments, LLC and its related entities (including the company formerly known as Mariner Holdings, LLC, as well

as companies in which Montage Investments, LLC or Mariner Holdings, LLC had a direct or indirect ownership interest of greater than or equal to 50%), Mariner, LLC, and Mariner Capital Advisors, LLC; (2) Tortoise Capital Advisors, L.L.C.; TortoiseEcofin Parent Holdco LLC; Ecofin Advisors, LLC, Tortoise Credit Strategies, LLC, Tortoise Investments Partners, LLC, Tortoise Index Solutions, LLC; TortoiseEcofin Investments Partners, LLC; Tortoise Securities, LLC, TI Services, LLC, Tortoise Parent Holdco, LLC, and Tortoise Investments, LLC, and/or (3) American Century Companies, Inc.; American Century Services, LLC; and American Century Investment Management, Inc., at any time from January 1, 2012 to December 31, 2020.

Settlement Agreement ¶¶ 24, 27. Excluded from the Settlement Class are members of the Settling Defendants' boards of directors and C-suite level employees and employees of Settling Defendants who resided outside of the United States for entire Settlement Class time period. *Id.* ¶ 27. The Settlement Class amounts to approximately 5,000 current and former employees of Settling Defendants.

### 2.     Benefits of the Settlement

Pursuant to the Settlement, Settling Defendants have agreed to pay $25,500,000 into an Escrow Account (the "Settlement Fund") for the benefit of the Settlement Class. Settlement Agreement ¶ 26. All Administrative Expenses, Service Awards, attorneys' fees, costs, expenses as approved by the Court, and employer tax withholdings shall be paid from the Settlement Fund. *Id.* at Sections IV.B.2., VI, VII.

There is no "claims-made process." The Agreement provides for Plaintiffs' Counsel to submit a Plan of Allocation for approval to the Court for the distribution of the Settlement Fund. *See id.* at Section IV.B.1. The Plan of Allocation recommends allocating the value of the Settlement Fund available to the Settlement Class ($25,500,000 less approved attorneys' fees, expenses, service awards, administration costs, and certain tax obligations) pursuant to an objective distribution plan that is designed to provide each Settlement Class Member with a portion of the Net Settlement Fund considering the duration of employment that a Settlement Class

Member worked for any Settling Defendant, a Settlement Class Member's compensation paid by any Settling Defendant during the Settlement Class Period, and whether the Settlement Class Member was employed by any Settling Defendant during the Admitted Liability Period.[6] In addition, the Settlement Class will receive the benefit of interest that will accrue to the account prior to distribution. *Id.* at Section III.5.

### 3. Notice and Settlement Administration

Following a competitive bidding process, Plaintiffs have selected Simpluris to serve as the Settlement Administrator and Notice Provider tasked with providing notice. Hanson Decl., ¶ 23. Simpluris is a nationally recognized class action notice and administration firm that has experience administering class action settlements. *See id.*; *see generally* Simpluris Decl. Under the terms of the Settlement, Settling Defendants will provide an updated list of current or most-recently known names, addresses, and e-mail address information for all Settlement Class Members ("Settlement Class List") to the Settlement Administrator within 14 days after the entry of the Preliminary Approval order. *See* Settlement Agreement Section II.B.5; Hanson Decl., ¶ 23. Before mailing the Notice, the Settlement Administrator will update the mailing address information for the Settlement Class Member via the USPS National Change of Adress ("NCOA") database, which provides updated address information for individuals who have moved during the previous four years and filed a change of address with the USPS. Hanson Decl., ¶ 24; Simpluris Decl. ¶¶ 12-13. Additionally, all addresses will be processed through the USPS Coding Accuracy Support System ("CASS") and Locatable Address Conversion System ("LACS") to ensure deliverability. Hanson Decl., ¶ 24-25; Simpluris Decl. ¶¶ 12-13.

---

[6] The Proposed Plan of Allocation is attached to the Settlement Agreement as Exhibit B.

Thereafter, the Settlement Administrator will disseminate Notice to the members of the Settlement Class via U.S. mail to all Settlement Class Members. Hanson Decl., ¶ 25; Simpluris Decl. ¶¶ 12-13. Any returned Notices by USPS with a forwarding address will be re-mailed to the new address provided by USPS. Hanson Decl., ¶ 25; Simpluris Decl. ¶¶ 12-13. If Notices are returned by USPS without forwarding addresses, the Settlement Administrator will verify the Settlement Class Member's address through public records (i.e., "skip tracing")—using a variety of data sources, including public records, real estate records, electronic deliver assistance listings, and other sources. Hanson Decl., ¶ 26; Simpluris Decl. ¶ 14. When new postal addresses are located, the Settlement Class Member database will be updated and the Notice remailed. *Id.*

The approximate cost of notice and administrator is $25,774.00, which will be paid from the Settlement Fund. Hanson Decl., ¶ 27; Simpluris Decl. ¶ 32.

Simpluris will also establish a Settlement Website in a form agreed to by the parties and consistent with the notice to be approved by the Court. Hanson Decl., ¶ 28; Simpluris Decl. ¶ 16. In addition to Notice, the Settlement Website will include information about the Settlement, related case documents, and the Settlement Agreement. *Id.* Likewise, Simpluris will establish a Contact Center that is accessible 24 hours a day, 7 days a week through a toll-free telephone number identified in the Notice. Hanson Decl., ¶ 29; Simpluris Decl. ¶ 17.

The proposed class notice meets the standards of Rule 23(c)(2)(B). *See* Hanson Decl., ¶ 30; Class Notice, Ex. A to Settlement Agreement. The Notice uses plain English in an easy-to-read format that concisely explains to Settlement Class Members the nature of the case and their options under the Settlement. It includes information such as the case caption, a description of the Settlement Class, a description of the claims and the history of the litigation, a description of the Settlement and the claims being released, the names of Proposed Class Counsel, a statement of the

maximum amount of attorneys' fees that will be sought by Proposed Class Counsel, the maximum amount Proposed Class Counsel will seek for a service award at the final approval hearing, a description of the procedures and deadlines for requesting exclusion and objecting to the Settlement, the URL to access the Settlement Website containing relevant case documents, and the manner in which to obtain further information. *Id.*

### C. SERVICE AWARDS AND ATTORNEYS' FEES, COSTS, AND EXPENSES

The Settlement Fund will be used to pay for an award of attorneys' fees and expenses and service award payments as approved by the Court. The Settlement Fund will also be used to pay any employer withholding tax obligations. Proposed Class Counsel will move for an attorneys' fee award not to exceed thirty-five percent (35%) of the Settlement Fund plus reimbursement of costs and expenses not to exceed $430,000. Settlement Agreement, Section VII.A.; Hanson Decl., ¶ 15. That said, in connection with the motion for attorneys' fees and expenses, Proposed Class Counsel will evaluate all relevant *Johnson* factors followed in the Tenth Circuit for determining the reasonableness of attorneys' fees, which may result in Proposed Class Counsel requesting a fee award less than 35%. Proposed Class Counsel will also move for a service award payment for each of the Settlement Class Representatives not to exceed $15,000 for their time and effort in pursuing litigation on behalf of the Class. Settlement Agreement, Section VI.; Hanson Decl., ¶ 15. Settlement Class Representatives' approval of the Settlement is not conditioned in any manner on their receiving a service award or its amount. Proposed Class Counsel will file the motion for attorneys' fees, expenses, and a service award payment no later than 21 days before the Settlement Class Member opt-out and objection deadlines. Hanson Decl., ¶ 15.

### D. RELEASE OF CLAIMS

In exchange for the benefits under the Settlement, Settlement Class Members will release any legal claims arising out of the facts, activities, or circumstances alleged in the First Amended

Complaint in the Action, conduct alleged in the First Amended Complaint arising from the same factual predicate of the Action,  or any other purported collusion on competition for employment or any other purported collusion on competition for compensation of, or affecting, Releasors, whether or not alleged in the Complaint in the Action, in each case up to the Effective Date of the Settlement Agreement. Agreement, Section V; Hanson Decl., ¶ 17.

## II.    THE SETTLEMENT CLASS IS LIKELY TO BE CERTIFIED FOR SETTLEMENT PURPOSES ONLY

"The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement." Fed. R. Civ. P. 23 Advisory Committee Notes to 2018 amendments. However, for purposes of deciding whether to disseminate notice, the court must find that it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).

Courts have repeatedly certified settlement classes of workers alleging that employers conspired through agreements not to solicit, recruit, hire, or otherwise compete for employees, which suppressed compensation. [7] Here, the certification requirements of Rule 23(a), Rule 23(b)(3), and the implied ascertainability requirement are satisfied. Accordingly, preliminary certification of the Settlement Class for Settlement purposes only is appropriate.

---

[7] *In re: Broiler Chicken Grower Antitrust Litig. (NO II)*, No. 6:20-md-2977-RJS-CMR (E.D. Okla. Jan. 7, 2025); *Robinson v. Jackson Hewitt, Inc.*, No. CV 19-9066 (MEF)(JRA), 2024 WL 3102249 (D.N.J. June 24, 2024); *Fuentes v. Jiffy Lube Int'l, Inc.*, No. 2:18-CV-5174, 2024 WL 2723840 (E.D. Pa. May 28, 2024);  *Hunter v. Booz Allen Hamilton Inc.*, No. 2:19-CV-00411, 2023 WL 3204684 (S.D. Ohio May 2, 2023); *Binotti v. Duke Univ.*, No. 1:20-CV-470, 2021 WL 5363299 (M.D.N.C. Aug. 30, 2021); *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, No. MC 18-798, 2020 WL 13852931 (W.D. Pa. Aug. 26, 2020); *Seaman v. Duke Univ.*, No. 1:15-CV-462, 2019 WL 13193731 (M.D.N.C. Sept. 24, 2019).

## A.    JOINDER OF ALL SETTLEMENT CLASS MEMBERS IS IMPRACTICABLE

Rule 23(a)(1) is satisfied where "the class is so numerous that joinder of all members is impracticable." Id. "To satisfy this requirement, plaintiffs must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 678-79 (D. Kan. 2009); *see also Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). Courts in this District recognize that "a good faith estimate of at least 50 members is a sufficient size to maintain a class action." *Coe v. Cross-Lines Ret. Ctr., Inc.*, No. 22-2047-EFM, 2023 WL 3664921, at *3–4 (D. Kan. May 24, 2023) (quoting *Ogden v. Figgins*, 315 F.R.D. 670, 673–74 (D. Kan. 2016) (finding numerosity satisfied for a class including "at least 40 people")). Here, compensation data produced by Defendants show that there are approximately 5,000 individuals allegedly affected by the No Poach Agreement during the Settlement Class Period. In addition to the sheer number of individuals in the Settlement Class, certifying a class is also superior to joinder because the Settlement Class Members likely lack the necessary resources to bring complex, costly, expert-intensive antitrust suits on an individual basis. Thus, joinder of all Settlement Class Members in a single proceeding is impractical, and the numerosity requirement is satisfied. *Am. Sales Co. LLC v. Pfizer*, 2017 WL 3669604, at *10 (E.D. Va. July 28, 2017) (finding impracticality where "the majority of the proposed class members have negative value claims (i.e., the expenses, including expert fees, exceed their possible recovery).").

## B.    THE KEY ISSUES OF LAW AND FACT ARE COMMON TO ALL SETTLEMENT CLASS MEMBERS

Rule 23(a)(2)'s commonality requirement mandates the existence of "a common contention" that is "capable of classwide resolution," the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*

*v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a)(2) does not require plaintiffs to demonstrate that class members' claims are identical. Rather, this "inquiry requires the Court to find only whether common questions of law or fact exist." *Motor Fuel*, 258 F.R.D. at 679. "[E]ven a single common question" is sufficient. *Id.* at 359.

In antitrust cases, the commonality requirement is generally satisfied where the existence and impact of an unreasonable restraint on trade—such as an unlawful conspiracy to not compete for employees—will yield answers common to all class members at trial. S*ee Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1189 (10th Cir. 2023) ("[T]here are two common questions that could yield common answers at trial: the existence of an antitrust violation and the existence of impact. These questions will drive the litigation and generate common answers that will determine liability in a single stroke."). In this litigation brought against Defendants alleging the same No Poach Agreement conspiracy, the following common questions will depend on common evidence:

    a.  Whether the conduct alleged herein constitutes a violation of antitrust laws and Section 1 of the Sherman Act, 15 U.S.C. § 1;

    b.  The identity of the participants of the conspiracy;

    c.  The duration of the conspiracy;

    d.  Whether Defendants fraudulently concealed the conspiracy's existence from Plaintiffs and the Class Members;

    e.  Whether, and to what extent, Defendants' conduct caused antitrust injury (underpayment) to Plaintiffs and Class Members; and

    f.  If so, the appropriate measure of damages.

The commonality requirement is, thus, satisfied.

### C.    THE CLAIMS OF THE CLASS REPRESENTATIVES ARE TYPICAL

Rule 23(a)(3) requires that the representative parties' claims or defenses are typical of those of the class. For the typicality requirement to be satisfied, "the named plaintiffs' interests and

claims 'need not be identical' to those of the putative class members." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2020 WL 1180550, at *14 (D. Kan. Mar. 10, 2020) (quoting *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010)). "As long as the claims of the named plaintiff and class members 'are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.'" *Id.* (quoting *Devaughn*, 594 at 1198–99). Here, Settlement Class Representatives are former employees of one of the Defendants who sustained the same form of alleged injury (underpayment of compensation) resulting from the same alleged antitrust violations of Defendants. *See In re EpiPen*, 2020 WL 1180550, at *15 (holding typicality satisfied because plaintiffs "assert every class member here relies on the same legal theory—they all paid artificially elevated prices for or were oversold EpiPens[.]"); *see also In re Broiler Chicken Grower Antitrust Litig. (No. II)*, No. 620MD02977RJSCMR, 2024 WL 2117359, at *9 (E.D. Okla. May 8, 2024) (finding typicality is met where "all proposed class members seek to recover underpayments resulting from the same alleged violation of antitrust laws, the Overarching Agreement to suppress . . . compensation."). The typicality requirement is readily satisfied.

## D. PLAINTIFFS WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE SETTLEMENT CLASS

Rule 23(a)(4) requires the plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement asks whether the named plaintiffs and counsel (a) 'have any conflicts of interest with other class members' and (b) will prosecute the action vigorously on behalf of the class." *In re EpiPen*, 2020 WL 1180550, at *19 (quoting *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 671 (D. Kan. 2013)). For the same reason Plaintiffs satisfy the typicality requirement, they also satisfy the adequacy requirement. Plaintiffs' interests are aligned with those of the Settlement

Class in that they seek to prove Defendants engaged in conduct in violation of federal and state antitrust laws and that their compensation received from Defendants was artificially deflated because of such misconduct. *See, e.g., In re K-Dur Antitrust Litig.*, 686 F.3d 197, 223 (3d Cir. 2012), judgment vacated on other grounds, 570 U.S. 913 (2013) ("[A]ll of the class members have the same financial incentive for purposes of this litigation—i.e., proving that they were overcharged and recovering damages based on that overcharge."); *In re Broiler Chicken Grower Antitrust Litig. (No. II)*, 2024 WL 2117359, at *10 (concluding there was adequate representation where the plaintiffs and their counsel had no conflicts of interest with the class). Plaintiffs have no interests that conflict with those of absent Settlement Class Members, and there are no anticipated intra-class conflicts. Both Plaintiffs share an overriding interest in establishing Defendants' liability and maximizing classwide damages. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Plaintiffs and their counsel have prosecuted this Action vigorously on behalf of the class. And, as explained further below, Plaintiffs retained counsel who are highly experienced in class action, antitrust, and employment litigation. This requirement is satisfied.

### E.   COMMON QUESTIONS PREDOMINATE OVER INDIVIDUAL QUESTIONS

Predominance is satisfied if "questions of law or fact common to class members predominate over any questions affecting only individual members." Rule 23(b)(3); *see Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013). "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459. The Supreme Court recognizes that predominance is "a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

This Action hinges on two core questions: (1) whether Defendants conspired and agreed not to solicit, recruit, hire, or otherwise compete for each other's employees; and (2) whether Settlement Class Members were paid less that they would have been if not for Defendants' alleged No Poach Agreement. Both questions would be answered with evidence common to all Settlement Class Members. Defendants either entered into and managed the conspiracy as alleged or they did not. This question would be proven (or disproven) classwide based on Defendants' documents and correspondence, the testimony of current and former employees and representatives of Defendants, and expert testimony. *See, e.g.*, *Fuentes v. Jiffy Lube Int'l, Inc.*, 2024 WL 2723840, at *8 (finding the issue of whether the no poach provision suppressed wages in violation of antitrust law is common to all putative class members and predominating over individual differences). Likewise, the measure of damages, the extent of any under-compensation due to suppression of competition, would be measured through expert testimony that would be generally applicable to all class members.

### F.    A CLASS ACTION IS SUPERIOR TO OTHER METHODS

Rule 23(b)(3) requires that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> The matters pertinent to the findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The superiority requirement ensures that a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (internal quotation marks omitted); *see also CGC Holding Co.*

*v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014). Because here the claims are being certified for purposes of settlement, questions regarding the manageability of the case for trial purposes are not to be considered. *See Amchem Prod., Inc.*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

A class action is the only reasonable method to fairly and efficiently adjudicate Settlement Class Members' claims against Defendants. *See, e.g., Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [in such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available"). Certification avoids numerous individual actions (for those who can afford to sue), prevents inconsistent results, and ensures that Settlement Class Members with smaller claims have an opportunity for redress. *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 117 (S.D.N.Y. 2010) ("Many of the class members' claims will be small relative to the high costs of maintaining an antitrust action," and therefore "[s]treamlining the litigation in one forum will simplify the process and avoid inconsistency."). The superiority requirement is satisfied.

## G.    ASCERTAINABILITY

The Tenth Circuit has not specifically addressed "whether ascertainability is a separate requirement under Rule 23(b)(3)." *In re EpiPen*, 2020 WL 1180550, at *10. But this Court has analyzed the issue and predicted that the Tenth Circuit would adopt a version of ascertainability that requires that a class definition "not be too vague, the class must not be defined by subjective criteria, and the class must not be defined in terms of success on the merits." *Id*. at *11 (quoting *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591, 2016 WL 5371856, at *2–3 (D. Kan. Sept. 26, 2016) (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)). Here, the

Settlement Class is ascertainable as it turns on objective criteria such as who Settling Defendants employed and the time period of their employment. The Settlement Class is also not defined in terms of success on the merits. This requirement is satisfied.

For these reasons, the Court should find that Plaintiffs have made the necessary preliminary showing with regards to certification of the Settlement Class to disseminate the Notice.

## III.    THE SETTLEMENT IS WITHIN THE RANGE OF FAIR, REASONABLE AND ADEQUATE AND SHOULD BE PRELIMINARY APPROVED

Settlement is strongly favored as a method of resolving disputes. This is particularly true in class actions such as the present action. *Sears v. Atchison Topeka & Santa Fe Ry. Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984). Under Rule 23(e), review of a proposed class action settlement is a two-step process. *Motor Fuel*, 258 F.R.D. at 675. At preliminary approval, the Court analyzes whether there is any reason not to proceed with the proposed settlement and notify the class. After the Court preliminarily approves the settlement, the class is notified and provided an opportunity to be heard at the final approval hearing. At the final approval hearing, the Court considers the merits of the settlement to decide if it should be finally approved. *Id.* At the preliminary approval stage, however, the Court determines merely whether it is likely the settlement will be approved. Fed. R. Civ. P. 23(e). "Although the Court must assess the strength of plaintiffs' claims, it should not decide the merits of the case or resolve unsettled legal questions." *Motor Fuel*, 258 F.R.D. at 675 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 (1981)).

Rule 23(e)(2), as amended in 2018, dictates that at the final approval stage, courts should consider whether: (1) "the class representatives and class counsel have adequately represented the class"; (2) "the proposed settlement was negotiated at arm's length"; (3) "the proposed settlement treats class members equitably relative to each other"; and (4) "the relief provided for the class is adequate taking into account (i) the costs, risks, and delay of trial and appeal[,] (ii) the effectiveness

of any proposed method of distributing relief to the class, including the method of processing class member claims[,] and (iii) the terms of any proposed award of attorney's fees, including timing of payment." *Id.*

These factors largely overlap with the following factors considered by courts in this Circuit prior to the 2018 amendments "whether (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable." *Anderson v. Coca-Cola-Bottlers' Ass'n*, 2023 WL 3159471, at *2 (D. Kan. Apr. 28, 2023) (collecting authorities). Courts in this District consider the Rule 23(e)(2) factors as "the main tool in evaluating the propriety of [a] settlement," while also addressing the Tenth Circuit's factors. *Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).

This proposed Settlement satisfies each of the Rule 23(e)(2) and Tenth Circuit factors. Accordingly, Plaintiffs request that the Court grant preliminary approval of the Settlement.

A. **THE SETTLEMENT WAS REACHED AS A RESULT OF ARM'S LENGTH NEGOTIATIONS THROUGH JUDGE LAYN PHILLIPS AND HIS TEAM OF PROFESSIONAL NEUTRALS**

The Settlement was reached by experienced counsel through months of arm's length negotiations through the Hon. Layn R. Phillips, a former U.S. District Court Judge for the Western District of Oklahoma, and his team of professional neutrals. Before and during those negotiations, the Parties exchanged documents and information that provided Plaintiffs with sufficient evidence and knowledge of the claims at issue to make informed decisions regarding the strengths and weaknesses of Settlement Class Members' claims and Defendants' defenses. Plaintiffs obtained 45,000 documents produced by Defendants. Importantly, this included documents beyond what was provided as part of the DOJ's investigation, which documents Plaintiffs obtained through their

19

efforts in discovery in this case and pursuant to Judge Birzer's rulings. This factor weighs in favor of preliminary approval. *See, e.g., Marcus v. Kansas Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) (finding this factor satisfied where the settlement was reached "by experienced counsel for the class"); *In re Molycorp., Inc. Sec. Litig.*, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017), report and recommendation adopted, 2017 WL 4333998 (D. Colo. Mar. 6, 2017) ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved.").

Likewise, courts have repeatedly relied on Judge Phillips's involvement as a factor weighing in favor of approving settlement. *See Voulgaris v. Array Biopharma Inc.*, 2021 WL 6331178, at *6 (D. Colo. Dec. 3, 2021) ("Judge Phillips' involvement in the mediation process, the length of the mediation (eleven hours), and the extensive briefing and discovery that occurred in connection with the mediation, demonstrate fair, honest, and arm's length negotiations in connection with the Settlement."), *aff'd*, 60 F.4th 1259 (10th Cir. 2023); *In re Crocs Inc. Sec. Litig.*, 306 F.R.D. 672, 690 (D. Colo. 2014) (approving settlement and noting that the parties "engaged in extensive negotiations and mediation sessions" in front of "retired United States District Judge Layn R. Phillips, who has extensive experience mediating complex cases"); *IBEW Local 697 Pension Fund v. International Game Tech., Inc.*, 2012 WL 5199742, at *2 (D. Nev. Oct. 19, 2012) (finding settlement was fair when it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator, retired Judge Phillips"); *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (approving settlement when parties "engaged in extensive arm's length

negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases").

### B.    THE SETTLEMENT IS FAVORABLE CONSIDERING THE COSTS, RISKS, AND DELAY OF TRIAL AND APPEAL

Balancing the risks of continued litigation, the benefits of the Settlement, and the immediacy and certainty of significant recovery provided for by the Settlement supports that the Settlement should be preliminary approved. *See* (quoting *In re Syngenta AG MIR 162 Corn. Litig.*, No. 14-md-2591, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018) (recognizing that the "immediate recovery is more valuable than 'the mere possibility' that Class Members might achieve a more favorable outcome 'after protracted and expensive litigation' that may well last 'many years in the future'").

Plaintiffs and Proposed Co-Lead Settlement Class Counsel believe the claims asserted in the litigation against Defendants have merit. Hanson Decl., ¶ 18. However, they recognize that this Action is not without material risks. *Id.* From the outset, Defendants have vigorously contested the certifiability of a nationwide class, the presence of damages, the temporal scope of the alleged conspiracy, and the viability of Plaintiffs' alleged claims and damages outside the applicable statute of limitations. *Id.* For example, Defendants have repeatedly raised the statute of limitations as a dispositive affirmative defense. *Id.* ¶ 19. The non-prosecution agreements signed by Montage and American Century admit that the conspiracy ended in March of 2018. *Id.* The statute of limitations for federal antitrust claims under the Sherman Act is four years. *Id.* Thus, Plaintiffs must rely on doctrines like fraudulent concealment, the discovery rule, and equitable tolling for their antitrust claims to be viable. *Id.* And because such tolling "does not lend itself to determination as a matter of law," *KPH Healthcare Servs., Inc. v. Mylan N.V.*, No. 20-2065-DDC-TJJ, 2022 WL 3153687, at *5 (D. Kan. Aug. 8, 2022), this issue will be left to the trier of fact. *See*

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2021 WL 2585065 (D. Kan. June 23, 2021) ("The court agrees with plaintiffs. It can't decide this issue on summary judgment. Whether plaintiffs diligently pursued their claims, thus permitting them to avail themselves of the various tolling doctrines, is a factual issue that the jury must decide at trial."); *In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145, 1163 (D. Kan. 2012) (finding the evidence of the defendants' secret meetings and misleading pricing announcements were sufficient at least to create a fact question on the issue of fraudulent concealment); *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1042 (10th Cir. 1980) ("The question of whether a plaintiff should have discovered the basis of his suit under the doctrine of equitable tolling does not lend itself to determination as a matter of law."). *Id.* Thus, there is significant uncertainty and a serious risk that Plaintiffs may advance this litigation to trial, while incurring significant expenses for experts and discovery, only for a jury to find that there is no tolling on the statute of limitations. *Id.*

Defendants have also vigorously argued that this litigation could not be certified as a class action under Fed. R. Civ. P. 23 because, among other reasons, the proposed class was not sufficiently cohesive to warrant class treatment under Rule 23(a) and (b)(3). Hanson Decl., ¶ 20. In addition, Defendants consistently maintained that class damages were either non-existent or impossible to prove on a class basis. *Id.* In support of their damages defenses, Defendants often cited the Victim Compensation Fund established as a result of the U.S. Department of Justice's investigation that totaled $2,500,000 collectively. *Id.* According to Defendants, this amount supported an argument that class damages had either already been satisfied or were modest at best. *Id.* That Plaintiffs achieved a settlement in an amount exceeding 10-times the Victim Compensation Fund, and in the face of statute of limitations, class certification, and proof of

damages challenges, further demonstrate the fairness and adequacy of the Settlement. *Id.* Plaintiffs are mindful of their inherent burden of proof and recognize the challenges in establishing liability on a classwide basis through summary judgment and trial in a no poach case, such as this.

Even if Plaintiffs were to prevail on class certification, survive summary judgment, and secure a finding that tolling applies, there is still no guarantee the Settlement Class Members would receive any recovery from Defendants at trial. Numerous factual and legal issues remain on which the Parties intensely disagree. For instance, Defendants deny that their misconduct extends outside of the Admitted Liability Period, deny that they maintained similar No Poach Agreements with other financial institutions, and deny that Plaintiffs have been injured or damaged.

Prosecuting this litigation through class certification, summary judgment, trial, and appeal would be lengty, complex, and impose significant costs on all parties. *See, e.g., In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (recognizing that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them"). Continued proceedings necessary to litigate this matter to final judgment would likely include substantial motion practice, class certification proceedings, dispositive motions and, of course, a trial and appeal. Given the complex nature of the antitrust claims at issue, a battle of the experts at class certification, summary judgment, and trial is almost a certainty and, as such, continued proceedings would likely include substantial expert discovery and significant related motion practice. Considering the amount of money at stake, any decision on the merits would likely be appealed, causing further delay, as it would require briefing and likely oral argument. The Settlement, in contrast, delivers a real and substantial remedy to the Settlement Class without the risk and delay inherent in prosecuting this matter through trial and appeal. *See Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-WQH BGS, 2014 WL 888665, at *3

(S.D. Cal. Mar. 5, 2014) ("The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush") (citations and quotations omitted).

Further, the relief made available under the Settlement compares favorably to the relief made available to victims of other no-poach agreements in common fund cases that recently received approval as it provides for a significant recovery on a per capita basis. As mentioned above, the Settlement Class is approximately 5,000 individuals with a Settlement Fund of $25,500,000. Thus, before fees, costs, and expenses, the gross per-person recovery is about $5,100. This compares favorably to settlements in similar cases considering the procedural posture of the Action.[8] Hanson Decl. ¶ 14.

Thus, this factor favors approval of the settlement.

---

[8] *See, e.g.*, *In re High-Tech Employee Antitrust Litigation*, No. 11-CV-02509-LHK (N.D. Cal. 2015) (approving—after certifying class and ruling on summary judgment/*Daubert* motions—settlements totaling $435M for approximately 64,000 persons equaling almost $6,500 on a per-person basis); *In re Broiler Chicken Grower Antitrust Litigation (No II)*, No. 6:20-md-02977 (E.D. Okla. 2024) (approving—after certifying class and ruling on *Daubert* motions—settlements totaling $169M for approximately 24,000 persons equaling about $7,000 on a per-person basis); *In re Animation Workers Antitrust Litigation*, No. 14-CV-04062 (N.D. Cal. 2017) (approving—after certifying class and ruling on *Daubert* motion—settlements totaling $168.5M for approximately 10,800 persons equaling about $15,600 on a per-person basis); *Borozny v. Raytheon Technologies Corp.*, No. 3:21-cv-01657 (D. Conn. 2024) (approving—with pending class certification and *Daubert* motions—settlements totaling $60.5M for approximately 43,000 persons equaling about $1,400 on a per-person basis); *Seaman v. Duke University*, No. 1:15-cv-00462 (M.D.N.C. 2019) (approving—after certifying class and a hearing on summary judgment/*Daubert* motions—a $54.5M settlement for approximately 5,400 persons equaling about $10,100 on a per-person basis); *In re Railway Industry Employee No-Poach Antitrust Litigation,* No. 2:18-mc-00798-JFC (W.D. Pa. 2020) (approving settlements totaling $48.95M for approximately 8,400 persons equaling about $5,830 on a per-person basis); *Binotti v. Duke University*, No. 1:20-cv-00470 (M.D.N.C. 2021) (approving a $19M settlement for approximately 6,140 persons equaling about $3,100 on a per-person basis); *Robinson v. Jackson Hewitt Inc.*, No. 2:19-cv-09066 (D.N.J. 2024) (approving, with a pending class certification motion, a $10.8M settlement for approximately 30,000 persons equaling about $360 on a per-person basis); *Fuentes v. Jiffy Lube International, Inc.*, No. 2:18-CV-05174 (E.D. Pa. 2024) (approving $2M settlement for approximately 1,200 person equaling about $1,700 on a per-person basis).

### C.      THE METHOD FOR DISTRIBUTING RELIEF SUPPORTS PRELIMINARY APPROVAL

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

As discussed earlier, there is no "claims-made process" here. Settlement Class Members can be identified based on structured compensation data that Defendants produced in discovery and structured employment data that Settling Defendants will provide to effectuate notice. The Parties will provide the Settlement Administrator with the relevant data, including the Settlement Class Members' last known mailing addresses. Plaintiffs propose that Notice be sent via first class U.S. mail. The Notice will also tell Settlement Class Members the formula that will derive the net payment amount and identify the fees and costs paid from the payment. *See generally*, Plan of Allocation, submitted with Settlement Agreement as Exhibit B. The Settlement Administrator will maintain a dedicated toll-free phone line to answer class member questions and a website for real-time information and updates with an email address for class member questions. Plaintiffs' notice plan is the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B); *see also* Simpluris Decl., ¶ 19.

Settlement Class Members will have an opportunity to object to or exclude themselves from the Settlement. The procedures and deadlines for filing objections and requests for exclusion will be conspicuously listed on the Notice and will inform Settlement Class Members that they will be bound by the Settlement unless they timely opt-out. This favors preliminary approval of the Settlement.

### D.      THE TERMS OF THE PROPOSED ATTORNEYS' FEE AWARD SUPPORT PRELIMINARY APPROVAL.

Rule 23(e)(2)(C)(iii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment." The terms of the proposed attorneys' fee award are

consistent with class action best practices. The amount of any attorneys' fee award is intended to be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Settlement Agreement, VII.A. The Settlement is not contingent on the amount of any fee award, and the attorneys' fee award shall be paid from the Settlement Fund no later than 14 days following the Effective Date of the Settlement. The Settlement provides that Plaintiffs intend to seek an attorneys' fee award of up to 35% (thirty-five percent) of the $25,500,000 settlement and costs and expenses not to exceed $430,000. The Notice advises Settlement Class Members of these amounts. Consistent with Rule 23(h), pursuant to the proposed schedule set forth below, Plaintiffs' Motion for Final Approval of the Settlement and Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Class Representative Service Awards shall be filed no later than 21 days before the deadline for Settlement Class Members to object to Plaintiffs' attorneys' fee request.

These provisions further support preliminary approval.

### E.    CLASS MEMBERS ARE TREATED EQUITABLY

The Settlement treats Settlement Class Members equitably relative to each other. Funds will be awarded to Settlement Class Members on an objective basis, factoring their compensation during the Settlement Class Period. Plaintiffs have designed a simple process to maximize the number of Settlement Class Members who receive and accept compensation for their claims. This factor supports preliminary approval.

### F.    THE SETTLEMENT IS FAIR AND REASONABLE

The final, additional factor courts in the Tenth Circuit consider is "the judgment of the parties that the settlement is fair and reasonable." *Chavez Rodriguez*, 2020 WL 3288059 at *2. Courts recognize that the recommendation of a settlement by experienced counsel is entitled to great weight. *O'Dowd v. Anthem, Inc.*, 2019 WL 4279123, at * 14 (D. Colo. Sept. 9, 2019); *Hapka*

*v. CareCentrix, Inc.*, 2018 WL 1871449, at *5 (D. Kan. Feb. 15, 2018); *Marcus v. Kansas Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight").

Proposed Co-Lead Settlement Class Counsel are experienced antitrust and employment class action practitioners. Hanson Decl., ¶¶ 32-38; *see also* Meeks Decl. They agreed to settle this case after extensive discovery and investigation and months of negotiations through the Honorable Layn R. Phillips (Ret.) and his team of professional neutrals. In particular, members of Proposed Class Counsel have helped negotiate many antitrust class actions, including in this District, as well as employment class and collective actions. Hanson Decl., ¶¶ 32-38. On a per-person basis, the relief made available here meets or exceeds that made available in other no-poach settlements. Hanson Decl., ¶ 14. Thus, Proposed Class Counsel believe the Settlement represents an excellent result for the Settlement Class and is fair, reasonable, and adequate. *See id.* ¶ 44. Plaintiffs respectfully submit the Settlement should be preliminarily approved.

## IV. THE PROPOSED NOTICE PROGRAM TO THE SETTLEMENT CLASS IS APPROPRIATE

### A. THE COURT SHOULD PRELIMINARY APPROVE THE PROPOSED NOTICE OF SETTLEMENT

Under Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal." Likewise, in directing notice "to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Parties have negotiated the form of the notice to be disseminated to the Settlement Class. Hanson Decl., ¶¶ 23-30. The proposed Notice provides details about the Settlement, including (i) the nature of the action; (ii) the definition of the class to be certified; (iii) the class

claims and issues; (iv) that a class member may enter an appearance through counsel if desired; (v) that the court will exclude from the class any member who requests exclusion (opts out); (vi) the time and manner for requesting exclusion (opting out); and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). The Notice also includes: (1) a comprehensive summary of its terms; (2) Class Counsel's intent to request attorneys' fees, reimbursement of costs and expenses, and service awards for the Class Representatives; and (3) detailed information about the Released Claims. In short, the notice contains sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or opting out of the class.

The Court must also direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). Here, individual notice will be sent by first class U.S. mail to each Settlement Class Member, all of whom can be identified from Settling Defendants' employment records. The Settlement Administrator will perform a National Change of Address search and conduct advanced address updating using a variety of tools such as to obtain a current address. For Settlement Class Members whose notices are returned undeliverable, the Settlement Administrator will update addresses and promptly resend notices.

Thus, the Notice satisfies the specific requirements of Federal Rule of Civil Procedure 23(c)(2)(B), sufficiently informs class members of the terms of the proposed settlement and their available options and is the best notice that is practicable under the circumstances.

B. **APPOINTMENT OF SIMPLURIS TO SERVE AS THE SETTLEMENT ADMINISTRATOR IS PROPER**

Plaintiffs request that the Court appoint Simpluris to serve as the Settlement Administrator, which includes providing notice of the settlement and administering the claims process and

distribution of the Net Settlement Fund. Simpluris is a highly experienced and well-qualified class action administrator. *See generally* Simpluris Decl.

### C.     APPOINTMENT OF HUNTINGTON BANK AS ESCROW AGENT IS PROPER

Plaintiffs request that the Court appoint Huntington Bank as Escrow Agent. Huntington is the country's leading bank for qualified settlement funds ("QSFs"). During the last 20 years, its National Settlement Team has handled more than 4,500 QSFs with over $70 billion and issuing 180 million checks. Based on Huntington Bank's experience and familiarity with performing the services of an escrow agent, Proposed Class Counsel are confident that it will properly perform the duties of Escrow Agent as ordered by the Court. Hanson Decl., ¶ 31.

### D.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS

If the Court grants preliminary approval of the Settlement, the Settling Parties respectfully submit the following proposed procedural schedule:

| | |
|---|---|
| Deadline for Settling Defendants to Provide Settlement Class List to Simpluris | Within 14 days after entry of Preliminary Approval Order |
| Notice Deadline | Within 30 days after entry of Preliminary Approval Order |
| Motion for Attorneys' Fees and Expenses and Service Awards | 21 days prior to Objection and Opt-Out/Exclusion Deadline |
| Opt-Out/Exclusion Deadline | 30 days after Notice Deadline |
| Objection Deadline | 30 days after Notice Deadline |
| Final Approval Brief and Response to Objections Due | At least 14 days prior to prior to Final Approval Hearing |
| Final Approval Hearing | No earlier than 100 days after entry of Preliminary Approval Order |

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request this Honorable Court enter an Order: (1) granting preliminary approval of the Settlement; (2) preliminarily certifying the Settlement Class for settlement purposes only; (3) approving the Notice Program and directing commencement of notice to the Settlement Class; (4) appointing Simpluris, Inc. as the Settlement

Administrator; (5) appointing Huntington Bank as the Escrow Agent; (6) appointing Jakob Tobler and Michelle McNitt as Representative Plaintiffs; (7) appointing George A. Hanson, Brad T. Wilders, and Stefon J. David of Stueve Siegel Hanson LLP, and Rowdy B. Meeks of Rowdy Meeks Legal Group LLC as Settlement Class Counsel; (8) approving as to form and content the Notice; (9) approving the proposed Plan of Allocation; and (10) scheduling a Final Approval Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Representative Plaintiff service awards.

Dated: July 28, 2025

Respectfully submitted,

*/s/ George A. Hanson*

George A. Hanson      KS Bar # 16805
Brad T. Wilders        KSD Bar# 78301
Stefon J. David        KSD Bar # 79173
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
hanson@stuevesiegel.com
wilders@stuevesiegel.com
david@stuevesiegel.com

Rowdy B. Meeks        KS Bar # 16068
**ROWDY MEEKS LEGAL GROUP LLC**
8201 Mission Rd., Suite 250
Prairie Village, KS 66208
Telephone: (913) 776-5585
Rowdy.meeks@rmlegalgroup.com

***COUNSEL FOR PLAINTIFFS***
***AND THE PROPOSED CLASS***