## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY

| | |
|---|---|
| JAKOB TOBLER and MICHELLE MCNITT, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>1248 HOLDINGS, LLC f/k/a BICKNELL FAMILY HOLDING COMPANY; MARINER WEALTH ADVISORS, LLC f/k/a MARINER HOLDINGS, LLC; MONTAGE INVESTMENTS, LLC; MARINER, LLC f/k/a MARINER WEALTH ADVISORS, LLC; MARINER CAPITAL ADVISORS, LLC; TORTOISE CAPITAL ADVISORS, LLC; TORTOISEECOFIN PARENT HOLDCO LLC; AMERICAN CENTURY COMPANIES, INC.; AMERICAN CENTURY SERVICES, LLC; AMERICAN CENTURY INVESTMENT MANAGEMENT, INC.; and DOES 1-10,<br><br>      Defendants. | Case No. 2:24-CV-02068-EFM-GEB |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS TO PLAINTIFFS

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION....................................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 2

ARGUMENT .............................................................................................................................. 5

I.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE ................................. 5

    A.  The Requested Fee Award is a Reasonable Percentage of the Settlement Fund ................. 5

    B.  Class Counsel's Fees Are Reasonable Under the *Johnson* Factors ........................................ 6

        (1)  The Amount Involved and the Results Obtained (Factor 8) ...................................... 7

        (2)  Novelty and Difficulty (Factor 2), Skill (Factor 3), and Experience (Factor 9) ................................................................................................................................. 8

        (3)  Customary Fee (Factor 5) and Awards in Similar Cases (Factor 12) ..................... 10

        (4)  Contingent Fee Arrangement (Factor 6) and Desirability (Factor 10) ................... 12

        (5)  Time and Labor (Factor 1) and Preclusion of Other Cases (Factor 4) ................... 12

II.    THE COSTS AND EXPENSES ARE REASONABLE .................................................. 14

III.  THE REQUESTED CLASS REPRESENTATIVE SERVICE AWARDS ARE MERITED ...................................................................................................................... 15

CONCLUSION ......................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Been v. O.K. Indus., Inc.*,
   No. CIV-02-285-RAW, 2011 WL 4478766 (E.D. Okla. Aug. 16, 2011) ............................................ 10

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ............................................................................................................... 6

*Brown v. Phillips Petroleum Co.*,
   838 F.2d 451 (10th Cir. 1988) .......................................................................................... 7, 15

*Case v. Unified Sch. Dist. No. 233*,
   157 F.3d 1243 (10th Cir. 1998) ............................................................................................ 17

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,
   888 F.3d 455 (10th Cir. 2017) ....................................................................................... 6, 7, 8, 18

*Chieftain Royalty Co. v. XTO Energy, Inc.*,
   No. CIV-11-29-KEW, 2018 WL 2296588 (E.D. Okla. Mar. 27, 2018) ............................................ 15

*Childs v. Unified Life Ins. Co.*,
   No. 10-CV-23-PJC, 2011 WL 6016486 n.10 (N.D. Okla. Dec. 2, 2011) ........................................ 15

*Coe v. Cross-Lines Ret. Ctr., Inc.*,
   No. 22-CV-2047-EFM-ADM, 2024 WL 3566953 (D. Kan. July 29, 2024) ............................. 7, 12, 18

*Conrad v. Jimmy John's Franchise, LLC*,
   No. 18-CV-00133-NJR, 2021 WL 3268339 (S.D. Ill. July 30, 2021) ........................................ 10, 11

*Deslandes v. McDonald's USA, LLC*,
   81 F.4th 699 (7th Cir. 2023) ............................................................................................. 11

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................................................ 20

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) ................................................................................................ 7

*Gudenkauf v. Stauffer Communications, Inc.*,
   158 F.3d 1074 (10th Cir. 1998) ............................................................................................ 8

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................................................. 8

*In re Bank of America Wage and Hour Employment Litig.*,
   No. 10-md-2138-JWL, 2013 WL 6670602 (D. Kan. Dec. 18, 2013) ............................................ 17

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 17-MD-
   2785-DDC-TJJ, 2022 WL 2663873 (D. Kan. July 11, 2022) ........................................................ passim

*In re High-Tech*,
   2015 WL 5158730 ................................................................................................................ 19

*In re Syngenta AG MIR 162 Corn Litig.*,
   61 F.4th 1126 (10th Cir. 2023) ........................................................................................ 8, 15

*In re Syngenta AG MIR 162 Corn Litig.*,
   357 F. Supp. 3d 1094 (D. Kan. 2018) .................................................................... 12, 13, 14

*In re: Urethane Antitrust Litig.*,
   2016 WL 4060156 ....................................................................................................... 11, 13

*Jackson v. U.S. Bancorp*,
   No. 20-2310-EFM, 2022 WL 744693 (D. Kan. Mar. 11, 2022) ...................................... 13, 14

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ............................................................................................ 7, 16

*KPH Healthcare Servs., Inc. v. Mylan, N.V.*,
   No. 20-2065-DDC-TJJ, 2024 WL 3360499 (D. Kan. July 9, 2024) ................... 8, 10, 13, 15

*Krant v. UnitedLex Corp.*,
   No. 23-2443-DDC-TJJ, 2024 WL 5187565 (D. Kan. Dec. 20, 2024) ............... 12, 13, 15, 16

*Law v. Nat'l Collegiate Athletic Ass'n*,
   4 F. App'x 749 (10th Cir. 2001) ............................................................................................ 8

*Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*,
   No. 09-CV-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) ...................... 7

*McFadden v. Sprint Commc'ns, LLC*,
   No. 22-2464-DDC-GEB, 2024 WL 3890182 (D. Kan. Aug. 21, 2024) ............. 8, 15, 17, 18

*Nakamura v. Wells Fargo Bank, N.A.*,
   No. 17-4029- DDC-GEB, 2019 WL 2185081 (D. Kan. May 21, 2019) ................. 12, 13, 15

*Nieberding v. Barrette Outdoor Living, Inc.*,
   129 F. Supp. 3d 1236 (D. Kan. 2015) .............................................................................. 12

*Pliego v. Los Arcos Mexican Restaurants, Inc.*,
   313 F.R.D. 117 (D. Colo. 2016) ...................................................................................... 20

*Seaman v. Duke Univ.*,
   No. 1:15-CV-462, 2019 WL 4674758 (M.D.N.C. Sept. 25, 2019) .............................. 14, 19

*Shaw v. Interthinx, Inc.*,
   No. 13- CV-01229-REB-NYW, 2015 WL 1867861 (D. Colo. Apr. 22, 2015) .................... 7

*Silberblatt v. Morgan Stanley*,
   524 F. Supp. 2d 425 (S.D.N.Y. 2007) ............................................................................ 20

*Tuten v. United Airlines, Inc.*,
    41 F. Supp. 3d 1003 (D. Colo. 2014) ................................................................... 20

**<u>Statutes</u>**

15 U.S.C. § 1 ................................................................................................................. 3

**<u>Rules</u>**

Fed. R. Civ. P. 23 ............................................................................................ 6, 7, 10, 17

**<u>Other Authorities</u>**

5 Newberg on Class Actions § 15:77 .............................................................................. 8

## INTRODUCTION

Class Counsel secured a $25.5 million non-reversionary common fund Settlement to resolve the novel market allocation claims of approximately 4,420 Settlement Class Members against giants of the Kansas City financial services industry.[1] This extraordinary result is 10 times the financial compensation secured by the Department of Justice through its non-prosecution agreements with the Defendants relating to the same conduct, and it makes available a significant per-capita recovery to the Settlement Class. Class Counsel now move for an award of attorney fees as a percentage of the fund secured consistent with the guidance set forth by the Tenth Circuit and this District.

Plaintiffs alleged the Mariner, Tortoise, and American Century Defendants[2] conspired to suppress and eliminate competition in the labor market by allocating employees amongst themselves through agreeing not to solicit, recruit, or hire each other's employees. Class Counsel engaged in months of pre-suit investigation, nearly one-and-a-half years of hard-fought litigation, and months of arm's length settlement negotiations through mediator Honorable Layn R. Phillips (Ret.) and his team of professional neutrals to secure this global settlement. The litigation required Class Counsel to brief dispositive motions, conduct significant discovery, and work with experts to analyze the wage impact of Defendants' alleged conduct.[3] Before settling, Defendants produced nearly 45,000 documents and voluminous ESI, including comprehensive wage data for the Settlement Class, which Class Counsel reviewed and analyzed. Class

---

[1] The preliminary approval motion estimated a class size of 5,000 individuals. ECF No. 135 at 2. After analyzing the Settlement Class Lists provided by Defendants, Simpluris mailed the approved-Class Notice to 4,412 individuals on September 19, 2025. *See* Declaration of George A. Hanson ("Hanson Decl.") ¶ 8, attached hereto as Exhibit A.

[2] Mariner comprises Defendants 1248 Holdings, LLC f/k/a Bicknell Family Holding Company; Mariner Wealth Advisors, LLC f/k/a Mariner Holdings, LLC; Montage Investments, LLC and its related entities (including the company formerly known as Mariner Holdings, LLC, as well as companies in which Montage Investments, LLC or Mariner Holdings, LLC had a direct or indirect ownership interest of greater than or equal to 50%); Mariner, LLC f/k/a Mariner Wealth Advisors, LLC; Mariner Capital Advisors, LLC. Tortoise comprises Tortoise Capital Advisors, LLC; Tortoiseecofin Parent Holdco LLC. And American Century comprises American Century Companies, Inc.; American Century Services, LLC; American Century Investment Management, Inc.

[3] Unless otherwise noted, the capitalized terms used in this Memorandum of Law have the same meanings as defined in the Settlement Agreement. See Settlement Agreement, ECF No. 454-2.

Counsel advanced thousands of attorney hours and advanced $396,212.51 in out-of-pocket expenses on a contingent basis to obtain this settlement. Hanson Decl., ¶¶ 12-13.

Through their efforts, Class Counsel obtained a significant settlement for these workers. The relief made available is at the high end of per-capita relief available in other no-poach agreements and is a significant recovery. Before fees, costs, and expenses, the gross per-person recovery is about $5,700. Further, there is no claims process. Every Settlement Class Member will be mailed a check for their share of the settlement. Likewise, the release is tailored to the scope of the claims in the case.

The time and money spent by Class Counsel to achieve this result were advanced on a fully contingent basis. Given the result, time, expense, risk, and skill required to achieve the result obtained, including the complex nature and novelty of this antitrust class action, Class Counsel seek the attorneys' fees equal to the customary one-third of the Settlement Fund (i.e., $8,500,000), together with any interest earned on that amount until it is paid and reimbursement of their unreimbursed expenses in the amount of $396,212.51. In addition, Class Counsel request payment of Service Awards of $15,000 each to Plaintiff Tobler and Plaintiff McNitt for their efforts in coming forward and participating in discovery on behalf of the Settlement Class. These requests are fair, reasonable, and consistent with Tenth Circuit law. Accordingly, Class Counsel respectfully ask the Court to award the fees, expenses, and Service Awards as requested herein. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2022 WL 2663873, at *5 (D. Kan. July 11, 2022) ("Our court consistently has recognized that a one-third fee is customary in contingent-fee cases . . . and well within the range typically awarded in class actions.") (cleaned up).

## **FACTUAL BACKGROUND**

The history of this litigation was set out in detail in Plaintiffs' Memorandum in Support of Unopposed Motion for Settlement and for Preliminary Approval of Proposed Class Action Settlement and accompanying Declaration of George A. Hanson. ECF No. 134-2, 135. This history is summarized below and demonstrates the significant time and labor this case required, the risks the claims faced, and the strength of the result (as well as other factors relevant to the Court's analysis).

Sometime after March 2018, the Department of Justice started an investigation into Mariner and American Century for violations of the Sherman Act, 15 U.S.C. § 1. The Department's investigation culminated in two non-prosecution agreements: one with Mariner and the other American Century. ECF No. 50-1, 50-2. Both Mariner and American Century admitted that they conspired to suppress and eliminate competition by entering into and managing a bilateral market allocation agreement with a labor market competitor not to solicit, recruit, hire, or otherwise compete for each other's employees in violation of the Sherman Act. In lieu of criminal prosecution, Mariner paid $1 million and American Century paid $1.5 million to compensate employees as part of their respective victim compensation funds. Hanson Decl. ¶ 3.

Starting in late 2023, Class Counsel spent significant time investigating the alleged conspiracy, interviewing affected class members, and researching potential claims. For example, Class Counsel spoke with multiple former employees of Defendants across the country to learn about their experiences while employed with a Defendant. Class Counsel also followed up with these former employees of Defendants to obtain and review any relevant documents. These discussions were key in drafting and amending Plaintiffs' allegations as well as understanding the unique features of the Asset and Wealth Management industry. Hanson Decl. ¶ 4.

Plaintiffs filed their class action complaint against Defendants in February 2024, asserting claims for violations of antitrust laws and state common law, for conspiring not to solicit, recruit, or hire each other's employees thereby artificially deflating their compensation. Defendant 1248 Holdings, LLC filed a motion to dismiss. ECF No. 41. Plaintiffs prepared and filed an amended complaint, adding allegations to address the bases of 1248 Holdings' motion. ECF No. 50. Nonetheless, 1248 Holdings filed another motion to dismiss, arguing that Plaintiffs made insufficient allegations that 1248 Holdings was part of the no-poach conspiracy. ECF No. 61. Plaintiffs prepared and filed an opposition to that motion. ECF No. 59. On January 14, 2025, the Court issued a memorandum and opinion denying the motion to dismiss. ECF No. 92. Hanson Decl. ¶ 5.

While the motion to dismiss was pending, the parties exchanged discovery. In addition to serving their initial disclosures, Plaintiffs prepared and served 56 requests for production of documents on each

Defendant. Defendants each served 18 document requests and 18 interrogatories on the Plaintiffs. Class Counsel prepared objections and responses to these requests. Defendants largely objected to all of Plaintiffs' discovery, including Class Counsel's request for the documents turned over to, and communications with, the DOJ regarding its investigation into the no-poach agreements. The parties exchanged numerous letters and met and conferred many times. There were several hearings with Magistrate Judge Birzer, and related briefing, which Class Counsel submitted. Ultimately, Judge Birzer granted in part and denied in part, without prejudice, Plaintiffs' discovery requests. ECF No. 119. Defendants produced 44,421 documents, including documents not produced to the DOJ investigators. Hanson Decl. ¶ 6.

In anticipation of a scheduled mediation, Plaintiffs quickly assembled a team of attorneys to identify and categorize key documents that support Plaintiffs' claims. In addition, using the compensation data obtained from Defendants, Plaintiffs worked with a consulting economist to model class-wide damages. Plaintiffs prepared a 15-page mediation brief, outlining the strengths of their case, which was shared with the Defendants. Plaintiffs also submitted a comprehensive mediation reply statement to Defendants' brief, and thoughtfully met with the mediator and his team and responded to their pre-mediation questions. Hanson Decl. ¶ 7.

On February 18, 2025, the Parties participated in a full-day mediation with the Honorable Layn R. Phillips (Ret.) in San Francisco, California, and his team of professional neutrals. Though the Parties were unable to reach a resolution at that time, through continued negotiations facilitated by Judge Phillips and his team and as litigation activities continued, including scheduling of key depositions of Defendants' principals, the Parties settled in principle on June 17, 2025. Thereafter, Class Counsel spent over a month negotiating terms of the Settlement Agreement, evaluating bids from Settlement Administrators and banks, and preparing Class Notice and the Plan of Allocation. Hanson Decl. ¶ 8.

On July 28, 2025, Plaintiffs moved for preliminary approval of the Settlement. The Court granted Plaintiffs' motion on August 21, 2025, finding that the Court would likely approve the Settlement as fair, reasonable, and adequate and thus ordered notice of the Settlement to be issued to the Class and scheduled a Final Approval Hearing for December 4, 2025. *See* ECF No. 144. Hanson Decl. 9.

Since then, Class Counsel has worked with Simpluris, Inc. ("Simpluris") and defense counsel to issue Notice to the Settlement Class, which included review and approval of the final notice, review and feedback on the Settlement Website and responses to questions from Class Members and Simpluris. Consistent with the Court's Order, the Settlement Administrator issued notice to the Class on September 19, 2025. Class Members will have ample opportunity to review and express any views they may have on Class Counsel's requests before the October 19, 2025 deadline. Class Counsel will continue to work with Simpluris and Settlement Class members to ensure progress of the Settlement. Hanson Decl. ¶¶ 10, 11.

## ARGUMENT

### 1.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

"In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). When dealing with a common fund for the benefit of the class, the Supreme Court has long recognized "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This understanding "prevent[s] . . . inequity" by proportionately spreading payment among those who benefit from others' labor. *Id.* at 478. Here, the Notice to the Class details Class Counsel's plan to seek up to thirty-five percent of the common fund. *See* Proposed Class Notice, ECF No. 134-1, at Question 13 ("How will Class Counsel be paid?").

Although Class Counsel said they might request up to thirty-five percent, guided by the *Johnson* factors, Class Counsel now seek attorneys' fees of one-third (or 33⅓ percent) of the Settlement Fund. Under Fed. R. Civ. P. 23(h) the Court's role is to assess whether the amount requested is reasonable. As outlined below, the requested fee of one-third of the common fund is reasonable.

### 2.    The Requested Fee Award is a Reasonable Percentage of the Settlement Fund

There are two methods for determining attorneys' fees in common fund cases: the percentage-of-the-fund method or the lodestar approach. *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 458-459 (10th Cir. 2017) (citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)). Courts in the Tenth Circuit prefer the percentage-of-the-fund method for determining attorneys'

fees in common fund cases. *Id.* ("…expressing a preference for the percentage-of-the-fund approach" versus the loadstar method.).[4] This approach is favored by courts because "a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel were retained on a contingent fee basis. . . ." *Shaw v. Interthinx, Inc.*, No. 13- CV-01229-REB-NYW, 2015 WL 1867861, at *5 (D. Colo. Apr. 22, 2015) (quoting *Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *2 (D. Colo. Dec. 22, 2010)). Here, Class Counsel's request of one-third of the $25.5 million Settlement Fund is reasonable and is supported by the *Johnson* factors, as explained below.

### 3.    Class Counsel's Fees Are Reasonable Under the *Johnson* Factors

To analyze whether a fee award is reasonable under Rule 23(b), courts in the Tenth Circuit evaluate the factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee— this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-55 (10th Cir. 1988) (citing *Johnson*, 488 F.2d 717-19). The Tenth Circuit "characterize[s] this 'percentage plus *Johnson* factors' framework as a 'hybrid' approach to attorneys' fees." *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1193 (10th Cir. 2023) (quoting *Chieftain*, 888 F.3d at 459). This hybrid approach combines "the percentage fee method with the specific factors used to calculate the lodestar" to assess whether the fee is reasonable. *Id.* Not all *Johnson* factors are necessarily applicable or carry the same weight in the common fund context, as they would in a statutory-fee shifting case. *Id.*; *see also Law v. Nat'l Collegiate Athletic Ass'n*, 4 F. App'x 749, 752 (10th Cir. 2001) ("We have never held that a district court abuses its discretion by failing to specifically address each *Johnson* factor.") (quoting *Gudenkauf v. Stauffer Communications, Inc.*, 158 F.3d 1074, 1083 (10th

---

[4] *See also, e.g.*, *Coe v. Cross-Lines Ret. Ctr., Inc.*, No. 22-CV-2047-EFM-ADM, 2024 WL 3566953, at *1 (D. Kan. July 29, 2024) (Melgren, J.).

Cir. 1998)). The pertinent *Johnson* factors[5] analyzed below and listed in order of importance, support the requested one-third fee award.[6]

### 4. The Amount Involved and the Results Obtained (Factor 8)

The eighth *Johnson* factor—the result—is regarded by the Supreme Court as the "the most critical factor" in the fee award analysis. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.,* 2022 WL 2663873, at *4 ("The court finds that the result-obtained factor here deserves greater weight than the other *Johnson* factors."). Here, Class Counsel obtained an outstanding result for the class members, and based on class size, provides meaningful relief for the Class. The Settlement Class is roughly 4,420 individuals with a Settlement Fund of $25,500,000. Thus, the gross per-capita recovery is about $5,700. As noted in the preliminary approval motion, this gross per-capita recovery compares very favorably to other no-poach common fund settlements, especially considering the procedural posture of this Action.[7]

---

[5] Two *Johnson* factors are not applicable in this case: Time limitations imposed by the client or the circumstances (Factor 7); and nature and length of the professional relationship with the client (Factor 11). *See* 5 Newberg on Class Actions § 15:77 n.15 (5th ed. 2015) (relationship with client "has little relevance in the class setting given that the 'client' is the class."); *see also McFadden v. Sprint Commc'ns, LLC*, No. 22-2464-DDC-GEB, 2024 WL 3890182, at *7 (D. Kan. Aug. 21, 2024) (concluding that Factor 7 and Factor 11 were "of nominal or no importance" in evaluation of the percentage of the fund award.); *KPH Healthcare Servs., Inc. v. Mylan, N.V.*, No. 20-2065-DDC-TJJ, 2024 WL 3360499, at *6 (D. Kan. July 9, 2024) (same).

[6] In prior orders approving fee awards, courts in this district have analyzed several *Johnson* factors in tandem, which Class Counsel have adopted here. *See, e.g.*, *McFadden*, 2024 WL 3890182, at *6; *KPH Healthcare*, 2024 WL 3360499, at *5.

[7] *See, e.g.*, *Borozny v. Raytheon Technologies Corp.*, No. 3:21-cv-01657 (D. Conn. 2024) (approving—with pending class certification and Daubert motions—settlements totaling $60.5M for approximately 43,000 persons equaling about $1,400 on a per-person basis); *In re Railway Industry Employee No-Poach Antitrust Litigation*, No. 2:18-mc-00798-JFC (W.D. Pa. 2020) (approving settlements totaling $48.95M for approximately 8,400 persons equaling about $5,830 on a per-person basis); *Binotti v. Duke University*, No. 1:20-cv-00470 (M.D.N.C. 2021) (approving a $19M settlement for approximately 6,140 persons equaling about $3,100 on a per-person basis); *Robinson v. Jackson Hewitt Inc.*, No. 2:19-cv-09066 (D.N.J. 2024) (approving, with a pending class certification motion, a $10.8M settlement for approximately 30,000 persons equaling about $360 on a per-person basis); *Fuentes v. Jiffy Lube International, Inc.*, No. 2:18-CV-05174 (E.D. Pa. 2024) (approving $2M settlement for approximately 1,200 person equaling about $1,700 on a per-person basis); *In re High-Tech Employee Antitrust Litigation*, No. 11-CV-02509-LHK (N.D. Cal. 2015) (approving—after certifying class and ruling on summary judgment/Daubert motions—settlements totaling $435M for approximately 64,000 persons equaling almost $6,500 on a per-person basis*); In re Broiler Chicken Grower Antitrust Litigation (No II)*, No. 6:20-md-02977 (E.D. Okla. 2024) (approving—after certifying class and ruling on Daubert motions—settlements totaling $169M for approximately 24,000 persons equaling about $7,000 on a per-person basis);

Moreover, the size of the fund obtained by Class Counsel dwarfs the amount of victim compensation obtained by the DOJ as part of its investigation into the same conspiracy. The DOJ obtained $2.5 million from Mariner and ACI in exchange for its non-prosecution agreements, which amount was distributed to Settlement Class Members. Unlike Class Counsel, the DOJ had pre-suit subpoena power, the authority of the federal government, and the threat of criminal prosecution behind it. Nonetheless, Class Counsel secured more than 10 times the relief for the Settlement Class than the DOJ secured, which multiplies both the remunerative benefits and the deterrent benefits secured for the Settlement Class. Thus, this factor doubly supports the requested fee.

### 5.    Novelty and Difficulty (Factor 2), Skill (Factor 3), and Experience (Factor 9)

The difficulty and novelty of the factual and legal issues presented, the second *Johnson* factor, supports approval of the requested fees in this instance. "Courts emphasize the risk undertaken by counsel" in awarding fees: "complex cases justify higher fees, and simple cases lower fees." *Been v. O.K. Indus., Inc.*, No. CIV-02-285-RAW, 2011 WL 4478766, at *7 (E.D. Okla. Aug. 16, 2011), *report and recommendation adopted*, No. CIV-02-285-RAW, 2011 WL 4475291 (E.D. Okla. Sept. 26, 2011). As courts within this District have recognized, "[c]lass actions have a well deserved reputation as being most complex . . . and an antitrust class action is arguably the most complex action to prosecute." *KPH Healthcare Servs.*, 2024 WL 3360499, at *5.

This action, in particular, raises complex factual and legal issues. For example, Class Counsel would seek to certify a class of thousands of employees from three different companies for alleged conduct that occurred more than five years before the filing of this Action. This introduces questions of manageability of the class—which Defendants would have vigorously challenged—to warrant Rule 23 treatment and requires sufficient knowledge of the Asset and Wealth Management industry.[8]

---

[8] Indeed, courts have denied certification of no poach cases. *See, e.g.*, *Conrad v. Jimmy John's Franchise, LLC*, No. 18-CV-00133-NJR, 2021 WL 3268339 (S.D. Ill. July 30, 2021) (declining to certify a class because of several Rule 23(a) and (b) failures of proof, including the predominance of individual questions).

Moreover, although the non-prosecution agreements precluded Mariner and ACI from disputing liability for a period of the total alleged conspiracy, they were still free to—and did—dispute the remaining period of liability and the existence of any wage suppression caused by the conspiracy. Specifically, Defendants argued that even if there was a no-poach agreement between them, their conduct could not have meaningfully suppressed wages because of alternative employers available the class members. According to Mariner and ACI, the DOJ victims compensation fund of $2.5 million represented the maximum amount of wage suppression that their conspiracy might have even plausibly caused. Defendants would have broadly and vigorously challenged the amount that can be proven by a reliable economic model.

In addition, Defendants vigorously asserted a statute of limitations defense, the outcome of which depended on Plaintiffs' ability to prove that Defendants fraudulently concealed the alleged conspiracy. Moreover, no-poach employment antitrust cases are relatively novel. These types of class actions only emerged recently, starting with *In re High-Tech*, with only a limited number of no-poach antitrust cases filed since then. Indeed, this Action appears to be the only filed no-poach antitrust class action concerning the Asset and Wealth Management industry.[9] Furthermore, it is unsettled which antitrust standard applies in no poach cases: *per se* or Rule of Reason. *See, e.g.*, *Deslandes v. McDonald's USA, LLC*, 81 F.4th 699, 705 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 1057, 218 L. Ed. 2d 241 (2024) (reversing district court's dismissal of the complaint and noting that "the district judge jettisoned the *per se* rule too early" when deciding to instead evaluate the sufficiency of the complaint under the Rule of Reason standard).

To assess skill (Factor 3) and experience (Factor 9), courts analyze whether the litigation "required great skill in a highly specialized field . . . , against highly skilled opposing counsel, and [whether] plaintiffs' attorneys, . . . demonstrated great skill throughout." *See In re: Urethane Antitrust Litig.*, 2016 WL 4060156, at *5. As discussed above, no poach antitrust class actions is an emerging field with unsettled law—this

---

[9] This is unlike the fast-food industry that has seen a handful of these no-poach class actions. *See, e.g.*, *DeSlandes v. McDonald's USA, LLC*, No. 1:17-cv-04857 (N.D. Ill.); *Arrington v. Burger King Worldwide, Inc.*, No. 1:18-cv-24128 (S.D. Fla.); *In re: Papa John's Employee and Franchisee Employee Antitrust Litig.*, No. 3:18-cv-00825 (W.D. Ky.); *Conrad v. Jimmy John's Franchise, LLC*, No. 3:18-cv-00133 (S.D. Ill.).

qualifies as "highly specialized." Class Counsel enjoy a strong reputation litigating and serving in leadership roles for numerous complex, antitrust and employment-related class actions both within this District and outside,[10] and they were opposed in this case by highly experienced and skilled counsel from nationally rated firms representing sophisticated clients with meaningful resources. *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1113 (D. Kan. 2018) (finding lead counsel, including Stueve Siegel Hanson, "very experienced, had very good reputations, were excellent attorneys, and performed excellent work" in awarding one-third of common fund). Class Counsel's experience allowed them to negotiate a well-informed settlement that compares favorably to other no poach common fund settlements and ensures class members can obtain settlement funds now, rather than face a possible dismissal or other unfavorable results in the future.

### 6.     Customary Fee (Factor 5) and Awards in Similar Cases (Factor 12)

The fifth *Johnson* factor asks whether the requested fee award is customary. In contingent fee cases, "a one-third fee is customary." *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d. at 1113-14; *Coe*, 2024 WL 3566953, at *2 (approving a 40% contingency fee as "customary" and "represent[ing] the market rate."); *Krant v. UnitedLex Corp.*, No. 23-2443-DDC-TJJ, 2024 WL 5187565, at *7 (D. Kan. Dec. 20, 2024) ("[I]n our court, an attorney fee award of one-third is consistent with fees awarded in other high-risk, complex class actions resulting in the creation of a common fund."); *Nakamura v. Wells Fargo Bank, N.A.*, No. 17-4029- DDC-GEB, 2019 WL 2185081, at *3 (D. Kan. May 21, 2019) ("33%[] is within the range of customary fees awarded in similar cases"); *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1250 (D. Kan. 2015) (recognizing a one-third fee of the common fund was "well within the range typically awarded in class actions.").

The twelfth *Johnson* factor asks whether the requested fee is similar to the fee awarded in other cases. "In this Circuit and District, courts typically award one-third of the fund as payment for attorneys' fees in complex class action cases[.]" *In re Hill's Pet Nutrition, Inc. Dog Food Prods. Liab. Litig.*, No.

---

[10] *See* Declaration of George A. Hanson in Support of Plaintiffs' Motion for Settlement and for Preliminary Approval of Proposed Class Action, ECF No. 134-2, ¶¶ 32-38.

2:19-MD-02887-JAR-TJJ (D. Kan. July 30, 2021), ECF No. 132 ¶ 9; *see, e.g.*, *Krant*, 2024 WL 5187565, at *9 (awarding attorney fees of one-third of the $1.3 million settlement). Even more specifically courts in this District routinely award one-third of the fund as attorney fees in *antitrust* class actions. *See KPH Healthcare Servs.*, 2024 WL 3360499, at *6 (approving a fee award of one-third the common fund settlement amount in a $50 million class recovery, stating "one-third is consistent with fees awarded in comparably high-risk, high potential damage, complex class actions"); *In re: Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156, at *5 (D. Kan. July 29, 2016) (awarding one-third of $835 million in antitrust class action); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2022 WL 2663873, at *4-6 (awarding one-third of $264 million antitrust settlement, stating "[o]ur court consistently has recognized that a 'one-third fee is customary in contingent-fee cases'"); *see also In re Syngenta*, 357 F. Supp. 3d at 1110 (awarding one-third of the settlement fund in attorneys' fees on a $1.5 billion class recovery in non-antitrust class action). As this Court has recognized, class actions have "become more complex and riskier" since 2015 and that "increased complexity and risk has led to requests for higher percentages" for attorneys' fees, resulting in some awards exceeding one-third and reaching 40% of the settlement fund. *Nakamura*, 2019 WL 2185081, at *2-3 (internal quotations and citations omitted); *see e.g.*, *Jackson v. U.S. Bancorp*, No. 20-2310-EFM, 2022 WL 744693, at *4 (D. Kan. Mar. 11, 2022) (Melgren, J.) (approving attorneys' fees of 40% of the gross settlement fund as "fair and reasonable").

Additionally, the percentage requested is consistent with fee awards in no-poach settlements from other jurisdictions. *See, e.g.*, *Robinson v. Jackson Hewitt Inc.*, No. 2:19-cv-09066 (D.N.J. Nov. 25, 2024), ECF 344 at 2 (awarding one-third of $10 million settlement in no poach antitrust case); *In re Railway Industry Employee No-Poach Antitrust Litigation*, No. 2:18-mc-00798-JFC (W.D. Pa. Aug. 26, 2020), ECF 313 at ¶ 2 (approving one-third of $48.95 million settlement in no poach antitrust case); *Seaman v. Duke Univ.*, No. 1:15-CV-462, 2019 WL 4674758, at *5 (M.D.N.C. Sept. 25, 2019) (approving one-third of $54.5 million settlement in no-poach antitrust case); *Borozny v. Raytheon Technologies Corp.*, No. 3:21-cv-01657 (D. Conn. May 14, 2025), ECF 1002 at ¶ 2 (approving one-third of $60.5 million settlement in no-poach case); *In re Broiler Chicken Grower Antitrust Litigation (No II)*, No. 6:20-md-02977 (E.D. Okla. Jan. 7,

2025), ECF 634 at ¶ 2 (award one-third of $100 million settlement in no-poach case). This class action was taken on a contingency fee basis and involved complex, novel and difficult issues (see Factor 2 discussed above). Thus, the requested fee of one-third is customary and consistent with awards in similar cases.

### 7.    Contingent Fee Arrangement (Factor 6) and Desirability (Factor 10)

Courts in this District have explained that cases taken on a contingency basis are less desirable to other attorneys due to a "substantial risk of no recovery[.]" *In re Syngenta*, 357 F. Supp. 3d. at 1114; *see also Eatinger v. BP America Prod. Co.*, No. 07-cv-01266-EFM-KMH (D. Kan. Sept. 17, 2012), ECF No. 375 at ¶ 35 ("The time, effort, and out-of-pocket investment makes a class action undesirable to most attorneys."). This Court has previously recognized the heightened risk in contingency fee cases. *Jackson*, 2022 WL 744693, at *4 ("In addition to their demonstrated expertise and experience in these matters, counsel assumed a substantial risk in taking this matter on a contingency basis."). Class Counsel took this case on a contingency basis, which was an inherent risk given the potential outcome of a dismissal. Indeed, in addition to investing their time on a contingent basis, Class Counsel spent nearly $400,000 in costs—most of which was spent on hiring experts to model damages—on a fully contingent basis. Hanson Decl. ¶¶ 2, 13. Here, the risk and desirability associated with a contingency fee support the requested fee award.

### 8.    Time and Labor (Factor 1) and Preclusion of Other Cases (Factor 4)

Time and labor "guides the lodestar analysis in a statutory fee-shifting case, but has minimal importance in a percentage of the common fund case." *KPH Healthcare Services*, 2024 WL 3360499, at *5; *McFadden*, 2024 WL 3890182, at *7 (citing *Nakamura*, 2019 WL 2185081, at *3). As the Tenth Circuit has explained, "applying the lodestar method to a common fund case can fail to account for the productive quality of an attorney's labor, that is, whether an attorney's time meaningfully contributed to benefits conferred on the class." *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th at 1192. "In a common fund case,

the fund, itself, is the measure of an attorney's success." *Id*. And, thus, the size of the fund is a more important factor than the number of hours expended. *Id*.[11]

Nonetheless, "to the extent this factor applies to a percentage-of-the-fund case," it supports the fee request, *see In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2022 WL 2663873, at \*6. A fee is justified where the engagement required extensive time and resources such that it "precluded or reduced [the attorneys'] opportunity for other employment." *Brown*, 838 F.2d at 455. "This guideline involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718.

Class Counsel dedicated over 2,000 hours of time and labor to this Action, with significant work remaining, on a fully contingent basis on behalf of the Settlement Class at the expense of other opportunities. Class Counsel were prepared to move forward with deposition and class certification when Defendants agreed to present the settlement, which – as noted – compares favorably to other no-poach settlements, particularly in light of the risks concerning damages and statute of limitations in this case. ECF No. 134-2, ¶¶ 14, 19-20. They spent significant time investigating the alleged conduct, preparing and filing a robust complaint to withstand dismissal motions, and zealously litigating this action. Hanson Decl. ¶¶ 4-

---

[11] Although courts can determine a lodestar to crosscheck a fee requested as a percentage of the fund, the Tenth Circuit has held that the "'time and labor involved' factor need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors, the basis of which is clearly reflected in the record." *Id*. (quoting *Brown*, 838 F.2d at 456 (citation and footnote omitted)); *KPH Healthcare* 2024 WL 3360499, at \*5 ("a lodestar analysis (or crosscheck) is neither required nor needed to assess reasonableness in a percentage of the fund determination."); *Krant*, 2024 WL 5187565, at \*8 ("In fact, a lodestar analysis—effectively a crosschecking mechanism—is neither required nor needed to assess the reasonableness in a percentage of the fund determination."); *Nakamura*, 2019 WL 2185081, at \*3 (first citing *Brown*, 838 F.2d at 456, 456 n.3; then citing *Chieftain Royalty Co. v. XTO Energy, Inc.*, No. CIV-11-29-KEW, 2018 WL 2296588, at \*3 (E.D. Okla. Mar. 27, 2018) (neither lodestar analysis nor lodestar crosscheck is required); and then citing *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at \*15 n.10 (N.D. Okla. Dec. 2, 2011) ("Because the other *Johnson* factors, combined, warrant approval of the common fund fee sought by class counsel, the Court need not engage in a detailed, lodestar-type analysis of the 'time and labor required' factor.")). In this instance, Class Counsel submit a lodestar cross check is unnecessary to evaluate the reasonableness of a fee requested based on a non-reversionary common fund, in which Class Counsel seek the customary percentage of one-third. However, Class Counsel's lodestar can be calculated from their time records and made available to the Court upon request.

6.   Class Counsel conducted a comprehensive pre-suit investigation, crafted multiple complaints, and fended dismissal attempts. *Id.* They also litigated through class certification discovery, moving to compel critical documents and spending significant resources reviewing thousands of documents, drafting discovery correspondence, and meeting and conferring with Defendants. *Id.* Class Counsel also spent significant time with their expert preparing for mediation and generally throughout litigation to develop a reliable economic model for damages. *Id.* at ¶¶ 7-8. Class Counsel also prepared subpoena to several other industry participants relating to the allegations here. *Id.* at ¶ 6. In addition, Class Counsel worked vigorously to obtain a resolution. *Id.* The time and resources dedicated to this case has meant that Class Counsel were forced to forgo other engagements. *Id.* at ¶¶ 12-13.

Courts in this District have recognized hundreds of hours as still representing significant time and precluding other opportunities. *See, e.g.*, *Krant*, 2024 WL 5187565, at *8 (finding 841.7 hours of time sufficient for reasonableness under Factor 1 and concluding this time spent suggests that counsel rejected other employment opportunities under Factor 4); *McFadden*, 2024 WL 3890182, at *7 (finding 688.7 hours of time sufficient for reasonableness under Factor 1 and concluding this time spent suggests that counsel rejected other employment opportunities under Factor 4). These factors support the requested one-third fee of the $25.5 million settlement.

## 9.    THE COSTS AND EXPENSES ARE REASONABLE

Rule 23(h) authorizes the reimbursement of counsel for reasonable "non-taxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts determine whether the requested costs are reasonable by analyzing whether the costs are the type typically billed by attorneys to paying clients in the marketplace. *See In re Bank of America Wage and Hour Employment Litig.*, Case No. 10-md-2138-JWL, 2013 WL 6670602, at *4 (D. Kan. Dec. 18, 2013) (awarding costs and expenses that are "typically borne by clients in non-contingent fee litigation") (citing *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1257 (10th Cir. 1998)).

Settlement Agreement states the Settlement Fund may reimburse reasonable costs and expenses, and the Class Notice states that the amount will not exceed $430,000. *See* Settlement Agreement VII.A.2.,

ECF No. 134-1; Proposed Class Notice (Ex. A to Settlement) at Question 13, ECF No. 134-1. Class Counsel maintained careful records to document incurred expenses, and these records have been reviewed by Counsel. Hanson Decl. ¶ 13. Counsel incurred $396,212.51 in reasonable costs and expenses in prosecuting this litigation. *Id.* All the costs and expenses were directly related and necessary to Counsel's prosecution of the litigation and are typical of complex class actions such as this. *Id.*

Class Counsel therefore respectfully request that the Court approve fully an award reimbursing Counsel's reasonable costs and expenses in the amount of $396,212.51.

### 10. THE REQUESTED CLASS REPRESENTATIVE SERVICE AWARDS ARE MERITED

This Court has recognized that the time and dedication an individual devotes to a lawsuit helping the common benefit of others can warrant an additional service award payment. *Coe*, 2024 WL 3566953, at *3. It also concluded that a service award "perform[s] the legitimate function of encouraging individuals to undertake the frequently onerous responsibility of [serving as the] named class representative." *Id.* (internal quotations and citations omitted). Service awards are also meant to "reward [class representatives] for . . . personal risk incurred on behalf of the class." *McFadden*, 2024 WL 3890182, at *8.

The Court must "examine whether the award to [the class representative] can be justified as payment at a reasonable rate for reasonable time expended on services rendered that were helpful to the litigation and did not duplicate what could be performed less expensively by counsel." *Chieftain*, 888 F.3d at 468. In determining the appropriateness of the award, the Court should consider three factors: "(1) the actions the class representative took to protect the interests of the class; (2) the level of benefit that the class received from the class representative's actions; and (3) the quantity of time and effort the class representative spent in pursuing the litigation." *Coe*, 2024 WL 3566953, at *3. These factors support the $15,000 requested service awards, which collectively is about .1% of the $25.5 million settlement.

First, Plaintiffs took extraordinary actions to protect class interests by stepping forward publicly in a tightly interconnected Asset and Wealth Management industry. Hanson Decl. ¶¶ 14-15. While class members contacted Class Counsel, these individuals would only provide information confidentially for fear

of professional retaliation. *Id.* However, Mr. Tobler and Ms. McNitt continued despite this potential retaliation. *Id.* In addition, Plaintiffs conducted comprehensive document collection and production across multiple platforms, facilitated counsel's access to additional witnesses and class members with significant information.[12] Ms. McNitt even persevered despite facing industry backlash on social media. McNitt Decl. ¶ 8.

Second, the benefit to the class was irreplaceable—without Mr. Tobler's and Ms. McNitt's willingness to risk their professional standing by challenging the alleged employer misconduct, there would be no case, no settlement, and no recovery for the class, as no other individual that spoke with Class Counsel wanted to be the face of this litigation. Hanson Decl. ¶¶ 14-15.

Third, Mr. Tobler and Ms. McNitt invested significant time conducting pre-suit investigation, meeting with counsel, performing extensive document collection and production, speaking with members of the class, and continuously consulting with counsel throughout the litigation. Tobler Decl. ¶¶ 3-6; McNitt Decl. ¶¶ 3-6. Mr. Tobler and Ms. McNitt have taken a significant risk in their professional careers by representing the class here. *Id.* at ¶ 7. Recognizing the heightened personal risk at stake, courts in similar no-poach antitrust class actions have awarded class representatives significantly more than $15,000.[13] And courts within the Tenth Circuit and elsewhere recognize the threat facing class representatives who sue

---

[12] *See* Declaration of Jakob Tobler ("Tobler Decl.") ¶¶ 3-6, attached hereto as Exhibit B; Declaration of Michelle McNitt ("McNitt Decl.") ¶¶ 3-6, attached hereto as Exhibit C.

[13] *See, e.g.*, *Seaman*, 2019 WL 4674758, at *7 (approving $125,000 service award as "fair and reasonable" in a no poach antitrust class action settling for $54.5 million and concluding the class representative "put her professional career on the line when she came forward."); *In re High-Tech*, 2015 WL 5158730, at *17 (approving $100,000 service awards in no poach antitrust class action where named plaintiffs received considerable media coverage and were likely to be viewed as "troublemakers" by future employers); *see also McAlear v. nCino, Inc. et al.*, No. 7:21-cv-00047 (E. D. N.C. Mar. 4, 2024), ECF No. 149 (awarding $90,000 to the settlement class representative in a no poach antitrust class action settling for $6.8 million); *Borozny*, No. 3:21-cv-01657 (D. Conn. May 14, 2025), ECF 1002 at ¶¶ 4, 10 (awarding $20,000 to each class representative in no poach antitrust class action where they had been "actively engaged in litigation efforts, despite no guarantee of monetary compensation for their efforts leading the case.").

former employers.[14] The requested $15,000 service awards for Mr. Tobler and Ms. McNitt are therefore justified.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court enter an order awarding Class Counsel attorneys' fees in the amount of one-third the settlement fund in the amount of $8,500,000, costs and expenses in the amount of $396,212.51, and service awards for Class Representative Jakob Tobler and Michelle McNitt in the amount of $15,000 each.

---

[14] *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009-10 (D. Colo. 2014) (approving $15,000 service award where representative sued his employer, noting his "commitment to the case and the risk he took pursuing this litigation . . . warrant[ed] a significant award[.]"); *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131-32 (D. Colo. 2016) (approving $7,500 service award for representative who "took a substantial risk in coming forward" when others would not and whose name now appears in Google searches linked to the litigation); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded."); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (noting service awards are especially appropriate in employment-related litigation where "the plaintiff is often a former . . . employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

Dated: September 29, 2025                Respectfully submitted,

*/s/ George A. Hanson*

George A. Hanson      KS Bar # 16805
Bradley T. Wilders     KSD Bar# 78301
Stefon J. David        KSD Bar # 79173
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
hanson@stuevesiegel.com
wilders@stuevesiegel.com
david@stuevesiegel.com

Rowdy B. Meeks      KS Bar # 16068
**ROWDY MEEKS LEGAL GROUP LLC**
8201 Mission Rd., Suite 250
Prairie Village, KS 66208
Telephone: (913) 776-5585
Rowdy.meeks@rmlegalgroup.com

***CLASS COUNSEL***

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2025, I served a true and correct copy of the foregoing Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Expenses, and Service Awards to Plaintiffs with the ECF system for the District of Kansas, which submits notice to all counsel of records in this proceeding.

*/s/ George A. Hanson*

George A. Hanson

***CLASS COUNSEL***