## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY

JAKOB TOBLER and MICHELLE
MCNITT, individually and on behalf of all
others similarly situated,

      Plaintiffs,

v.

1248 HOLDINGS, LLC f/k/a BICKNELL
FAMILY HOLDING COMPANY;
MARINER WEALTH ADVISORS, LLC
f/k/a MARINER HOLDINGS, LLC;
MONTAGE INVESTMENTS, LLC;
MARINER, LLC f/k/a MARINER
WEALTH ADVISORS, LLC; MARINER
CAPITAL ADVISORS, LLC; TORTOISE
CAPITAL ADVISORS, LLC;
TORTOISEECOFIN PARENT HOLDCO
LLC; AMERICAN CENTURY
COMPANIES, INC.; AMERICAN
CENTURY SERVICES, LLC; AMERICAN
CENTURY INVESTMENT
MANAGEMENT, INC.; and DOES 1-10,

      Defendants.

Case No. 2:24-CV-02068-EFM-GEB

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED
## MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
## AND AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... 1

TABLE OF AUTHORITIES ............................................................................................. 2

INTRODUCTION .............................................................................................................. 3

I.    BACKGROUND......................................................................................................... 4

II.   THE SETTLEMENT CLASS ................................................................................... 6

III.  PRELIMINARY APPROVAL AND ADMINISTRATION OF NOTICE............................. 8

IV.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ............. 9

    A.   The Class Representatives and Class Counsel Have Provided Excellent
        Representation to the Class................................................................................ 10

    B.   The Settlement was Negotiated at Arm's Length ......................................... 11

    C.   The Relief Provided for the Class is Fair, Reasonable, and Adequate .......... 11

        1.   The costs, risks, and delay of trial and appeal........................................ 11

        2.   The effectiveness of any proposed method of distributing relief to the class. ...................... 13

        3.   The terms of the proposed award of attorneys' fees, expenses and service awards ............... 13

        4.   The Settling Parties have no additional agreement ............................... 14

    D.   The Settlement Treats Class Members Equitably Relative to Each Other.................................... 14

    E.   The Settlement Satisfies the Remaining Tenth Circuit Factor........................ 15

V.   CLASS CERTIFICATION REMAINS APPROPRIATE................................................ 15

VI.  THE COURT SHOULD DESIGNATE CLASS COUNSEL ........................................... 16

CONCLUSION.................................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................ 11

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
    2020 WL 3288059 (D. Kan. June 18, 2020) .................................................... 10, 15

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*,
    2021 WL 5369798 (D. Kan. Nov. 17, 2021) .......................................................... 11

*In re Motor Fuel Temperature Sales Pracs. Litig.*, 271 F.R.D. 221 (D. Kan. 2010).................... 10

*In re Syngenta AG MIR 162 Corn. Litig.*,
    2018 WL 1726345 (D. Kan. Apr. 10, 2018) .......................................................... 11

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ..................................................................... 10, 15

**<u>Rules</u>**

Fed. R. Civ. P. 23(e)(2) ................................................................................................. 9, 10

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................... 14

Rule 23 ....................................................................................... 10, 11, 13, 14, 15, 16

## INTRODUCTION

Plaintiffs Jakob Tobler and Michelle McNitt ("Plaintiffs") respectfully request that this Court grant final approval of the proposed settlement in this antitrust action, arising from Defendants[1] allegedly conspiring to suppress and eliminate competition in the labor market by agreeing not to solicit, recruit, or hire each other's employees. Plaintiffs assert claims on behalf of themselves and on behalf of a nationwide class.

On August 21, 2025, this Court granted Plaintiffs' Unopposed Motion for Certification of Settlement and for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion") under Rule 23(e), finding that the Settlement was likely to be approved as fair, reasonable, and adequate. *See* ECF No. 144. This Court also ruled that the proposed Settlement Class was likely to meet certification requirements for purposes of judgment and directed distribution of notice to the class. *Id.* In accordance with the Court's Order, the appointed Settlement Administrator, Simpluris, Inc. ("Simpluris"), commenced the notice program on September 19, 2025. *See* Declaration of Anne-Marie Marra ("Simpluris Decl."), attached as Exhibit A at ¶ 8. The notice program effectively reached at least 99.3% of the Settlement Class. *Id.* at ¶ 9. Significantly, there were zero objections to the Settlement and only one Settlement Class Member opted out. *Id.* at ¶¶ 13-14.

---

[1] Defendants 1248 Holdings, LLC f/k/a Bicknell Family Holding Company; Mariner Wealth Advisors, LLC f/k/a Mariner Holdings, LLC; Montage Investments, LLC and its related entities (including the company formerly known as Mariner Holdings, LLC, as well as companies in which Montage Investments, LLC or Mariner Holdings, LLC had a direct or indirect ownership interest of greater than or equal to 50%); Mariner, LLC f/k/a Mariner Wealth Advisors, LLC; Mariner Capital Advisors, LLC ("1248-Mariner Defendants" or "Mariner"); Tortoise Capital Advisors, LLC; Tortoiseecofin Parent Holdco LLC ("Tortoise Defendants" or "Tortoise"); American Century Companies, Inc.; American Century Services, LLC; American Century Investment Management, Inc. ("American Century Defendants" or "ACI") (collectively, "Defendants").

The lack of objections and one opt-out reflect the Settlement Class's strong support for the Settlement. Accordingly, Plaintiffs request that the Court: (1) grant final approval of the Settlement as fair, reasonable, and adequate under Rule 23(e)(2); (2) certify the Settlement Class for purposes of judgment on the proposal; (3) grant Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees, Expenses, and Service Awards; and (4) enter final judgment after the Final Approval Hearing.

<u>**SUMMARY OF THE LITIGATION**</u>

## I.    BACKGROUND

Defendants are key players in the asset and wealth management industry. Plaintiffs allege that the Mariner Defendants have about $65.9 billion in assets under management with more than 1,500 employees across 34 states. Similarly, Plaintiffs allege the American Century Defendants— named one of the top 10 Best Fund Families—has about $230 billion in assets under management with over 1,400 employees across nine global offices. And Plaintiffs allege, while smaller, the Tortoise Defendants remain a leading asset management firm with about $9 billion in assets under management and nearly 200 employees. ECF No. 50 ¶¶ 46-48. In a competitive market, Plaintiffs allege that Defendants hire from and compete for the same pool of workers in the asset and wealth management industry ("Asset and Wealth Management Professionals"). *Id.* at ¶ 49.

In fact, however, Plaintiffs allege that this competition was stifled. Through non-prosecution agreements with the Department of Justice, Montage and its related entities (including the company formerly known as Mariner Holdings, LLC, as well as companies in which Montage Investments, LLC or Mariner Holdings, LLC had a direct or indirect ownership interest of greater than or equal to 50%) and ACI admitted that, beginning no later than March 2014 and continuing until March 2018 ("the Admitted Liability Period"), they conspired to suppress and eliminate competition by entering into and managing a bilateral market allocation agreement not to solicit,

recruit, hire, or otherwise compete for each other's employees, in violation of Section 1 of the Sherman Act ("No Poach Agreement"). ECF No. 50-1, 50-2.[2] They also admitted that their No Poach Agreement diminished employee mobility between Mariner and American Century Defendants, and in that manner, limited the opportunities of employees to negotiate for better compensation, benefits, and other terms of employment. *Id.* Based on these admissions and on Proposed Class Counsel's independent pre-suit investigation, Plaintiffs allege that Defendants' No Poach Agreement was longer in its duration and greater in scope than the conduct described in the non-prosecution agreements and violated federal and state antitrust laws as well as state common law. ECF No. 50. Plaintiffs further alleged that because of Defendants' misconduct, Plaintiffs' and the Class Members' compensation was artificially deflated and lower than what their wages should have been in a competitive marketplace.

After most Defendants answered the initial complaint, Defendant 1248 Holdings, LLC ("1248") twice moved to dismiss, but the Court ultimately denied its motion, and 1248 answered the First Amended Complaint in February 2025. ECF No. 41, 59, 97. Over several months, the parties engaged in extensive discovery, resolving disputes through compromise or with the Court's guidance, including multiple discovery conferences before Magistrate Judge Birzer that resulted in modified scheduling orders. Both sides served and responded to discovery requests, and when further disputes arose, the Court partially granted Plaintiffs' motion to compel and amended the schedule. By June 2025, all document production for class certification was complete, and depositions were being scheduled before the parties agreed to settle. Throughout discovery, Defendants produced nearly 45,000 documents and substantial electronic data, while Plaintiffs

---

[2] Mariner owned the majority interest in Tortoise from 2010 until 2018 after Lovell Minnick Partners acquired Mariner's majority interest. Thus, Tortoise was part of Mariner during the admitted liability period.

produced close to 200 documents; Proposed Class Counsel thoroughly reviewed these materials, ensuring a well-developed understanding of the case and informing settlement discussions. *See* ECF No. 134-2, ¶¶ 3-7; 147-1, ¶¶ 5-6.

From the outset of this Action, the Parties have engaged in meaningful dialogue exploring resolution of the case. It was clear, however, that the Parties viewed the strength of the case and the alleged damages very differently. Only after undertaking substantial discovery, which informed the Parties' views of the strengths and weaknesses of the case, did settlement appear plausible. To this end, the Parties participated in a full-day mediation session on February 18, 2025, with the assistance of the Honorable Layn R. Phillips (Ret.) and his team of professional neutrals. ECF No. 134-2, ¶ 11.

Although no resolution was reached at that time, the Parties continued to engage in productive discussions with Judge Phillips and his team over the span of several months while simultaneously litigating the Action toward a motion for class certification. *Id.* These continued discussions culminated in the Settlement. *Id.*

## SUMMARY OF PROPOSED SETTLEMENT AGREEMENT

The terms of the Parties' proposed Settlement Agreement are as follows:

## II.    THE SETTLEMENT CLASS

The Court preliminarily certified, for purposes of settlement only, the following Settlement Class:

> All individuals employed by (1) 1248 Holdings, LLC, Mariner Wealth Advisors, LLC (f/k/a Mariner Holdings, LLC), Montage Investments, LLC and its related entities (including the company formerly known as Mariner Holdings, LLC, as well as companies in which Montage Investments, LLC or Mariner Holdings, LLC had a direct or indirect ownership interest of greater than or equal to 50%), Mariner, LLC, and Mariner Capital Advisors, LLC; (2) Tortoise Capital Advisors, L.L.C.; TortoiseEcofin Parent Holdco LLC; Ecofin Advisors, LLC, Tortoise Credit Strategies, LLC, Tortoise Investments Partners, LLC, Tortoise Index Solutions, LLC; TortoiseEcofin Investments Partners, LLC; Tortoise Securities, LLC, TI

Services, LLC, Tortoise Parent Holdco, LLC, and Tortoise Investments, LLC, and/or (3) American Century Companies, Inc.; American Century Services, LLC; and American Century Investment Management, Inc., at any time from January 1, 2012 to December 31, 2020.

ECF No. 134-1 at ¶¶ 24, 27. Excluded from the Settlement Class are members of the Settling Defendants' boards of directors and C-suite level employees and employees of Settling Defendants who resided outside of the United States for the entire Settlement Class time period. *Id.* ¶ 27.

Pursuant to the Settlement, Defendants paid $25,500,000 into an Escrow Account (the "Settlement Fund") for the benefit of the Settlement Class. ECF No. 134-1 at ¶ 26. All Administrative Expenses, Service Awards, attorneys' fees, costs, expenses as approved by the Court, and employer tax withholdings shall be paid from the Settlement Fund. *Id.* at Sections IV.B.2., VI, VII. No portion of the Settlement Fund will be reverted to the Defendants.

There is also no "claims-made process." The Settlement Fund will be paid out in accordance with the Plan of Allocation. The Plan of Allocation recommends allocating the value of the Settlement Fund available to the Settlement Class ($25,500,000 less approved attorneys' fees, expenses, service awards, administration costs, and certain tax obligations) pursuant to an objective distribution plan that is designed to provide each Settlement Class Member with a portion of the Net Settlement Fund considering the duration of employment that a Settlement Class Member worked for any Settling Defendant, a Settlement Class Member's compensation paid by any Settling Defendant during the Settlement Class Period, and whether the Settlement Class Member was employed by any Settling Defendant during the Admitted Liability Period. *See* ECF No. 134-1 at 48-50 (Plan of Allocation). In addition, the Settlement Class will receive the benefit of interest that will accrue on the Net Settlement Fund prior to distribution. *Id.* at Section III.5.

In exchange for the benefits under the Settlement, Settlement Class Members will release any legal claim arising out of the facts, activities, or circumstances alleged in the First Amended

Complaint in the Action, conduct arising from the same factual predicate of the Action, or any other purported collusion on competition for employment or any other purported collusion on competition for compensation of, or affecting, Releasors, whether or not alleged in the Complaint in the Action, in each case up to the Effective Date of the Settlement Agreement. ECF No. 134-1, Section V; 134-2, ¶ 17.

## III.    PRELIMINARY APPROVAL AND ADMINISTRATION OF NOTICE

On July 28, 2025, Class Counsel filed the Preliminary Approval Motion pursuant to Rule 23(e). *See* ECF No. 134. The motion was granted on August 21, 2025, wherein the Court concluded it would likely approve the settlement as fair, reasonable, and adequate and certify the Settlement Class for purposes of judgment on the proposal, and thus directed notice be issued to the Class. ECF No. 144.

In accordance with the Court's order, the Parties and Simpluris commenced the approved notice program as set forth in the Preliminary Approval Motion. Defendants provided Simpluris data files with Class Member data that included names and contact information. After de-duping and scrubbing the data, the final class list contained 4,410 unique records of Class members. *See* Simpluris Decl. at ¶¶ 8-9.

On September 19, 2025, Simpluris mailed notice to 4,410 Class members with valid addresses and sent email notice to certain Class Members as needed. *See id.*, ¶¶ 8-9. Of the mailed notices, 489 were returned to Simpluris by USPS. *See id.*, ¶¶ 8-9. Simpluris then performed an advanced search (i.e., skip trace) on all the returned addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. *Id.* Simpluris used the Class Member's name and previous address to locate a more current address. *Id.* Of the 489 returned notices, 458 notices were re-mailed to either a newfound address or with forwarding addresses provided by USPS. *Id.* The remaining 31 notices were undeliverable because no other address was available. As of November

20, 2025, class notice was successfully delivered to 4,379 Settlement Class Members, amounting to a 99.3% direct reach. *Id.*

On or about September 19, 2025, Simpluris launched the settlement website at www. MarinerACISettlement.com, containing important dates and deadlines and settlement-related documents like the Settlement Agreement, the Plan of Allocation, Preliminary Approval Order, and Class Counsel's Motion for Fees, Expenses, and Service Awards. As of November 20, 2025, there have been 1,121 unique visitors with 3,196 page views. At this same time, Simpluris established a toll-free telephone line. As of November 20, 2025, Simpluris has received a total of 25 phone calls.

As noted above, not one class member lodged an objection, either to the substance of the Settlement or Plaintiffs' motion for attorneys' fees, costs, and service awards. Simpluris Decl. at ¶ 14. And only one Class Member requested exclusion from the Settlement. *See id.*, ¶ 13. This is an overwhelmingly positive reaction from the Class that supports the fairness and adequacy of the Settlement.

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

The Court may approve a settlement by finding that the settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). The Rule includes several factors that courts should consider when deciding whether the settlement is "fair, reasonable, and adequate[.]" These factors include whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

(iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Additionally, the Tenth Circuit instructs courts to analyze the following four factors when deciding whether a Rule 23 agreement is fair, reasonable, and adequate:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Because the Tenth Circuit's factors "largely overlap" with the Rule 23(e)(2) factors, "with only the fourth factor not being subsumed" into Rule 23, courts in this District now "consider[] the Rule 23(e)(2) factors as the main tool in evaluating the propriety of [a] settlement," while still addressing the Tenth Circuit's factors. *Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).

The Court's initial disposition was correct, as the Settlement satisfies each of the Rule 23(e)(2) and Tenth Circuit factors. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

### A.    THE CLASS REPRESENTATIVES AND CLASS COUNSEL HAVE PROVIDED EXCELLENT REPRESENTATION TO THE CLASS

Courts consider a class to be adequately represented where the representative plaintiffs' interests do not conflict with the interests of the other class members they seek to represent, and

their counsel prosecutes the case vigorously. *In re Motor Fuel Temperature Sales Pracs. Litig.*, 271 F.R.D. 221, 231 (D. Kan. 2010). Here, Plaintiffs share the same interests and suffered the same types of alleged injuries as the absent Class Members. First, the interests of the Settlement Class Representatives are aligned with those of other Settlement Class Members, as they all allege that Defendants engaged in conduct in violation of federal and state antitrust laws and that their compensation received from Defendants was artificially deflated because of such misconduct. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (cleaned up).

Further, Class Counsel are highly experienced antitrust and employment class action practitioners. ECF No. 134-2, ¶¶ 32-38; ECF No. 134-3, ¶¶8-9. Class Counsel have negotiated many antitrust class actions, including in this District, as well as employment class and collective actions. *Id.* This knowledge and experienced enable Class Counsel to efficiently prosecute the case and negotiate a well-informed settlement.

**B.     THE SETTLEMENT WAS NEGOTIATED AT ARM'S LENGTH**

Another element of procedural fairness, as required by Rule 23(e)(2)(B), is "the proposal was negotiated at arm's length" As the Court has already recognized, the Settlement was "the result of arm's-length negotiations under the guidance of the Hon. Layn R. Phillips (Ret.)." ECF No. 144, ¶ 6. Accordingly, the nature of the Parties' negotiations leading to the proposed Settlement weighs in favor of approval.

**C.     THE RELIEF PROVIDED FOR THE CLASS IS FAIR, REASONABLE, AND ADEQUATE**

**1.     The costs, risks, and delay of trial and appeal**

Balancing the risks of continued litigation, the benefits of the Settlement, and the immediacy and certainty of the significant recovery provided for by the Settlement supports that

the Settlement should be approved. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2021 WL 5369798, at *2 (D. Kan. Nov. 17, 2021) (quoting *In re Syngenta AG MIR 162 Corn. Litig.*, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018) (recognizing that the "immediate recovery is more valuable than 'the mere possibility' that Class Members might achieve a more favorable outcome 'after protracted and expensive litigation' that may well last 'many years in the future'")).

As recognized by this Court in granting preliminary approval, the Settlement has "greater value to the Class than the possibility of relief after protracted litigation, especially given the complex, risky, and expensive nature of antitrust litigation." ECF No. 144, ¶ 6.

Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk. Although Plaintiffs believe their claims against Defendants are meritorious, they acknowledge that Defendants have raised plausible defenses, including disputes over class certification, damages, the statute of limitations, and the applicability on complex tolling doctrines. Defendants have vigorously contested or raised each of these issues, and success in both pretrial proceedings and at trial is far from guaranteed. Moreover, even if Plaintiffs prevail in obtaining class certification, summary judgment, and establishing tolling, substantial factual and legal disputes would still need to be decided, likely by a jury, including whether misconduct extended beyond the admitted liability period and whether Plaintiffs suffered any injury or damages.

In contrast to this uncertainty, the Settlement offers a substantial and immediate benefit to the Settlement Class, which comprises 4,410 individuals, through a $25,500,000 fund—with average estimated payment (net of fees and expenses) of $3,741.05. The Settlement Fund exceeds- by 10x—the $2,500,000 Victim Compensation Fund previously established as a result of the

DOJ's investigation and compares favorably to similar no-poach agreement settlements. In contrast, prosecuting the case through trial and appeal would be complex, expensive, and could delay or even jeopardize any recovery. Thus, the Settlement presents a fair, adequate, and equitable resolution for class members.

> **2.      The effectiveness of any proposed method of distributing relief to the class.**

Rule 23(e)(2)(C)(ii) requires a court to consider "the effectiveness" of the "proposed method of distributing relief to the class, including the method of processing class-member claims." The claims processing method "should deter or defeat unjustified claims" without being "unduly demanding." Advisory Committee Note to 2018 Amendment to Fed. R. Civ. P. 23. As noted above, there is no "claims-made process" here. Settlement Class Members were identified as eligible employees based on structured compensation data provided by Defendants. Simpluris Decl., ¶¶ 4-9. The Court-approved plan successfully delivered Notice to over 99.3% of the Settlement Class. *Id.* The effectiveness of the Notice and lack of objections confirm the Court's preliminary assessment that under the circumstances the process was practicable, reasonably calculated, and otherwise fair and reasonable. ECF No. 144, ¶ 8.

> **3.      The terms of the proposed award of attorneys' fees, expenses and service awards**

Rule 23(e)(2)(c)(iii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment." The terms of the proposed attorneys' fee award are consistent with class action best practices. The amount of any attorneys' fees award is intended to be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. The Settlement is not contingent on the amount of any fee award. The Settlement provides that Class Counsel intends to seek an attorneys' fee award of up to 35% (thirty-

five) percent of the $25,500,000 settlement and costs/expenses not to exceed $430,000. The Notice advised Settlement Class Members of these amounts. *See* Simpluris Decl. ¶ 8.

On September 29, 2025, Plaintiffs filed their unopposed motion seeking one-third of the Settlement Fund in attorneys' fees, which is $8,500,000, and costs and expenses of $396,212.51. *See* ECF No. 146. As explained in the accompanying memorandum in support of the motion, Class Counsel have collectively dedicated over 2,200 hours to this litigation and expended significant out-of-pocket costs in prosecution of the case—all on a contingent basis. *See* ECF No. 147, at 1-2; 147-1, ¶ 12. This significant amount of time along with the full analysis of the *Johnson* factors support the reasonableness of Class Counsel's requested fees in this action.

In accordance with the Settlement Agreement, Plaintiffs also moved the Court for service awards for Mr. Tobler and Ms. McNitt in the amount of $15,000 each for the scores of hours of work each has put into this litigation. *See* ECF No. 147, at 15-17. This requested amount also recognizes the extraordinary actions to protect the class's interests by stepping forward despite the significant risk of professional retaliation. *Id.* The requested amount is reasonable when compared to those award in similar no poach antitrust litigation. *Id.* at n.13. Class Counsel submit that awards of $15,000 each to Mr. Tobler and Ms. McNitt are fair and reasonable and should be approved.

### 4. The Settling Parties Have No Additional Agreement

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreement. The settling parties have no additional agreement.

### D. THE SETTLEMENT TREATS CLASS MEMBERS EQUITABLY RELATIVE TO EACH OTHER

The proposed Agreement treats all Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). Funds will be awarded to Settlement Class Members on an objective basis, factoring their compensation during the Settlement Class Period. *See* ECF No.

134-1 at 48-50 (Plan of Allocation). Plaintiffs have designed a simple process to maximize the number of Settlement Class Members who receive and accept compensation for their claims. *Id.* Because all Settlement Class Members are treated fairly, this requirement is satisfied.

### E. THE SETTLEMENT SATISFIES THE REMAINING TENTH CIRCUIT FACTOR

The final, additional factor courts in the Tenth Circuit consider in evaluating a settlement for final approval is "the judgment of the parties that the settlement is fair and reasonable." *Rodriguez*, 2020 WL 3288059, at *2. As this Court has already found, the judgment of the Settling parties is "fair and reasonable." ECF No. 144, ¶ 6.

Class Counsel have compared the recovery that the Class will receive from the Settlement against the delays, risks, and uncertainties of continued litigation.  In analyzing the comparison, Plaintiffs and Class Counsel believe the Settlement is fair, adequate, and reasonable and should be approved. *See Rutter*, 314 F.3d at 1188 (that settling parties ask the court to approve the settlement suggests that "the judgment of the parties" is "that the settlement is fair and reasonable.").

## V.    CLASS CERTIFICATION REMAINS APPROPRIATE

In its Preliminary Approval Order, the Court preliminarily certified the Settlement Class for settlement purposes, finding that the class met each of Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy and that the class met each of Rule 23(b)(3)'s requirements of predominance and superiority. *See* ECF No. 144, ¶ 2.

Nothing has changed since the Court's ruling that would call doubt on the Court's conclusion regarding certification. The Settlement Class is numerous, with about 4,410 individuals. There are common issues regarding Defendants' liability that predominate over any individual issues. Class-wide resolution is superior because it is the only practical means through which the thousands of Class Members may obtain relief. The Settlement Class Representatives' claims are typical of the claims of Class Members, including because they allege the same injuries

and harms. Further, Plaintiffs adequately performed their duties as settlement class representatives and do not possess conflicts of interests with the Class Members. *See id.* Finally, Class Counsel have extensive experience in antitrust and employment class action litigation, have adequately represented the Settlement Class to date, and are well-qualified to represent the Settlement Class. Accordingly, final certification of the Settlement Class is appropriate.

## VI.    THE COURT SHOULD DESIGNATE CLASS COUNSEL

The Court appointed George A. Hanson, Brad T. Wilders, and Stefon J. David of Stueve Siegel Hanson LLP, and Rowdy B. Meeks of Rowdy Meeks Legal Group LLC as Settlement Class Counsel pending final approval of the Settlement. ECF No. 144, ¶ 4. Upon the Court's certification of the Settlement Class for purposes of entry of judgment on the Settlement, Plaintiffs request that these counsel be appointed Class Counsel of the Settlement under Rule 23(g)(1).

## <u>CONCLUSION</u>

For the reasons set forth above and in the support declaration, Plaintiffs respectfully request the Court grant Plaintiffs' Unopposed Motion for Final Approval of Proposed Class Action Settlement and Award of Attorneys' Fees, Expenses, and Service Awards.

Dated: November 20, 2025                Respectfully submitted,

*/s/ George A. Hanson*

George A. Hanson        KS Bar # 16805
Bradley T. Wilders        KSD Bar# 78301
Stefon J. David            KSD Bar # 79173
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
hanson@stuevesiegel.com
wilders@stuevesiegel.com
david@stuevesiegel.com

Rowdy B. Meeks        KS Bar # 16068
**ROWDY MEEKS LEGAL GROUP LLC**

16

8201 Mission Rd., Suite 250
Prairie Village, KS 66208
Telephone: (913) 776-5585
Rowdy.meeks@rmlegalgroup.com

***SETTLEMENT CLASS COUNSEL***